IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
NOV 12 2026
Nathan Ochsner, Clerk of Court

STEPHANIE SAMPSON,

CHRISTOPHER ALEXANDER SAMPSON,

*Plaintiffs,*

v.

ALDINE INDEPENDENT SCHOOL DISTRICT, HARRIS COUNTY, TEXAS, CITY OF HOUSTON, HARRIS COUNTY HOSPITAL DISTRICT, PORT OF HOUSTON AUTHORITY, LONE STAR COLLEGE SYSTEM, HOUSTON INDEPENDENT SCHOOL DISTRICT, LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, MICHAEL CANO, LAUREN L. JONES, DEANNA L. LONGO, KANIKA W. MIDDLETON, WENDI FAUGHN, ANNETTE RAMIREZ, MARILYN BURGESS, DR. LATONYA M. GOFFNEY, PURNELL HARVEY, TERESA JONES, M.ED., FELISA ZAMORA, HEAVEN INVESTMENTS, SELL HOUSE NOW CASH LLC, RAUL BOLUFE, RICHARD DEYAMA, CLINT LANDERO, NICHOLAS THATCHER, N THATCHER LAW LLC, BARRY BARNES & ASSOCIATES, PLLC, AMERICAN TITLE COMPANY, CARLINE YORK, and MANDIE B. GASTON,

*Defendants.*

**CIVIL ACTION NO. 4:26-cv-09010**

**Hon. George C. Hanks, Jr.**

**PLAINTIFFS 'MOTION FOR LEAVE TO FILE THIRD AMENDED MASTER CONSOLIDATED CIVIL RIGHTS COMPLAINT, FOR PERMISSIVE JOINDER OF ADDITIONAL DEFENDANTS, AND FOR ISSUANCE AND U.S. MARSHAL SERVICE OF SUMMONSES (FED. R. CIV. P. 15(a)(2), 20(a)(2), & 4(c)(3); 28 U.S.C. § 1915(d))**

TO THE HONORABLE GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE:

Plaintiffs Stephanie Sampson and Christopher Alexander Sampson, proceeding pro se and *in forma pauperis*/ indigent, respectfully move this Court for leave to file their **Third Amended Master Consolidated Civil Rights Complaint** (submitted concurrently herewith), for permissive joinder of the newly identified individual and entity Defendants pursuant to Federal Rule of Civil Procedure 20(a)(2), and for an Order directing the Clerk of Court to issue summonses and directing the United States Marshals Service to effectuate service of process upon all unserved Defendants pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d), and in support thereof respectfully show the Court as follows:

# I. PROCEDURAL POSTURE & RELIEF REQUESTED

1. **Purpose of Amendment:** This consolidated federal civil rights and real-property quiet title action is currently at its threshold preliminary-injunction stage following this Court's entry of its October 27, 2026 Temporary Restraining Order (Document 18) preserving Plaintiffs' ancestral homestead at 2323 Garapan Street, Houston, Texas 77091 (HCAD Account No. 016-272-014-0001) and ancestral property at 2539 DeSoto Street, Houston, Texas 77091 (HCAD Account No. 072-098-000-0112). No scheduling order has yet been entered, no discovery deadline has expired, and no trial date has been set.

2. **Newly Obtained Certified Records & Particularized Pleading Enhancements:** Following the entry of the October 27, 2026 TRO (Document 18) and review of Defendants' filings (including Document 31 and the certified state-court hearing transcript at Docket 31-10) as well as newly obtained certified appellate mootness orders from the Fourteenth Court of Appeals (October 29, 2026; Case No. 14-26-00931-CV) and the Supreme Court of Texas (October 30, 2026; *In re Sampson*, Case No. 26-1103; Exhibit X), Plaintiffs prepared their **Third Amended Master Consolidated Civil Rights Complaint** to:

- **(a)** Incorporate the certified appellate mootness orders (Exhibit X) and live hearing admissions (Dkt. 31-10) directly addressing *Rooker-Feldman* (*Exxon Mobil*, *Lance v. Dennis*, *Burciaga*), the Tax Injunction Act (28 U.S.C. § 1341), and *Younger* abstention;

- **(b)** Plead with full Federal Rule of Civil Procedure 9(b) particularity the exact receipt numbers, confirmation hashes, contract dates (April 7, 2025 contract extending through February 15, 2028; Exhibits C–E & Tab F), binding homestead admission (Exhibit B checking "HS Exemption"), and dual-defective post-judgment execution notices (including Felisa Zamora's file-stamped June 11, 2026 Order of Sale request under Envelope No. 116022590, Exhibit F, routing notice to non-existent "16605 South West Fwy, Houston, Texas 77449");

- **(c)** Formally join two additional individual attorneys who actively participated on the record in the post-judgment execution and notice-evasion acts—Linebarger collection attorney **Michael Cano**(SBOT No. 24047724) and Aldine ISD legal counsel **Kanika W. Middleton** (SBOT No. 24043265) (Dkt. 31-10, Page 3)—so all necessary actors are before the Court in a single unified proceeding; and

◦ **(d)** Ensure full compliance with Federal Rules of Civil Procedure 8, 9(b), 10, 11(a) (executed individually by both pro se Plaintiffs), and 28 U.S.C. § 1746.

## II. LEGAL STANDARDS GOVERNING LEAVE TO AMEND, PERMISSIVE JOINDER, AND U.S. MARSHAL SERVICE

**3. Liberal Standard for Leave to Amend Under FRCP 15(a)(2):** Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." The U.S. Supreme Court and Fifth Circuit hold that Rule 15(a) evinces a strong bias in favor of granting leave to amend, and absent a substantial reason such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, or undue prejudice to the opposing party, leave must be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981). Furthermore, pro se civil rights litigants are entitled to liberal construction and meaningful opportunity to amend so their constitutional claims are adjudicated on the merits rather than dismissed on technical pleading grounds. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Here, no Defendant will suffer undue prejudice because this case is in its earliest preliminary-injunction

phase, no discovery has closed, and the amendment clarifies and sharpens existing claims based on certified records.

4. **Permissive Joinder Under FRCP 20(a)(2):** Pursuant to Federal Rule of Civil Procedure 20(a)(2), persons may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Joining **Michael Cano** and **Kanika W. Middleton** alongside the existing Defendants satisfies Rule 20(a)(2) because their actions arise out of the exact same state-court tax execution proceedings (Cause No. 2024-89814 / Cause No. 2026-49413), active installment agreements, and disputed title records affecting Plaintiffs' properties.

5. **Issuance of Summonses & U.S. Marshal Service Under FRCP 4(c)(3) and 28 U.S.C. § 1915(d):**Because Plaintiffs are verified indigent litigants proceeding *in forma pauperis* (and under a sustained Tex. R. Civ. P. 145

indigency order), Plaintiffs are entitled under **28 U.S.C. § 1915(d)** and **Federal Rule of Civil Procedure 4(c)(3)** to have the Clerk of Court issue summonses (Form AO 440) and to have the United States Marshals Service execute service of process upon all newly joined and unserved Defendants without prepayment of marshal service fees (while Defendants that have already appeared through counsel in this action—including Aldine ISD and Linebarger Goggan Blair & Sampson, LLP—may be served via CM/ECF or electronic mail pursuant to Fed. R. Civ. P. 5(b)).

## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Stephanie Sampson and Christopher Alexander Sampson respectfully pray that the Court grant this Motion and enter an Order:

1. Granting Plaintiffs leave pursuant to Federal Rule of Civil Procedure 15(a)(2) to file their **Third Amended Master Consolidated Civil Rights Complaint**, and deeming said Third Amended Master Consolidated Civil Rights Complaint filed of record as of the date of entry of the Order;

2. Authorizing permissive joinder of all named Defendants—including newly added Defendants **Michael Cano** and **Kanika W. Middleton**—pursuant to Federal Rule of Civil Procedure 20(a)(2);

3. Directing the Clerk of Court to issue summonses for all newly joined and unserved Defendants upon receipt of completed AO 440 summons forms, and directing the United States Marshals Service to serve process upon all unserved Defendants pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d) without prepayment of fees; and

4. Granting Plaintiffs such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Dated this 12th day of November, 2026.

Respectfully submitted,

By: ________________________________

**Christopher Alexander Sampson**

Plaintiff Pro Se

2323 Garapan Street

Houston, Texas 77091

Phone: (832) 898-1791

Email: sampsonc9@yahoo.com

By: ________________________________

**Stephanie Sampson**

Plaintiff Pro Se

7115 South Mason Road #612

Richmond, Texas 77407

Phone: (832) 207-3232

Email: ssampson25@yahoo.com

**CERTIFICATE OF CONFERENCE (S.D. TEX. LOCAL RULE 7.1.D)**

Pursuant to Local Rule 7.1.D of the United States District Court for the Southern District of Texas, Plaintiffs certify that because this Motion is filed concurrently with the Court's scheduled November 12, 2026 preliminary-injunction hearing and involves *pro se* indigent litigants seeking leave to clarify threshold jurisdictional and factual allegations in response to Defendants' opposition filings (Dkt. 31), Plaintiffs are presenting this Motion in open court and serving copies upon appearing counsel of record (Deanna L. Longo, Kanika W. Middleton, and Michael Cano), who are expected to oppose or state their position on the record before the Court.

____________________________________

**Christopher Alexander Sampson, Pro Se**

____________________________________

**Stephanie Sampson, Pro Se**

**CERTIFICATE OF SERVICE (FED. R. CIV. P. 5(b))**

We certify that on this 12th day of November, 2026, a true and correct copy of the foregoing Motion for Leave and Proposed Order was served upon all appearing counsel of record (Deanna L. Longo and Kanika W. Middleton for Aldine ISD, and Michael Cano for Linebarger Goggan Blair & Sampson, LLP) via the Court's CM/ECF system, electronic mail, or hand delivery in open court pursuant to Federal Rule of Civil Procedure 5(b).

____________________________________

**Christopher Alexander Sampson, Pro Se**

____________________________________

**Stephanie Sampson, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

**STEPHANIE SAMPSON,**

**CHRISTOPHER ALEXANDER SAMPSON,**

*Plaintiffs,*

**v.**

**ALDINE INDEPENDENT SCHOOL DISTRICT, et al.,**

*Defendants.*

**CIVIL ACTION NO. 4:26-cv-09010**

**Hon. George C. Hanks, Jr.**

**[PROPOSED] ORDER GRANTING PLAINTIFFS 'MOTION FOR LEAVE TO FILE THIRD AMENDED MASTER CONSOLIDATED CIVIL RIGHTS COMPLAINT AND FOR U.S. MARSHAL SERVICE OF SUMMONSES**

Before the Court is Plaintiffs Stephanie Sampson and Christopher Alexander Sampson's **Motion for Leave to File Third Amended Master Consolidated Civil Rights Complaint, for Permissive Joinder of Additional Defendants, and for Issuance and U.S. Marshal Service of Summonses** pursuant to Federal Rules of Civil Procedure 15(a)(2), 20(a)(2), and 4(c)(3) and 28 U.S.C. § 1915(d). Having considered the Motion, the record in this action, and the liberal amendment

mandate of Rule 15(a)(2), the Court finds that justice requires granting leave to amend and authorizing service of process.

IT IS THEREFORE **ORDERED** that:

1. Plaintiffs' Motion for Leave is **GRANTED**;

2. The Clerk of Court is **DIRECTED** to file Plaintiffs' **Third Amended Master Consolidated Civil Rights Complaint** on the docket of Civil Action No. 4:26-cv-09010 as the operative pleading in this action;

3. Permissive joinder of all named Defendants in the Third Amended Master Consolidated Civil Rights Complaint—including **Michael Cano** and **Kanika W. Middleton**—is **AUTHORIZED** pursuant to Federal Rule of Civil Procedure 20(a)(2);

4. Upon Plaintiffs' submission of completed Form AO 440 summonses for each unserved Defendant, the Clerk of Court is **DIRECTED** to issue summonses and deliver them to the United States Marshals Service, which is **ORDERED** to execute service of process upon all unserved Defendants pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d) without prepayment of fees; and

5. Defendants that have already appeared through counsel in this action may be served via CM/ECF or electronic mail pursuant to Federal Rule of Civil

Procedure 5(b) and shall respond to the Third Amended Master Consolidated Civil Rights Complaint within the time prescribed by Federal Rule of Civil Procedure 15(a)(3).

SIGNED on this ____ day of November, 2026.

______________________________________

**HONORABLE GEORGE C. HANKS, JR.**

**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

**STEPHANIE SAMPSON,**

**CHRISTOPHER ALEXANDER SAMPSON,**

*Plaintiffs,*

**v.**

**ALDINE INDEPENDENT SCHOOL DISTRICT, HARRIS COUNTY, TEXAS, CITY OF HOUSTON, HARRIS COUNTY HOSPITAL DISTRICT, PORT OF HOUSTON AUTHORITY, LONE STAR COLLEGE SYSTEM, HOUSTON INDEPENDENT SCHOOL DISTRICT, LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, MICHAEL CANO, LAUREN L.**

**JONES, DEANNA L. LONGO, KANIKA W. MIDDLETON, WENDI FAUGHN, ANNETTE RAMIREZ, MARILYN BURGESS, DR. LATONYA M. GOFFNEY, PURNELL HARVEY, TERESA JONES, M.ED., FELISA ZAMORA, HEAVEN INVESTMENTS, SELL HOUSE NOW CASH LLC, RAUL BOLUFE, RICHARD DEYAMA, CLINT LANDERO, NICHOLAS THATCHER, N THATCHER LAW LLC, BARRY BARNES & ASSOCIATES, PLLC, AMERICAN TITLE COMPANY, CARLINE YORK, and MANDIE B. GASTON,**

*Defendants.*

**CIVIL ACTION NO. 4:26-cv-09010**

**Hon. George C. Hanks, Jr.**

**JURY TRIAL DEMANDED**

**PLAINTIFFS 'THIRD AMENDED MASTER CONSOLIDATED CIVIL RIGHTS COMPLAINT AND ACTION FOR REAL PROPERTY QUIET TITLE, TITLE RESTORATION, MONELL LIABILITY, UNIFIED RETALIATION, AND INJUNCTIVE RELIEF**

TO THE HONORABLE GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE:

Plaintiffs Stephanie Sampson and Christopher Alexander Sampson (an Aboriginal Indigenous American Indian of verified Mohawk maternal lineage and continuous

31-year homestead occupant), proceeding pro se, respectfully file this Third Amended Master Consolidated Civil Rights Complaint and Action for Real Property Quiet Title, Title Restoration, *Monell* Liability, Unified Retaliation, and Injunctive Relief pursuant to Federal Rules of Civil Procedure 8, 9(b), 10, 11(a), 15(a)(2), 20(a)(2), 37(e)(2), 38(b), and 65(a)–(c) against the above-named Defendants, and in support thereof respectfully show the Court as follows:

## I. SUBJECT-MATTER JURISDICTION, INAPPLICABILITY OF ROOKER-FELDMAN, TAX INJUNCTION & ANTI-INJUNCTION ACT EXCEPTIONS, ABSTENTION EXCEPTIONS, AND VENUE

1. **Federal Question and Civil Rights Jurisdiction:** Plaintiffs invoke the original subject-matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4), as this action arises under the Constitution and laws of the United States—specifically 42 U.S.C. §§ 1981, 1982, 1983, 1985(2)–(3), 1986, 1988, and 2000d (Title VI), Section Five of the Fourteenth Amendment, and the First, Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution—to redress the systematic deprivation of civil rights, contract rights, and inherited real property rights through a continuous campaign of **unified retaliation**. Pursuant to 42 U.S.C.

§§ 1981 and 1982, this Court exercises direct federal-question jurisdiction over both government actors AND private individuals or corporations without any state-action prerequisite, protecting identifiable lineages targeted because of ancestry or ethnic heritage—including Plaintiffs' Aboriginal Indigenous American Indian lineage (documented in certified genealogical ledgers tracking 7th great-grandmother Coo Coo Chee (Mohawk Woman) and 6th great-grandmother Hannah Smith; State Court Exhibits X-10 & X-11). See *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 437–43 (1968); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987).

2. **Declaratory, Injunctive, and All Writs Act Equity Jurisdiction:** This Court possesses original and ancillary jurisdiction to issue declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to issue preliminary and permanent injunctive relief with bond waived for verified indigent litigants pursuant to Federal Rule of Civil Procedure 65(a)–(c) (*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *City of Atlanta v. Metropolitan Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981)), to enjoin state-court execution proceedings under the express statutory authorization of 42 U.S.C. § 1983 and 28 U.S.C. § 2283 (*Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972)), and to preserve the

physical *res* (Plaintiffs' ancestral homestead) in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (*FTC v. Dean Foods Co.*, 384 U.S. 597, 603–04 (1966); *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977)).

3. **Supplemental Jurisdiction Over State-Law Claims:** This Court maintains supplemental jurisdiction over Plaintiffs' interconnected Texas state-law property, statutory, equitable, and tort claims pursuant to 28 U.S.C. § 1367(a), because those state-law actions—including statutory liability under Texas Civil Practice & Remedies Code Chapter 12 (Fraudulent Real Estate Instruments), statutory Trespass to Try Title and quiet title under Texas Property Code § 22.001, mature limitation title and presumed cotenant ouster under Texas Civil Practice & Remedies Code §§ 16.023, 16.027, and 16.030(a), constructive/resulting trust (*Mills v. Gray*, 210 S.W.2d 985, 988–89 (Tex. 1948)), breach and prevented performance of tax installment agreements under Texas Tax Code § 33.02(d), statutory notary misconduct under Texas Government Code § 406.016 and Texas Civil Practice & Remedies Code § 121.004, statutory real-estate and consumer fraud (Tex. Bus. & Com. Code §§ 27.01, 17.45, & 17.50), common-law fraud, slander of title, tortious interference, civil conspiracy, and intentional infliction of emotional distress—arise from a common, interlocking nucleus of operative

facts and form part of the same constitutional case or controversy under Article III of the United States Constitution.

**A. Inapplicability of Rooker-Feldman Under Justice Ginsburg's "Source of the Injury" Test, Lance v. Dennis, and Burciaga**

4. **Parallel State Appeals & Overlapping Issues Do Not Trigger Rooker-Feldman (Exxon Mobil & Burciaga):** The *Rooker-Feldman* doctrine does not divest this Court of subject-matter jurisdiction. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 292–93 (2005), writing for a unanimous Supreme Court, Justice Ruth Bader Ginsburg confined *Rooker-Feldman* strictly to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before federal proceedings commenced and inviting district court review and rejection of those judgments. Justice Ginsburg expressly held: "When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* at 292 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Justice Ginsburg further commanded: "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a

case to which he was a party . . . , then there is jurisdiction and state law takes over to determine the preclusive effect of the judgment.'" *Id.* at 293; see also *Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011) (*Rooker-Feldman* does not bar a § 1983 suit challenging unconstitutional enforcement conduct surrounding a state judgment); *Burciaga v. Deutsche Bank Nat'l Trust Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) (*Rooker-Feldman* applies only after state-court proceedings have completely ended prior to the federal filing, and is inapplicable while Plaintiffs' state Bill of Review appeal in Case No. 14-26-00931-CV remains pending).

5. **Non-Party Protection for Unserved Equitable Owner Christopher Sampson (Lance v. Dennis):** Under binding U.S. Supreme Court precedent in *Lance v. Dennis*, 546 U.S. 459, 464–66 (2006), *Rooker-Feldman* never bars a federal plaintiff who was not a served party to the prior state-court judgment. Because Defendants never served Plaintiff Christopher Alexander Sampson in the original 2024 tax foreclosure lawsuit (Cause No. 2024-89814)—relying on the void 2017 deed (File No. RP-2017-348145; Dkt. 31-10, Pages 36, 38) despite actual knowledge of his continuous 31-year homestead occupancy at 2323 Garapan Street, Aldine ISD's own official receipts listing CHRISTOPHER A SAMPSON directly under Owner: (Receipt Nos. 8316576 & 8320093; Exhibit C), Aldine ISD's own Answer

Exhibit B physically checking the **"HS Exemption" (Homestead Exemption)** box, his in-person execution of the March 2025 payment plan with Felisa Zamora (Dkt. 31-10, Page 40), and $9,124.25 in cumulative tax payments across Aldine ISD and Harris County accounts—*Rooker-Feldman* is wholly inapplicable to his claims.

6. **Post-Judgment Collection & Notice Violations Protect Stephanie Sampson (Jones v. Flowers & Truong):** Even though Plaintiff Stephanie Sampson was served at her workplace in the original 2024 tax suit (Dkt. 31-10, Page 40), every constitutional and statutory violation Plaintiffs seek to redress occurred after that August 18, 2025 judgment—and was inflicted out of court by Defendants, not by a state judge: (a) locking Plaintiffs' active Tex. Tax Code § 33.02 installment portals (card ending 7838; Tab E) after Plaintiff Christopher Alexander Sampson timely paid on **January 29, 2026** (Confirmation Hash: c7b35ffd, $461.03; Exhibit D)—two full days before the January 31, 2026 milestone under Aldine ISD's April 7, 2025 payment contract extending through **February 15, 2028** (Exhibit C)—refusing physical U.S. currency tender in February 2026, unilaterally issuing Aldine ISD's June 11, 2026 Order of Sale after Linebarger LLP had returned its own Order of Sale unexecuted on April 24, 2026 ("informing the court that the foreclosure was off the table"; Dkt. 31-10, Pages 17–18, 21), and generating

an unauthorized August 26, 2026 "Supplement Correction" (Exhibit T-3-J; Dkt. 31-10, Pages 31–32); (b) omitting mandatory post-judgment default notice under TRCP 239a, failing to secure certified-mail return receipt service under TRCP 106, routing post-judgment notices to addresses where Stephanie Sampson does not reside and to geographically impossible city/zip-code combinations—specifically "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449" (Dkt. 31-5, Page 7; Dkt. 31-10, Page 24), "16605 South West Fwy, Houston, Texas 77449" on Felisa Zamora's file-stamped June 11, 2026 Order of Sale letter (Exhibit F; Envelope No. 116022590), and truncated "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047" instead of 7115 and 77407 (Dkt. 31, Att. 1)—despite Felisa Zamora's actual knowledge admitted during both an in-person morning meeting and a 4:00 PM joint telephonic conference on July 20, 2026 that impostors utilizing (281) 274-8050 had hijacked the notice channel (Dkt. 31-10, Pages 38–39), violating *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798–800 (1983), *Jones v. Flowers*, 547 U.S. 220, 225–26, 234 (2006), *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84–87 (1988), *Spanton v. Bellah*, 612 S.W.3d 314, 316–18(Tex. 2020), and Tex. Tax Code § 34.01(a-1); and (c) private Defendants recording

forged/defective 2015 and 2017 deeds and five April 2026 "wild deeds" (Tab U-2) without conducting a mandatory physical inspection of the occupied homestead (*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001)). Under *Truong v. Bank of America, N.A.*, 717 F.3d 377, 382–83 & n.3 (5th Cir. 2013), *Illinois Central R.R. Co. v. Guy*, 682 F.3d 381, 390–91 (5th Cir. 2012), and *Weaver v. Texas Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011), these independent out-of-court injuries clear *Rooker-Feldman*.

**B. Unavailability of State Remedies Under the Tax Injunction Act (28 U.S.C. § 1341) & Younger Abstention Exceptions**

7. **Appellate Mootness Catch-22, 30-Day Plenary Power Refusal of 4-Year Bill of Review (Tex. Civ. Prac. & Rem. Code § 16.051), & Denial of Indigent Transcript Access (Exhibit X):** Under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512–14 (1981), *Hillsborough v. Cromwell*, 326 U.S. 620, 625–26 (1946), *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303 (1952), and *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 7–9 (2015), the Tax Injunction Act (28 U.S.C. § 1341) does not bar federal equity jurisdiction where state procedural barriers, judicial refusal, or mootness leave zero active state stay protection before irreversible loss. Certified state records (Exhibit X; Dkt. 31-10, Pages 39–

40) prove Plaintiffs timely filed a verified Bill of Review (Cause No. 2026-49413; Doc. Nos. 127869609, 127869737) within the four-year statutory period (Tex. Civ. Prac. & Rem. Code § 16.051; *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012)), only for the state trial judge to rule on August 27, 2026 that because the underlying tax judgment was signed on August 18, 2025, her 30-day plenary power had expired and *"my hands are tied at this point"* (Dkt. 31-10, Pages 39–40)—refusing equitable relief in direct violation of Tex. R. Civ. P. 329b(f) (Doc. No. 128495734), entering post-recusal orders on August 31, 2026 (Envelope No. 119283461; Doc. Nos. 128546794 & 128523478) violating TRCP 18a(f) after Plaintiffs' Verified Master Motion to Recuse was accepted under Envelope No. 119283639, and restricting Plaintiffs' sustained indigent affidavit (Filing ID 127869618 / 127875660) so Official Court Reporter Charyna Lashley, CSR could not view it (*"I see it's restricted. I am unable to see either"*; TRCP 145; *Griffin v. Illinois*, 351 U.S. 12, 18–20 (1956); *M.L.B. v. S.L.J.*, 519 U.S. 102, 110–14 (1996)). Thereafter, once Plaintiffs notified the Texas appellate courts of this Court's active TRO (Dkt. 18), both the Fourteenth Court of Appeals (October 29, 2026; Case No. 14-26-00931-CV) and the Supreme Court of Texas (October 30, 2026; *In re Sampson*, Case No. 26-1103, Doc. No.

129666908) dismissed Plaintiffs' stay motions as moot—leaving zero active stay in state court and triggering both the bad-faith and extraordinary-circumstances exceptions to *Younger* abstention (*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013); *Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)).

8. **Venue:** Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(1)–(2), because Defendants reside or conduct business within this judicial district, the real property *res* target assets are situated entirely within Harris County, Texas, and the core structural constitutional injuries, forensic public records spoliation, electronic docket manipulations, and unlawful property execution threats occurred exclusively within this judicial division.

## II. TRUE STANDING PRIVITY, PROPERTY INTERESTS, AND RULE 10(c) INCORPORATION

9. **Co-Tenant Rights, Vested Equitable Title, & Article III Standing:** As tenants-in-common and lawful heirs to the property, Plaintiffs possess a vested legal and equitable interest in the subject real estate (Tex. Estates Code § 101.001; *Mills v. Gray*, 210 S.W.2d 985, 988–89 (Tex. 1948)), protected by Fourteenth Amendment Due Process (*Board of Regents v. Roth*,

408 U.S. 564, 577 (1972); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–32 (1982)). Under Texas law, a co-tenant who contributes personal funds in good faith to preserve common property from a tax foreclosure—including mortgage satisfaction via childhood SSI benefits, **$24,349.20** in out-of-pocket capital structural and interior homestead repairs (Invoice #8362 for $5,350.00; Invoice #6783 for $12,756.04; and Exhibit I for $6,243.16), and **$9,124.25** in cumulative direct property tax installments across Aldine ISD and Harris County accounts (Tex. Tax Code § 33.02(d); Exhibits C, D, & E)—is legally entitled to equity protections, reimbursement, and contribution. See *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963); *Wooley v. West*, 391 S.W.2d 157, 160 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.). Because Plaintiffs have expended personal funds to protect the *res* of the estate from destruction, the Defendants 'unlawful, deceptive, and fraudulent foreclosure mechanisms inflict a concrete, particularized, and non-speculative injury-in-fact upon Plaintiffs' property rights (Tex. Const. art. XVI, § 51). Accordingly, Plaintiffs retain proper constitutional and prudential standing to assert these claims. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) (holding

that an individual with a vested legal or equitable interest in property has standing to challenge wrongful proceedings that threaten that interest).

10. **Voidness Ab Initio and Equitable Rescission of Purported 2015 and 2017 Deeds:** Because Plaintiff Christopher Alexander Sampson's purported signatures and representation as a signing heir on the 2015 deed (File No. 20150552824) and 2017 deed (File No. RP-2017-348145—which on its face lists Christopher's mailing address as **3695 FM 3514, Beaumont, Texas**, the literal street address of a TDCJ correctional facility; Dkt. 31-10, Page 27) were procured through a combination of manufactured forgery, post-signing unauthorized alterations, extreme custodial duress, multiple different counties' jurisdictional venue conflicts, fraudulent inducement without consideration, and intentional notary venue falsification while he was continuously locked inside secure local jail and state prison facilities (Tex. Civ. Prac. & Rem. Code § 121.004), both deeds are void *ab initio*—they never legally existed—or are subject to immediate equitable rescission and constructive trust. See *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976); *Mills v. Gray*, 210 S.W.2d 985, 988–89 (Tex. 1948); *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 457 (Tex. App.—Dallas 1987, no writ). Furthermore, Plaintiffs' 31-year open, exclusive dominion vested full fee-simple title under the 25-year absolute bar (Tex. Civ. Prac. & Rem. Code §§

16.027 & 16.030). Christopher never lost his original property interests. He is not asserting the rights of a third party; he is asserting his own fundamental property rights that the Defendants are attempting to unconstitutionally liquidate without proper notice to him (*Lance v. Dennis*, 546 U.S. 459, 464–66 (2006); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–800 (1983)).

11. **Incorporation of Previously Filed Exhibits Pursuant to FRCP 10(c):** Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs hereby explicitly incorporate by reference all physical and documentary exhibits previously submitted to the Court alongside the original Complaint and prior filings in Civil Action No. 4:26-cv-09010 (including Document 18, Document 31 and Attachments 1–10, Exhibits A through Y and all sub-tabs, and certified State Court Exhibits X-10 & X-11). Because Plaintiffs turned over their only physical copies of these critical evidentiary materials to the Court Clerk during initial filing, Plaintiffs request that all exhibits attached to prior filings be legally treated, reviewed, and incorporated as if fully set forth and physically re-attached to this Master Civil Rights Complaint.

## III. REAL PROPERTY TARGET ASSETS

12. **Tract 1 (The Garapan Street Homestead Property):** Located at 2323 Garapan Street, Houston, Harris County, Texas 77091, legally described as

Lot One (1), Block Fourteen (14) of Highland Acre Homes Annex No. 5, officially indexed under Harris County Appraisal District / Tax Account No. 016-272-014-0001. Occupied continuously by the Sampson lineage since 1987.

13. **Tract 2 (The DeSoto Street Ancestral Property):** Located at 2539 DeSoto Street, Houston, Harris County, Texas 77091, legally described as Lots Seventeen (17), Eighteen (18), and Nineteen (19), in Block Fourteen (14) of Highland Heights Annex No. Two (2), officially indexed under Harris County Tax Account No. 072-098-000-0112.

## IV. STATEMENT OF PARTIES AND PERMISSIVE JOINDER UNDER FRCP 20(a)(2)

14. **Plaintiffs:** Stephanie Sampson is an individual citizen residing at 7115 South Mason Road #612, Richmond, Fort Bend County, Texas 77407, and a lawful heir, record owner, and co-tenant of the ancestral properties at issue. Christopher Alexander Sampson is an individual citizen and Aboriginal Indigenous American Indian residing continuously at his primary residential homestead at 2323 Garapan Street, Houston, Harris County, Texas 77091, and a lawful heir, equitable titleholder, and 31-year adverse possessor of the properties at issue.

15. **Permissive Joinder Under FRCP 20(a)(2) & Unified Retaliatory Nexus:** All Defendants are properly joined in this consolidated action pursuant to Federal Rule of Civil Procedure 20(a)(2) because Plaintiffs 'right to relief against them arises out of a single, continuous, and **unified campaign of institutional and joint-action retaliation**—an interlocking series of transactions, occurrences, and coordinated retaliatory acts aimed at punishing the Sampson lineage for protected civil rights advocacy and dispossessing the Sampson family of its ancestral real property. Specifically, every adverse act—spanning multi-generational school profiling following *Sampson v. Thorne*, the April 22, 2025 six-officer parent-conference ejection, the April 2026 academic targeting of Plaintiffs' minor daughter, the retaliatory lockout of Plaintiffs' active tax installment contractsacross the immediate Aldine Bender Road / Aldine Westfield Road corridor separating Knippel Education Center (1702 Aldine Bender Rd., Houston, TX 77032) and the Aldine ISD Tax Office (14909 Aldine Westfield Rd., Houston, TX 77032) from the M.B. Sonny Donaldson Administration Building (2520 W.W. Thorne Blvd., Houston, TX 77073)

1.

16. , the August 3, 2026 spoliation of K–12 records, and the opportunistic recording of fraudulent corporate deeds—forms an indivisible chain of **unified retaliation** raising common questions of law and fact across all Defendants, including title validity, statutory installment compliance (Tex. Tax Code § 33.02), procedural due process notice compliance (*Mullane*, *Jones v. Flowers*, and *Spanton v. Bellah*), civil rights property and contract protections (42 U.S.C. §§ 1981–1986), First Amendment and Title VI retaliation (42 U.S.C. §§ 1983 & 2000d), and municipal customs (*Monell*).

17. **The Joint Taxing Enterprise:** Defendants Aldine Independent School District ("Aldine ISD"), Harris County, City of Houston, Harris County Hospital District, Port of Houston Authority, Lone Star College System, and Houston Independent School District are distinct political subdivisions of the State of Texas operating as *ad valorem* taxing jurisdictions. These public entities pool, coordinate, and execute their property tax claims, billing profiles, and collection litigation jointly through a shared municipal collection mechanism. They are sued as an interlocking public enterprise acting under color of state law within the context of State Cause No. 2026-49413 and the underlying tax foreclosure execution under Cause No. 2024-89814.

18. **Linebarger Goggan Blair & Sampson, LLP and Designated Collection Counsel:** Defendant Linebarger Goggan Blair & Sampson, LLP ("Linebarger LLP") is a private state-procurement tax contractor operating as the designated statutory collection agent and willful participant in joint action with the Joint Taxing Enterprise under color of state law (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)). Individual collection attorneys Michael Cano (SBOT No. 24047724), Lauren L. Jones, and Wendi Faughn are joined in their individual capacities as state-procurement actors operating under color of law for executing extrajudicial post-judgment notice-evasion and joint-action collection strategies alongside Aldine ISD legal counsel Deanna L. Longo (SBOT No. 12543050) and Kanika W. Middleton (SBOT No. 24043265) (Dkt. 31-10, Page 3). Service of process upon Linebarger LLP and individual collection attorneys Michael Cano, Lauren L. Jones, and Wendi Faughn may be executed at their designated law offices located at 4828 Loop Central Drive, Suite 600, Houston, Texas 77081.

19. **Harris County Tax Assessor-Collector:** Defendant Annette Ramirez is the elected Tax Assessor-Collector for Harris County, Texas. She is joined in her individual and official capacities for her direct, extrajudicial title manipulation, account blockades, failure to intervene under 42 U.S.C. §

1986, and management of the shared collection records of the Joint Taxing Enterprise (including the August 26, 2026 "Supplement Correction" printout designated as Exhibit T-3-J; Dkt. 31-10, Pages 31–32).

20. **Harris County District Clerk:** Defendant Marilyn Burgess is the elected District Clerk of Harris County, Texas. She is joined in her official capacity (for prospective injunctive and declaratory relief under *Ex parte Young*, 209 U.S. 123 (1908)) for her direct management of electronic dockets, filing redirections, court cost billing (including Invoice No. 8080149 totaling $1,223.78 despite Plaintiffs' sustained TRCP 145 indigent fee waiver), the issuance of execution instruments under Cause No. 2024-89814, and for maintaining an automated database registry infected by material docketing mismatches that actively misrepresent the status of litigation to the public under Document ID No. 128820728 and restrict viewing of Plaintiffs' sustained indigent affidavit under Filing ID 127869618. Service of process may be effectuated at her administrative headquarters at 1001 Preston Street, 6th Floor, Suite 630C, Houston, Texas 77002.

21. **Superintendent Dr. LaTonya M. Goffney:** Defendant Dr. LaTonya M. Goffney is the Superintendent of Aldine Independent School District, operating as an executive policymaker who ratified the unconstitutional

conduct of subordinate staff and failed to implement corrective action after receiving actual, documented notice via hand-delivered civil rights transcripts on July 24, 2026 (42 U.S.C. §§ 1983 & 1986). She is joined in her individual and official capacities.

22. **Administrative Records Manager Purnell Harvey and Campus Supervisor Teresa Jones, M.Ed.:** Defendants Purnell Harvey and Teresa Jones, M.Ed. are Administrative Records Managers and Campus Supervisors for Aldine Independent School District. They are joined in their individual and official capacities for direct metadata manipulation, destruction of forensic educational records after notice of litigation (FRCP 37(e)), and tactical law enforcement exclusions in violation of the First and Fourteenth Amendments (42 U.S.C. § 1983).

23. **Aldine Legal Department & Centralized Operations Supervisor Felisa Zamora and Aldine Legal Counsel Deanna L. Longo & Kanika W. Middleton:** Defendant Felisa Zamora is joined in her individual capacity as an employee and post-judgment legal specialist within the Aldine ISD Legal Department and Centralized Operations Division (Dkt. 31-10, Pages 3, 9), alongside Aldine ISD legal counsel Deanna L. Longo (SBOT No. 12543050) and Kanika W. Middleton (SBOT No. 24043265) in their

individual capacities, for enforcing automated portal locks (card ending 7838), blocking partial payment compliance paths under Tex. Tax Code § 33.02, refusing physical U.S. currency tender in February 2026, overriding Harris County's April 24, 2026 unexecuted Order of Sale return by unilaterally issuing Aldine ISD's June 11, 2026 Order of Sale request (Exhibit F; Envelope No. 116022590; Dkt. 31-10, Pages 16–18, 21) despite actual knowledge of third-party identity fraud (*Jones v. Flowers*, 547 U.S. 220 (2006); Dkt. 31-10, Pages 38–39), and executing defective Certificates of Service (Dkt. 31, Att. 1). Service of process upon Defendants Zamora, Longo, and Middleton may be executed at their designated administrative workplace at the M.B. Sonny Donaldson Administration Building, 2520 W.W. Thorne Blvd., Houston, Texas 77073.

24. **Speculative Real Estate Entity Heaven Investments:** Defendant Heaven Investments is an active domestic corporate entity or unregistered real estate investment ghost shell operating within the State of Texas, with its designated principal repository address fraudulently listed as 2539 DeSoto Street, Houston, Texas 77091 (Plaintiffs' own ancestral property). Heaven Investments is joined as a primary defendant for its direct participation in procuring, executing, and recording forged/altered deeds (File No. 20150552824) in the real property records of Harris County to cloud

Plaintiffs' title in violation of 42 U.S.C. §§ 1981, 1982, and 1985(3) (*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)) and Tex. Civ. Prac. & Rem. Code § 12.002.

25. **Speculative Entity Sell House Now Cash LLC and Principals:** Defendant Sell House Now Cash LLC is an out-of-state corporate house-flipping entity organized under the laws of the State of Florida, engaged in predatory deed acquisitions in Harris County, Texas. Managing principal Raul Bolufe and acquisition representative Richard Deyama are sued in their individual capacities—alongside corporate entity Sell House Now Cash LLC—for federal civil rights property interference (42 U.S.C. §§ 1981, 1982, and 1985(3)), statutory real-estate and consumer fraud (Tex. Bus. & Com. Code §§ 27.01, 17.45, & 17.50), common-law fraud, statutory fraudulent real-estate document filing (Tex. Civ. Prac. & Rem. Code § 12.002), civil conspiracy, slander of title, and intentional trespass (taping unauthorized eviction notices onto Plaintiffs' front door; Exhibit O). Service of process may be executed upon Sell House Now Cash LLC via its Registered Agent, Clint Landero (also joined individually), at 2121 Biscayne Blvd., #2041, Miami, Florida 33137.

26. **Corporate Legal Counsel and Foreclosure Intermediaries:** Defendants Nicholas Thatcher and his firm, N Thatcher Law LLC, are joined for their

direct participation in executing fraudulent property instruments, facilitating deed theft (42 U.S.C. §§ 1981, 1982, and 1985(3)), and issuing predatory, hand-delivered partition demands. Defendant Barry Barnes & Associates, PLLC is a domestic professional limited liability company organized under the laws of the State of Texas, operating as private Foreclosure Title Processing Counsel engaged in high-volume debt collection and state-procured foreclosures under contract with municipal subdivisions. Service of process may be executed upon Barry Barnes & Associates, PLLC by serving its Registered Agent, Barry Barnes, at 1445 North Loop West, Suite 820, Houston, Texas 77008. Defendant American Title Company is joined as a Deed Registry Manufacturing Intermediary for its direct participation in manufacturing, processing, and recording invalid property instruments to establish a fraudulent chain of title against an unrepresented minority/Indigenous heir under confinement duress.

27. **Notary Public Proxy Carline York:** Defendant Carline York is joined in her individual capacity. Operating as an appointed institutional Notary Public for Agency 696 — Texas Department of Criminal Justice (TDCJ) under color of state law, she committed official misconduct and civil fraud (Tex. Gov't Code § 406.016; Tex. Civ. Prac. & Rem. Code § 121.004; 42 U.S.C. § 1983) by affixing her official notary seal and stamp directly over

blank, unexecuted grantor lines on the 2017 instrument (File No. RP-2017-348145) while Plaintiff Christopher Alexander Sampson was physically confined in Jefferson County, Texas (as shown on the face of the deed listing his address at 3695 FM 3514, Beaumont, Texas; Dkt. 31-10, Page 27). As a state-employed institutional notary performing agency duties, she maintains a "State Employee/None Required" surety bond designation, yet her certification of a Harris County personal appearance on July 11, 2017, constitutes an absolute physical and geographical impossibility.

28. **Notary Public Proxy Mandie B. Gaston (a/k/a Mandie D. Gaston):** Defendant Mandie B. Gaston is joined in her individual capacity. Operating as an appointed Notary Public for the State of Texas, she committed official misconduct and civil fraud (Tex. Gov't Code § 406.016; Tex. Civ. Prac. & Rem. Code § 121.004; 42 U.S.C. §§ 1981–1982) by executing a false civilian acknowledgment certificate on the 2015 deed (File No. 20150552824), falsely verifying a personal appearance in Harris County on November 14, 2015, while Plaintiff Christopher Alexander Sampson was held under continuous, non-bailable law enforcement custody within a secure jail and prisoner transit network. Service of process may be executed upon Defendant Gaston at her residential address located at 13119 Cherryglade Ct., Houston, Texas 77094.

## V. COMPREHENSIVE CHRONOLOGICAL STATEMENT OF FACTS

### A. Multi-Generational Ancestral Reclassification, Historical Linchpin, and Monell Custom (1916–1964)

29. **Federal Statutory Framework Governing Ancestral & Racial Property Discrimination (42 U.S.C. §§ 1981, 1982, & 3617):** Under 42 U.S.C. §§ 1981 and 1982 and the Fair Housing Act (42 U.S.C. §§ 3604(a)–(b) & 3617), as construed by the U.S. Supreme Court and Fifth Circuit in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 437–43 (1968), *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987), and *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982), federal law prohibits both public officials and private actors from targeting identifiable lineages based on ancestry, race, or heritage—including Plaintiffs' Aboriginal Indigenous American Indian lineage traced through certified maternal genealogical ledgers to 7th great-grandmother **Coo Coo Chee (Mohawk Woman)** (born 1735 in South Carolina; spouse Joseph West) and 6th great-grandmother **Hannah Smith** (born October 10, 1751; departed October 25, 1822; State Court Exhibits X-10 & X-11)—to impair their equal right to inherit, hold, contract over, convey, or peacefully enjoy their residential dwelling.

30. **Empirical Transatlantic Record and Bureaucratic "Paper Genocide":** Empirical historical records—including the Trans-Atlantic Slave Trade Database—establish that of the estimated 10 to 12 million enslaved Africans who survived the Middle Passage, approximately 4% to 6% were brought directly to mainland North America, while the vast majority were transported to the Caribbean and South America. Throughout the 17th, 18th, and 19th centuries, colonial and early state administrators implemented systematic bureaucratic reclassifications—a legal phenomenon documented by historians as "paper genocide"—rewriting the identities of localized Indigenous populations in public registries, tax logs, and census rolls under catch-all labels such as "Negro," "Mulatto," or "Colored." Reclassifying Indigenous individuals under African-derived racial labels served a deliberate legal and administrative purpose: stripping away ancestral occupancy protections and bringing Indigenous family lands under standard property execution laws.

31. **Historical Linchpin & Widespread Systemic Animus (Exhibit W & Quebedeaux Park Racial Terror Markers):** The systemic, institutional hostility directed against the Sampson bloodline and its ancestral real property holdings within the Harris County perimeter is rooted in a deeply documented historical custom of racial tracking, selective judicial

acceleration, and administrative asset targeting. As explicitly verified by contemporaneous press archives from *The Marshall Messenger* dated February 18, 1916 (attached hereto as **Exhibit W**), preceding family ancestors—recorded under alternating entries as Henry Sampson and Herbert Sampson—were subjected to summary municipal tracking, explicitly isolated under restrictive racial classifications by local authorities to strip away their Indigenous lineage, and executed by hanging within the Harris County operational jurisdiction on February 15, 1916. This execution formed a core part of a documented history of severe racial violence and terror used to enforce segregation and asset displacement throughout the Harris County jurisdiction—a historical reality commemorated by four official historical markers approved in downtown Houston's Quebedeaux Park honoring victims of documented racial terror lynchings in the county between 1890 and 1928, including **John Walton (1890)** (shot and killed in Houston's First Ward), **Bert Smith (1917)** (abducted and hanged by a white mob in Goose Creek), **John White (1919)** (burned to death inside a jail cell in Crosby), and **Robert Powell (1928)** (abducted from Jefferson Davis Hospital by a mob and hanged from a bridge over Westheimer Road). During those volatile eras in Texas history, Plaintiffs' ancestors were systematically labeled "Negro," "Colored," or "Black" on official municipal

registries by administrative decree, because openly claiming Aboriginal Indigenous American Indian identity before local authorities carried the immediate threat of extrajudicial violence and terror. This administrative reclassification served a deliberate structural legal motive: under early American statutory frameworks, distinct legal exemptions and protections frequently barred the perpetual enslavement and total land dispossession of recognized Indigenous populations, whereas populations reclassified under "Negro" or "Black" labels were subjected to statutory vulnerabilities that facilitated seamless land clearance, asset displacement, and judicial subjugation.

32. **Patriarch George Franklin Sampson, Sr. and the 1964 Aldine ISD Enrollment Bar:** Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978), persistent, entrenched institutional customs that animate official action establish municipal liability. The modern adverse actions, automated payment portal blocks, and predatory foreclosure mechanisms executed against Plaintiffs are rooted in deep-seated institutional malice spanning generations: Plaintiff Christopher Alexander Sampson's last name and ancestral blood were the direct cause of Defendant Aldine ISD's historical and modern administrative friction. Family patriarch George Franklin Sampson, Sr.—an early pioneer settler of the historic Acres Homes

community and an independent house-mover by trade who moved structures using a team of heavy mules—discovered in 1964 that Defendant Aldine ISD maintained a rigid system of total racial exclusion, explicitly denying enrollment to his primary bloodline children, Vernon and Chesley Sampson, at Aldine High School solely under an administrative policy of racial discrimination and directing them instead to segregated George Washington Carver High School.

**B. The 1965 Federal Desegregation Decree, Structural Attrition, Institutional Resource Disparity, and Fraudulent Procurement of Unitary Status (1965–2003)**

32. **The March 23, 1965 Federal Desegregation Injunction (*Sampson v. Thorne / United States v. Aldine ISD*):** Partnering directly with the United States Department of Justice Civil Rights Division, patriarch George Franklin Sampson, Sr. initiated active constitutional litigation in federal court, officially tracked as *Sampson v. Thorne* (subsequently tracked under the consolidated federal handle *Sampson, et al. and United States of America v. Aldine Independent School District, et al.*). On March 23, 1965, U.S. District Judge Joe Ingraham reviewed the extensive evidence of structural discrimination and signed a landmark, permanent federal integration injunction decree, stripping Aldine ISD of its local administrative autonomy

and placing the entire district under strict federal court compliance supervision—ordering junior high integration by September 1966 and senior high integration by September 1967.

33. **Passive "Freedom of Choice" Evasion, Three Eras of Generational Friction, and George Franklin Sampson, Sr.'s 1983 Civil Rights Legacy:** Rather than aggressively re-zoning schools or reassigning students following Judge Ingraham's March 23, 1965 federal desegregation decree (*Sampson v. Thorne*), Aldine ISD implemented a passive "freedom of choice" policy that placed the entire burden of integration on Black and Indigenous families—requiring parents to navigate a complex bureaucratic transfer system to attend well-funded, traditionally white schools like Aldine High while never reassigning white students into Black neighborhoods, leaving Acres Homes schools segregated well into the late 1970s. Aldine ISD weaponized passive resistance by refusing to invest in infrastructure, tracking minority students into segregated academic tiers inside buildings, minimizing extracurricular integration, and starving Acres Homes campuses of renovations and accredited full-time staff under the pretext that integration would "happen naturally." As independently documented in published historical records compiled by journalist Anne Marie Kilday and in granddaughter Erika Sampson's 1988/1990 published history ("The Effect of One Man", *The*

*Texas Historian*), Aldine ISD's slow-walked compliance and intense institutional friction funneled patriarch George Franklin Sampson, Sr.'s direct descendants into adversarial positions across three distinct generational eras:

- **(a) Era One — The Immediate Heirs & Structural Exclusion (1965–1970s):** Despite winning their federal court case in March 1965, Aldine ISD's legal team engineered a delayed integration timeline pushing senior high integration to September 1967, running out the clock and keeping Vernon and Chesley Sampson legally boxed out of Aldine High School until they aged out and graduated from segregated George Washington Carver High School;
- **(b) Era Two — The Third Generation & Institutional Reclamation (Late 1980s):** Following patriarch **George Franklin Sampson, Sr.'s** passing in **1983** (after which his family famously left his funeral service together and immediately went to cast their ballots in a local election), his grandchildren came of age navigating the very systems their grandfather fought to dismantle. In the late 1980s, granddaughter **Erika Sampson** attended **Aldine-Eisenhower High School**, proactively using her platform as a student to write a

definitive history of her grandfather in 1988 titled *"The Effect of One Man"* (published in *The Texas Historian* in 1990)—serving as a living reminder of the *Sampson v. Aldine ISD* mandate and forcing the school system to formally acknowledge its past segregationist practices; and

- **(c) Era Three — Grandson Christopher Alexander Sampson's Colonial Hills Placement & Modern Retaliatory Nexus:** The generational weight of that desegregation victory fell directly upon grandson Plaintiff Christopher Alexander Sampson, who was forced into an elementary campus explicitly named **Colonial Hills Elementary** and targeted by a centralized retaliatory tracking database (42 U.S.C. §§ 1981, 1983, and 2000d (Title VI)). Because Defendant Aldine ISD sought to insulate its administrative history from modern civil rights challenges, the District's legal and collection desks utilized this exact background identity profile and multi-generational history—openly invoked by Aldine ISD lead counsel Deanna L. Longo on the live hearing record as *"a little bit of history"* (Dkt. 31-10, Page 16)—to trigger the unconstitutional records destruction, automated transaction blocks, and notice evasions asserted in this action, demonstrating that today's enforcement tracks

are directly animated by the exact same unextinguished institutional custom used to strip the Sampson lineage of their legal standing and ancestral land rights for over a century.

34. **The 1978 Structural Attrition, White Flight Quota Substitution, Institutional Resource Disparity, and Fraudulent Procurement of Unitary Status (2002–2003):** Historically, schools in Black and Indigenous communities were the anchors of civic life, hosting town halls, athletic events, and community organizing. When the federal government intervened again in 1977–1978 due to the failure of Aldine ISD's passive approach, the District engineered a structural desegregation and busing plan requiring no campus to exceed 30% African-American enrollment that decentralized Acres Homes and placed the heaviest logistical and emotional burdens squarely on local families:

- **(a) Loss of Traditional K–12 Pathways & Sibling Separation:** Three primary neighborhood schools in Acres Homes that had served as generational pillars were stripped of their traditional K–12 grade structures and converted into restrictive 5th-and-6th-grade centers, frequently busing siblings within the same household to disconnected schools across Harris County and making it extraordinarily difficult

for working Acres Homes parents lacking reliable transit to attend PTA meetings, parent-teacher conferences, or school plays;

- **(b) One-Way Busing Shielding White Neighborhoods & Demographic Quota Substitution:**Instead of busing equal proportions of students, the school board orchestrated a "one-way" integration traffic flow designed to shield white neighborhoods from seeing their children bused into Acres Homes while forcing thousands of Acres Homes youths to wake before dawn and ride buses miles away to northern and western campuses—lengthening their school days, cutting off after-school athletics, and mirroring the experience documented by former Houston Mayor **Sylvester Turner** (who grew up in Acres Homes and was bused 18 miles away to Klein High School). When a wave of white flight swept the district in the late 1970s, rather than adjusting boundaries to maintain a stable desegregated community, Aldine ISD used incoming Hispanic and Mexican-American families moving into formerly white neighborhoods to mathematically satisfy the court's numerical integration averages while bypassing true systemic desegregation between white leadership structures and historic Acres Homes families; and

* **(c) Institutional Resource Disparity, the 1995 Magnet Revision of Carver High, & The Fraudulent Procurement of Unitary Status (2002–2003):** While final municipal policymakers systematically routed immense public revenues, advanced scholastic endowments, and modernized infrastructure expansions to **Aldine, Eisenhower, MacArthur, and Nimitz High Schools**, the District executed a policy of calculated resource starvation, administrative isolation, and permanent cultural subversion against **George Washington Carver High School**—named after a globally recognized historical figure whose educational pioneering served as an ideological catalyst for community cohesion within the historic Acres Homes perimeter. In 1995, Aldine ISD modified the federal decree to strip Carver High of its status as a comprehensive neighborhood high school, remove its traditional athletic continuity, and convert it into a specialized, selective Magnet School for Applied Technology, Engineering, and the Arts so local youth could no longer walk to their community school by right, in violation of Title VI (42 U.S.C. § 2000d) and the Fourteenth Amendment Equal Protection Clause. This deliberate, institutional degradation of a campus bearing the name of an iconic minority hero directly mirrors the subsurface disciplinary tracking, falsified record profiling, and extrajudicial database lockouts deployed across decades to break the background academic and sports records of Plaintiff Christopher Alexander Sampson. Thereafter, as documented in contemporaneous historical records,

Aldine ISD—which was historically the singular Houston-area school district remaining under a permanent, active federal desegregation compliance mandate—represented to the reviewing federal court in late 2002 that the District had acted in complete good faith, achieved complete integration, and eliminated the vestiges of past discrimination under *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 248 (1991), securing unitary status in December 2002 / early 2003. However, those representations masked a deep-seated institutional custom of racial profiling, disproportionate disciplinary tracking, and administrative isolation mechanisms targeted at minority student populations—including the descendants of patriarch George Franklin Sampson, Sr.—and were aggressively pursued over the explicit, documented objections of prominent Black community leaders, including **U.S. Representative Sheila Jackson Lee** and **State Representative Sylvester Turner**, who formally warned the federal court that minority student populations within the Acres Homes perimeter were being systematically marginalized by the District's restructuring plans (Fed. R. Civ. P. 60(d)(3)).

**C. Student Profiling, Unconstitutional Solitary Confinement, "Aldine Booking," and Athletic Retaliation (1987–2002)**

35. **The Custom of Student Profiling, Solitary Confinement, and "Aldine Booking" (1987–2002):** This deep institutional animus targeted Plaintiff

Christopher Alexander Sampson from the absolute inception of his enrollment. Beginning in Pre-K and continuing aggressively through the 1st, 2nd, 3rd, and 4th grades at Colonial Hills Elementary (starting in 1987), campus leadership—including Head Principal **Weaver A. Odom, Jr.** and Assistant Principal **Mrs. Hughes**—implemented an unconstitutional disciplinary track characterized by: (a) routinely removing Plaintiff from his classrooms and dragging him into the main Principal's Office where Mr. Odom personally subjected him to severe corporal punishment, repeatedly swatting him with a massive wooden paddle for minor infractions such as talking back or speaking off task, alongside extrajudicial psychological interrogation and "mind games" executed by Mrs. Hughes to force administrative admissions; (b) intentionally failing Plaintiff in the 1st grade and actively withholding standard reading resources—forcing his mother to hire an outside private reading tutor after the 4th grade just to establish basic literacy—while stamping him with a false "problem child" administrative label; (c) maintaining a continuous, hostile "locked-up room treatment" throughout the 3rd, 4th, 5th, 6th, 7th, and 8th grade levels that operated as an unconstitutional custom of school solitary confinement, locking him inside small, windowless solitary isolation boxes and containment tanks without baseline parental notifications or due process hearings (*Goss v. Lopez*, 419

U.S. 565, 574–76 (1975)); and (d) during Plaintiff's 8th-grade academic year, security officers intercepting him based on pure campus hearsay without probable cause or judicial warrant, placing him in physical handcuffs on school grounds, and extracting him to an internal administrative booking facility known as **"Aldine Booking"**, where he was fingerprinted, photographed, and locked inside a secure holding cell without any legal representation, parental entry, criminal charges, or court appearance—violating the Fourth and Fourteenth Amendments (42 U.S.C. § 1983) and directly driving him to drop out of school by the 10th grade after being targeted and sent to the office over 100 times before winter break.

36. **The 2001 Athletic Retaliation & Continuing Violation Doctrine (Exhibit M-3):** In the 2001 academic year, Plaintiff Christopher Alexander Sampson was a dedicated member of the campus basketball team, as verified by the official 9th-grade team portrait record attached hereto as **Exhibit M-3**. Defendant Aldine ISD's campus administrators and disciplinary divisions utilized a highly subjective, unmonitored tracking and disciplinary system to monitor and penalize Black and Indigenous student conduct, weaponizing this practice to fabricate a pretextual administrative paper trail against Christopher totaling over 100 unwarranted office referrals. The District's risk management and campus administrators intentionally waited until the eve of

Christopher's first career starting game—immediately preceding the designated spring break itinerary—to execute an extrajudicial administrative action, summarily implementing an institutional lockout that banned Christopher from the court and ejected him from the basketball team, and when Christopher attempted to return for the subsequent 11th-grade season, relied upon this same fabricated tracking profile to permanently bar his re-entry. This systematic, ongoing institutional conduct constitutes a continuing violation and reflects an unconstitutional municipal policy, practice, or custom under 42 U.S.C. § 1983 (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983)) that directly animated Defendants' 2025–2026 retaliatory property and record deprivations

**D. Capturing Childhood SSI Flows, Cultural Heritage Deprivation, Actual Ouster & 25-Year Absolute Bar, and Sibling Constructive Trust Homestead Restoration (1987–2022)**

37. **Capturing Childhood SSI Flows for Mortgage Satisfaction and Parental Inheritance:** Plaintiff Christopher Alexander Sampson was a young child of approximately 4 or 5 years of age when our cohesive family unit originally established permanent occupancy and initialized residency at 2323 Garapan Street in 1987. Both of his parents tragically and prematurely passed away

prior to his 13th birthday, vesting legal and equitable title immediately in Plaintiffs as heirs (Tex. Estates Code § 101.001). Because the real property's primary residential mortgage was not paid off at the time of their passing, Plaintiff Christopher Alexander Sampson's individual, childhood Supplemental Security Income (SSI) funding draws were systematically and legally captured and deployed out of pocket to fund and pay the home's primary residential mortgage over a 5-year tracking window spanning continuously from age 13 to age 18. This absolute financial absorption cements our root equitable interest and claim of right, establishing a constitutionally protected property interest under the Fourteenth Amendment (*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) and a constructive/resulting trust (*Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 988 (1948)).

38. **Profound Cultural, Heritage, and Identity Deprivation of an Aboriginal Indigenous Claimant:** Plaintiffs place directly into the permanent federal record that Plaintiff Christopher Alexander Sampson is an Aboriginal Indigenous American Indian (of verified Mohawk maternal lineage; State Court Exhibits X-10 & X-11), a distinct cultural and ancestral status that directly informs the equitable claim of right and the calculation of compensatory and exemplary damages before a Texas jury (*Saint Francis*

*Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987); *Jones v. Alfred H. Mayer Co.*

, 392 U.S. 409, 413, 437–43 (1968)). The target real property *res* commonly known as 2323 Garapan Street is not a mere speculative real estate asset, a fractional corporate ledger entry, or an assignable parcel of commercial grid coordinates; it is an ancestral family sanctuary preserved continuously under the physical custody and exclusive homestead dominion of our lineage for nearly four decades. The predatory campaign executed by Defendants to tape unauthorized eviction notices onto the front door (Exhibit O), block digital accounts, and threaten immediate physical loss of this homestead represents a direct, state-sanctioned assault on Plaintiff's generational heritage. For an Aboriginal Indigenous American Indian, the experience of having public-procurement agents, private state contractors, and unregistered corporate entities deploy data manipulation to strip a family of its land triggers deep personal, emotional, and cultural trauma—an institutional pattern of administrative attrition, land theft, and systematic forced clearance of families from their territories that directly mirrors the historic patterns of systemic oppression and territorial dispossession historically inflicted upon Indigenous peoples.

39. **Actual Ouster, Joint Adverse Possession, Tacking, & The 25-Year Absolute Bar Rule (Tex. Civ. Prac. & Rem. Code §§ 16.023, 16.027, & 16.030(a)):** For 31 consecutive years, Plaintiffs and their possessory family unit have exercised absolute, peaceable, and exclusive dominion over the property boundaries commonly known as 2323 Garapan Street. Plaintiff Christopher Alexander Sampson began physically occupying this property as a minor at age 13 following his parents' passing, holding sole physical control and authority over the premises and continuously maintaining the property to the exclusion of all outside third-party claimants—serving as open, notorious notice of a hostile claim of right that refutes any corporate defense of permissive use (*Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963); *Dyer v. Cotton*, 333 S.W.3d 703, 713 (Tex. App.—Houston [1st Dist.] 2010, no pet.); Tex. Civ. Prac. & Rem. Code § 16.027). Under binding Texas Supreme Court precedent, while cotenant possession is initially presumed permissive, a long-continued, uninterrupted lapse of decades establishes a presumed ouster (*Illg v. Garcia*, 92 Tex. 251, 257, 47 S.W. 717, 718 (1898); *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899–902 (Tex. 1976)), and notice of repudiation is constructively inferred from unequivocal acts of exclusive ownership (*Republic Prod. Co. v. Lee*, 132 Tex. 254, 121 S.W.2d 973, 978 (1938)). Distinguishing standard maintenance under

*Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954) and *Rhodes v. Cahill*, 802 S.W.2d 643 (Tex. 1990), Plaintiffs' 31-year exclusive dominion—characterized by **$24,349.20** in extensive infrastructure improvements, childhood SSI mortgage satisfaction, **$9,124.25** in direct property tax payments, and complete exclusion of non-possessory claimants without a single demand for entry or accounting—matured into an unassailable presumed ouster. Furthermore, Plaintiffs' unbroken chain of family privity satisfies statutory tacking (*Cochran v. Faris*, 18 Tex. 850 (1857); *McAnally v. Texas Co.*, 124 Tex. 196, 76 S.W.2d 997 (1934); Tex. Civ. Prac. & Rem. Code § 16.023) and joint prescriptive acquisition (*Anzaldua v. Richardson*, 287 S.W.2d 299, 301 (Tex. Civ. App.—San Antonio 1956, writ ref'd n.r.e.)). Because a mature 25-year adverse possession timeline vests full fee-simple title in the adverse possessor by operation of law, any competing interests held by stale record owners or non-possessory heirs are completely extinguished upon expiration of the statutory period (*Woodward v. Ortiz*, 150 Tex. 75, 81, 237 S.W.2d 286, 290 (1951); Tex. Civ. Prac. & Rem. Code § 16.030(a)). Consequently, a grantor cannot subsequently convey a better title than what they legally possess (*Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1956)), and any deeds purchased by corporate entities from long-absent

heirs after limitation title has fully matured convey zero interest and are legal nullities (*Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899–902 (Tex. 1976)).

40. **Sibling Agreement, Equitable Title Vesting, Constructive Trust, and $24,349.20 Out-of-Pocket Homestead Restoration (2017–2022; Invoices #8362 & #6783 and Exhibits H & I):** The 2017 real property record alterations and paper title tracking consolidations into the name of Stephanie Sampson (File No. RP-2017-348145) were induced entirely by material misrepresentations, false promises of performance, and constructive fraud within a confidential family agreement among sibling heirs—under which sibling heirs were promised that a municipal government program would replace the decaying roof of the ancestral homestead on the condition that record paper title be temporarily consolidated into Stephanie's name to satisfy standard grant qualification guidelines. This promised performance completely failed to materialize: no municipal repairs were ever executed, no grant funding was delivered, and no consideration of any kind was ever paid to support the transfer. Under settled Texas real property jurisprudence, a deed induced by a false promise of future performance made with no intent to perform is voidable for fraud in the inducement and a total failure of consideration (*Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 988–89 (1948);

*Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 19 S.W. 472, 474 (1892)). Consequently, while formal record paper title passed to the grantee, the true beneficial, equitable title remained continuously vested in the grantor, Christopher Alexander Sampson, under an equitable resulting or constructive trust arising by operation of law to prevent unjust enrichment (*Mills v. Gray*, 210 S.W.2d at 988)—establishing a vested equitable title interest that remains completely independent of and superior to the defective paper record title. Immediately upon his release from state confinement in November 2017, Plaintiff Christopher Alexander Sampson assumed absolute physical dominion, care, and control over 2323 Garapan Street, found the homestead structurally compromised, and personally funded a comprehensive capital infrastructure overhaul out of his own pocket totaling **$24,349.20**: (1) personally satisfying outstanding *ad valorem* tax obligations to stabilize the municipal ledger profiles; (2) paying **$5,350.00** for subsurface engineering and freeze foundation remediation (**Invoice #8362**); (3) contracting and paying **$12,756.04** to Licensed Contractor Levi Gamble (**Invoice #6783**, issued June 22, 2022; Exhibit H) for a complete tear-off roof replacement, exterior structural siding reconstruction, 125-amp/watt master circuit breaker upgrades, and wood rear deck perimeter expansions; and (4) financing **$6,243.16** out of pocket across itemized retail procurement

records under LL Flooring, Tile Co., and Home Depot receipts (**Exhibit I**) to structurally fortify the interior living parameters—continuously maintaining and occupying the property as his protected residential homestead under Texas law (*Sayers v. Pyland*, 139 Tex. 57, 161 S.W.2d 769, 773 (1942); Tex. Const. art. XVI, § 51).

**E. Confinement Impossibility, Fraudulent Deeds, Bona Fide Purchaser Forfeiture (*Madison v. Gordon*), Verbatim Voicemail Fraud (Exhibit T), Post-Harvey "High and Dry" Speculative Premium, Fair Housing Act Intimidation, and Civil RICO Predicate Acts (FRCP 9(b) Particularity)**

41. **The Fraudulent 2015 General Warranty Deed (File No. 20150552824) & Confinement Impossibility:** Pursuant to Federal Rule of Civil Procedure 9(b), Plaintiffs plead with particularity that while Plaintiff Christopher Alexander Sampson was held continuously for 1,374 consecutive days under a non-bailable "SNO BOND" order in the Harris County Jail (Cause Nos. 133559901010 & 133560001010, arrested Feb. 1, 2012, transferred Nov. 6, 2015, and received at TDCJ B.J. Gist Unit Dec. 2, 2015; SID No. 07037603, TDC No. 02032793), transaction coordinators crossed out his unsigned notary block on Page 12 of 22 (ER 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) of the 2015 deed conveying 2539 DeSoto Street to unregistered ghost shell Heaven Investments (which hijacked 2539 DeSoto Street as its own address) and

appended a false fallback acknowledgment on Page 5 of 22 (ER 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) where Notary Mandie B. Gaston (stamp reading MANDIE B GASTON vs. text Mandie D Gaston) falsely certified a Harris County personal appearance on November 14, 2015—after jailhouse duress threats and uninitialed page-swapping noted in the Clerk's December 9, 2015 "Recorder's Memorandum" (ER 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), violating 42 U.S.C. §§ 1981, 1982, and 1985(3) (*Jones v. Alfred H. Mayer Co.*, 392 U.S. at 413), Tex. Civ. Prac. & Rem. Code §§ 12.002 & 121.004, and Tex. Gov't Code § 406.016.

42. **The Defective 2017 General Warranty Deed (File No. RP-2017-348145):** While Plaintiff Christopher Alexander Sampson was locked inside the TDCJ Glenn Goodman Unit and TDCJ LeBlanc Unit in Jefferson County, Texas (until his November 22, 2017 parole release)—and as confirmed on the face of Aldine ISD's own Exhibit A listing Christopher's mailing address as **3695 FM 3514, Beaumont, Texas**, the literal street address of a TDCJ state prison unit (Dkt. 31-10, Page 27)—TDCJ Institutional Notary Carline York falsely certified a personal appearance in Harris County on July 11, 2017 over blank grantor lines on a deed conveying 2323 Garapan Street to Stephanie Sampson—induced by an unfulfilled promise of a municipal roof-repair grant and zero consideration, rendering the deed voidable for fraud in

the inducement, statutory acknowledgment failure (Tex. Civ. Prac. & Rem. Code § 121.004; *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976)), and subject to constructive trust (*Mills v. Gray*, 210 S.W.2d at 988–89).

43. **Five Predatory "Wild Deeds" (Tab U-2), Verbatim Voicemail Fraud (Exhibit T), Failure to Inspect Stripping Bona Fide Purchaser Status (*Madison v. Gordon*), Fair Housing Act Intimidation (42 U.S.C. § 3617), and Civil RICO Predicate Acts (18 U.S.C. §§ 1341, 1343, 1962):** In April 2026, Florida house-flipping entity Sell House Now Cash LLC, managing principal Raul Bolufe, acquisition representative Richard Deyama, registered agent Clint Landero, and corporate counsel Nicholas Thatcher / N Thatcher Law LLC (alongside Barry Barnes & Associates, PLLC and American Title Company) recorded five (5) predatory "wild deeds" (Tab U-2) utilizing void instruments involving outside individuals **Loretta Marie Sampson** and **LaTrina Yvette Sampson** to slice up Plaintiffs' undivided ancestral property without occupant consent. As documented in Defendant's public corporate manifesto (Exhibit U), managing principal Raul Bolufe operates a business model specifically designed to target fragmented, unverified fractional heir interests remotely via mobile notaries while deliberately bypassing mandatory physical inspections of occupied estates. Under settled Texas Supreme Court precedent in *Madison v. Gordon*, 39 S.W.3d 604, 606

(Tex. 2001), *Collum v. Sanger Bros.*, 98 Tex. 162, 82 S.W. 459, 460 (1904), and *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 290 (1951), Christopher Alexander Sampson's open, continuous physical possession since 1987 operated as a visible proclamation of the family's rights, and the LLC's complete failure to inspect constitutes willful blindness that strips Defendants of "Bona Fide Purchaser" status as a matter of law. Furthermore, pursuant to Federal Rule of Civil Procedure 9(b), Plaintiffs plead verbatim that prior to suit, acquisition agent Richard Deyama left a recorded voicemail on Plaintiff Stephanie Sampson's mobile phone (Exhibit T) stating: *"Hi Stephanie, how's it going? It's Richard Diama [Deyama], yeah I'm calling from Sell House Now Cash. We co-own the property with you, 2323 Garapan St. So I just wanted to work something out. This property is going to be lost in auction September, October, so let's work something out that benefits you, benefits us, before we lose it. Let me know. Thanks."*— while launching repeated, aggressive phone calls falsely claiming the LLC already owned "50 percent of the home" (Tex. Bus. & Com. Code §§ 27.01, 17.45, & 17.50), taping unauthorized eviction notices onto Plaintiffs' front door (Exhibit O), and delivering predatory partition demands. Plaintiffs explicitly reserve the right to amend to join the remaining four (4) Sampson sisters as active co-plaintiffs. This interstate scheme—utilizing out-of-state

Florida corporate shells, interstate recorded wire transmissions, U.S. Mail, and fraudulent Harris County electronic land recordings to intimidate occupants and cloud title—constitutes actionable post-acquisition housing coercion and interference under the Fair Housing Act, 42 U.S.C. §§ 3604(a)–(b) and 3617 (*Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982)), as well as a pattern of federal mail and wire fraud predicate acts (18 U.S.C. §§ 1341 and 1343) actionable under Civil RICO, 18 U.S.C. §§ 1962(c)–(d) and 1964(c).

44. **The Post-Harvey "High and Dry" Premium Driving Speculative Deed-Theft and Centralized Revenue Targets:** Plaintiffs place directly into the record the structural macroeconomic and environmental motives driving Defendants' coordinated enforcement mechanisms. Following the catastrophic devastation of Hurricane Harvey, real estate speculators and corporate developers shifted their risk-assessment parameters across the Houston metropolitan area. Because the nine-square-mile perimeter of the historic minority community of Acres Homes sits at an elevation that left it completely dry and resilient to 500-year storms while adjacent low-lying perimeters inside the Aldine ISD boundaries flooded severely, the neighborhood was suddenly reclassified as high-value, "high-and-dry" real estate collateral. Because Houston completely lacks traditional zoning laws,

corporate developers and out-of-state house-flipping entities—including Defendant Sell House Now Cash LLC under the business model of Raul Bolufe—began aggressively targeting the area to acquire, demolish, and subdivide historic, multi-acre single-family tracts into clusters of modern, gated townhomes. This rapid influx of speculative outside capital forced local land values upward, creating an artificial property tax squeeze: even where generational homesteads remained fully paid off, the construction of half-million-dollar townhomes directly adjacent to historic properties triggered skyrocketing *ad valorem* tax assessments, weaponized by the Joint Taxing Enterprise to force low-income, minority families out of their ancestral perimeters. This hyper-accelerated gentrification grid directly intersects with the July 2025 Aldine ISD Board of Trustees resolution to bridge its $100 million operational deficit (*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). To capture this surging real estate premium and replace generational minority residents with high-yield tax profiles, the Joint Taxing Enterprise and its state-procurement legal contractors, Linebarger LLP, deployed an aggressive predatory liquidation track—generating corrupted address profiles, imposing automated portal blocks on credit card ending 7838 (Tab E), and refusing physical U.S. currency tender (31 U.S.C. § 5103) to intentionally engineer default profiles

on performing accounts, ensure generational owners remained blind to post-judgment enforcements, and clear the path for fraudulent corporate "wild deeds" (Tab U-2) using the tax foreclosure mechanism as an extrajudicial tool for predatory deed theft and land clearance in direct violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1982, and 1985(3).

**F. The $100 Million Budget Deficit, First Amendment Retaliation (*Keenan & Praprotnik*), Binding Homestead Admission (Exhibit B), April 7, 2025 / February 15, 2028 Contract Performance (Exhibits C–E & Tab F), Verbatim June 11, 2026 Order of Sale Fraud (Exhibit F), and Certified Transcript Admissions (Dkt. 31-10)**

45. **Board Liquidation Directives, *Monell* "Moving Force," First Amendment Retaliation (*Keenan v. Tejeda*), and Policymaker Ratification (*Praprotnik*):** Facing a $100 million budget deficit and campus closures (Smith, Eckert, Raymond, and Oleson elementaries), the Aldine ISD Board of Trustees officially approved, maintained, and enforced administrative directives and state-procurement contracts in June 2024 and July 2025 empowering its Chief Financial Officer (CFO), its in-house tax collection department, and its designated delinquent tax collection attorneys (Linebarger LLP) to initiate sweeping lawsuits, establish tax liens, pursue foreclosures, and aggressively liquidate real property assets at public

auctions to immediately clear back taxes, interest, and penalties—acting as the direct "moving force" behind the subsequent constitutional violations and notice evasion inflicted upon the Sampson estate under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). On April 22, 2025, Campus Supervisor Teresa Jones, M.Ed. orchestrated a six-officer police exclusion barring Plaintiff Christopher Alexander Sampson from a 7:15 AM parent-teacher conference immediately after he raised protected civil rights issues, followed by hostile electronic portal messages on April 26, 2025,and funneled that retaliatory animus less than a quarter-mile around the corner from Knippel Education Center (1702 Aldine Bender Rd., Houston, TX 77032) directly to the Aldine ISD Tax Office (14909 Aldine Westfield Rd., Houston, TX 77032) and the Aldine ISD Legal Department at the M.B. Sonny Donaldson Administration Building (2520 W.W. Thorne Blvd., Houston, TX 77073). Superintendent Dr. LaTonya M. Goffney's failure to intervene after receiving actual written notice on July 24, 2026 ratified this retaliation under *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and 42 U.S.C. §§ 1983 and 1986, while Aldine ISD counsel Deanna L. Longo's explicit invocation on the live hearing record of **"a little bit of history"** (*"Your Honor, we do not have a policy that is similar to that. What I can tell you is that in this particular instance, if I can just give you a*

*little bit of history"*; Dkt. 31-10, Page 16) to justify refusing any installment compromise on Aldine ISD's $9,368.83 balance (Dkt. 31-10, Pages 21, 23, 41–43) squarely satisfies Fifth Circuit First Amendment retaliation standards under *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

46. **Binding Homestead Admission (Exhibit B), Prevented Performance of Active Installment Contracts (Exhibits C–E & Tab F), Refusal of Physical U.S. Currency Tender, August 26, 2026 Supplement Correction (Exhibit T-3-J), & Certified Transcript Admissions (Dkt. 31-10, Pages 15–24, 43–44):** On an official Aldine ISD "Request for Payment Schedule" attached to Defendant's own judicial Answer as Exhibit B, the taxing entity's clerk explicitly checked the box for **"HS Exemption" (Homestead Exemption)**—a binding judicial admission that Aldine ISD operated with direct municipal knowledge that 2323 Garapan Street was a constitutionally protected primary residential homestead (Tex. Const. art. XVI, §§ 50–51). On **April 7, 2025**, Defendant Aldine ISD issued a formal written tax repayment contract (Exhibit C) mandating that the current 2025 tax milestone be cleared **"no later than January 31, 2026,"** with the final contractual maturity extending through **February 15, 2028**, and on **March 16, 2026**, the Joint Taxing Enterprise established an *ad valorem* tax installment agreement under **Texas Tax Code § 33.02(d) (Agreement No.**

**225713; Tab F**), identifying Stephanie Sampson as sole owner—creating vested statutory property entitlements under Fourteenth Amendment Due Process (*Board of Regents v. Roth*, 408 U.S. at 577; *Logan v. Zimmerman Brush Co.*, 455 U.S. at 430–32). Plaintiffs fully performed under these statutory shields, continuously funded directly by Christopher Alexander Sampson from individual personal accounts: remitting **$5,520.00 across eleven (11) consecutive monthly payments** into Aldine ISD accounts (including physical cash receipts Receipt #8316579 on 03/26/2025 for $325.00, Receipt #8316578 on 04/25/2025 for $450.00, Receipt #8316576on 06/30/2025 for $450.00, Receipt #8316575 on 07/28/2025 for $450.00, and Receipt #8320093 on 08/28/2025 for $450.00, totaling $4,950.00 in cash receipts under Exhibit C, plus $1,844.12 via the PayIt portal under hashes 7f1d6e13, d3736da3, 0e6fc03b, and c7b35ffd on **January 29, 2026** for $461.03—executed **two full days before the January 31, 2026 deadline**; Exhibit D), and remitting **$2,330.13** in out-of-pocket down-payment and card installments under Harris County Agreement No. 225713 (Receipt #2637033 on 03/23/2026 for $577.02 stamped by clerk mpalomares under 'christopher a sampson', plus 7e19a0b8, c0c81923, and c79b3d04; Exhibit E). Following the successful remittance processed on **January 29, 2026**, Plaintiff Christopher Alexander Sampson personally presented himself at the

Aldine ISD Tax Office in **February 2026** to tender a scheduled, in-person cash payment to maintain formal compliance on the account, whereupon administrative agents flatly refused to accept physical U.S. currency (violating 31 U.S.C. § 5103 and *Baucum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 866 (Tex. 1963)), declared the account locked, turned away the tender, and ordered Plaintiff to vacate the perimeter—while concurrently implementing automated transaction blocks on Plaintiffs' payment streams, terminating all digital portal access on **credit card ending 7838 (Tab E)**, requesting an Order of Sale on February 3, 2026 two full years before the February 15, 2028 contractual maturity date, scrubbing Christopher's name from the Owner block on Aldine ISD's July 31, 2026 statement, and on **August 26, 2026**, going behind the back of the Court to generate a fraudulent **"Supplement Correction"** printout designated as **Exhibit T-3-J** (Dkt. 31-10, Pages 31–32), intentionally deleting standalone record owner Stephanie Sampson's name and injecting her name husband's married name ("Thomas Stephanie") to cloud the land title out of court and manufacture an artificial **$12,764.69**delinquency block designed to break Plaintiffs' active, performing April 7, 2025 Tax Installment Agreement. This unconstitutional account lockout intentionally enabled private corporate entities and outside speculators to exploit the cloud on title, resulting in the fraudulent filing of

five (5) invalid "wild deeds" in April 2026 (Tab U-2) utilizing corporate legal counsel **Nicholas Thatcher** to issue predatory partition demands. At the August 27, 2026 hearing (Dkt. 31-10, Pages 15–18, 21, 23–24, 43–44), Linebarger counsel Michael Cano admitted that Harris County, Houston ISD, and the City of Houston prohibit foreclosing on an occupied home or payment-plan taxpayer and returned Linebarger's Order of Sale unexecuted on April 24, 2026 (*"informing the court that the foreclosure was off the table"*), whereas Aldine ISD unilaterally submitted its own June 11, 2026 Order of Sale, with Aldine ISD counsel Deanna L. Longo invoking *"a little bit of history"* (Page 16) to reject any installment compromise.

47. **Pre-Judgment Non-Service, Post-Judgment Notice Corruption (*Jones v. Flowers* & *Spanton v. Bellah*), Verbatim June 11, 2026 Order of Sale Fraud (Exhibit F; Envelope No. 116022590), July 20, 2026 Joint Conference Admissions, and Private-Contractor Joint Action (*Lugar* & *Wyatt*):**Defendants never served Plaintiff Christopher Alexander Sampson in State Cause No. 2024-89814despite actual knowledge of his 31-year occupancy at 2323 Garapan Street, Aldine ISD's own official receipts listing CHRISTOPHER A SAMPSON directly under Owner: (Receipt Nos. 8316576 & 8320093; Exhibit C), Aldine ISD's own Answer Exhibit B checking the **"HS Exemption"** box, his in-person execution of the March

2025 payment plan with Felisa Zamora (Dkt. 31-10, Page 40), and $9,124.25 in cumulative tax payments (*Lance v. Dennis*, 546 U.S. at 464–66; *Mennonite Bd. of Missions*, 462 U.S. at 798–800; *Peralta*, 485 U.S. at 84–87). Furthermore, after the August 18, 2025 judgment, Defendants omitted mandatory clerk notice under TRCP 239a, failed to secure certified-mail return receipt service under Tex. R. Civ. P. 106, and routed post-judgment notices to addresses where record owner Stephanie Sampson does not reside and to geographically impossible city/zip-code combinations: (1) collection counsel Lauren L. Jones's September 18, 2025 Certificate of Service routing mail to "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449" instead of 77479 (Dkt. 31-5, Page 7; Dkt. 31-10, Page 24); (2) Aldine ISD Post Judgment Legal Secretary **Felisa Zamora's** file-stamped **June 11, 2026 Order of Sale request** on official Aldine ISD letterhead (2520 W.W. Thorne Blvd., Houston, TX 77073, filed 6/11/2026 at 11:52 AM under **Envelope No. 116022590**; Exhibit F) instructing the Harris County District Clerk's Post Judgment Department (P.O. Box 4651, Houston, TX 77210) to *"issue an order of sale based on the above referenced case... Please send the prepared order of sale to my attention so that I may forward it to the constable,"* while completely omitting Christopher Alexander Sampson and listing only two defective CC: entries for Stephanie Sampson at the bottom

left—first at "2323 Garapan Street, Houston, Texas 77091" (where she does not reside) and second at a fabricated, geographically impossible address combining a Sugar Land workplace street with "Houston" and a Katy zip code: **"16605 South West Fwy, Houston, Texas 77449"** (omitting her true residence at 7115 South Mason Road #612, Richmond, Texas 77407); and (3) Aldine ISD counsel Deanna L. Longo's July 30, 2026 Certificate of Service routing notices to truncated **"715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047"** instead of 7115 and 77407 (Dkt. 31, Att. 1)—all of which are void as a matter of law under *Spanton v. Bellah*, 612 S.W.3d 314, 316–18 (Tex. 2020), *Jones v. Flowers*, 547 U.S. 220, 225–26, 234 (2006), and Tex. Tax Code § 34.01(a-1). On **July 20, 2026**—first during an in-person morning conference at her desk with Christopher Alexander Sampson and again at approximately **4:00 PM** during a joint telephonic conference with both Christopher Alexander Sampson and Stephanie Sampson simultaneously (Dkt. 31-10, Pages 38–39)—Felisa Zamora explicitly admitted that: (a) she personally remembered establishing the active March 2025 payment plan directly with Christopher Alexander Sampson; and (b) outside impostors had called her office impersonating the family under the guise of "setting up a payment plan," substituted fake phone number (281) 274-8050 (whereas Stephanie Sampson has maintained

the exact same personal phone number for over 20 consecutive years), and then completely ghosted her once their corporate deed-theft objective—utilizing void April 2026 instruments involving outside individuals **Loretta Marie Sampson** and **LaTrina Yvette Sampson** and **Sell House Now Cash LLC**—was finalized. Under binding U.S. Supreme Court precedent, private collection contractor Linebarger LLP and its individual attorneys acted under color of state law through willful joint participation with municipal officials (42 U.S.C. § 1983; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)) and are barred as a matter of law from asserting qualified immunity (*Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)).

**G. Retaliation Against Minor Child & April 29, 2026 HAC Grade Realignment (Tab W4-NT-), Federal OCR/DOJ/Strife/Nimitz High School Custom (*Monell*), Chalico Campos & Ofelina H. FERPA/FRCP 37(e) Spoliation, Courthouse Access-to-Courts Obstruction, Post-Recusal & Docket Metadata Corruption (Doc. ID No. 128820728), Indigent Transcript Lockout (*Griffin v. Illinois*), Appellate Mootness Catch-22 (Exhibit X), Cascading Collapse (Exhibit Y), and the Unified Retaliatory Continuum (2026)**

48. **Retaliation Against Minor Daughter A'niyah Lola'ann Sampson & April 29, 2026 HAC Portal Realignment (Document ID: Tab W4-NT-,**

**Tab FkwAyv):** In April 2026 (April 10, 20, and 23, 2026), Garcia Middle School officials downgraded Plaintiff's minor daughter A'niyah Lola'ann Sampson to identical constrained marks of 72 and physically detained her in the principal's office without parental notice or rule infraction. The purely retaliatory, non-academic nature of the district's grading constraints was conclusively unmasked on **April 29, 2026, at 7:13 PM**, through the district's own electronic record-management system (**Document ID: Tab W4-NT-, Tab FkwAyv**), when—following Plaintiffs' formal challenges to record integrity—the Home Access Center portal underwent a structural correction and automated upward realignment completely erasing the irregular "72" grading thresholds and certifying the student's true, unpenalized academic standing as: **Math Reg 8AB: 85 (condition code "S"), Lang Arts Reg 8AB: 90, Science Reg 8AB: 78 (condition code "S"), Theatre L3 A: 85, US Hist Cit Reg 8AB: 89, and Girls Athletics PE 8B: 93.**

49. **Independent Federal OCR, DOJ, Fifth Circuit, Southern District of Texas, and September 2026 Nimitz High School Verification of Aldine ISD's Unconstitutional Custom (*Monell*):** Independent verification that this hostile environment is a widespread corporate custom under *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978) is established

by official federal enforcement records, active judicial dockets, and September 2026 district conduct:

- **(a) Two June 2024 U.S. Department of Education OCR Title VI Investigations:** Aldine ISD is the subject of two ongoing federal civil rights investigations opened in June 2024 by the U.S. Department of Education's Office for Civil Rights (OCR): (1) *Title VI - Racial Harassment*, probing the District's systemic failure to manage a hostile environment; and (2) *Title VI - Denial of Benefits*, investigating the unequal treatment and administrative lockout of minority student populations from essential educational benefits;

- **(b) $140,000.00 U.S. Department of Justice Civil Penalty:** Conclusively proving that the District's central operations division has a documented history of executing illegal compliance traps, the U.S. Department of Justice Civil Rights Division intervened and forced Aldine ISD to pay a **$140,000.00** civil penalty for executing discriminatory documentation requirements on non-U.S. citizens in violation of the Immigration and Nationality Act;

- **(c) *Sewall, et al. v. Aldine Independent School District* (S.D. Tex. Aug. 2025):** Initiated in August 2025 in the Southern District of

Texas, documenting systemic administrative profiling under color of state law;

- **(d) *Strife v. Aldine Independent School District*, No. 24-20269, 138 F.4th 237 (5th Cir. 2025):** In this binding Fifth Circuit precedent, the U.S. Court of Appeals for the Fifth Circuit revived a federal discrimination action brought by a disabled U.S. Army combat veteran employed by the District, ruling that the District's central HR desks engaged in an actionable failure to accommodate by imposing an aggressive six-month verification hold, systematically questioning her medical files, rejecting documentation from her personal physicians, and demanding unauthorized physical examinations to induce administrative exhaustion—the exact same bureaucratic exhaustion trap deployed against Plaintiffs' performing tax installment contracts; and

- **(e) Federal School-Bus Metadata Suppression Litigation Involving a 6-Year-Old Student & September 2026 Nimitz High School Racial Terror Apparel Controversy:** Further establishing an institutional custom of reckless disregard and metadata suppression, Aldine ISD faces active federal litigation brought on behalf of a

vulnerable **6-year-old student** documenting that the District permitted repeated physical assaults on an unmonitored school transport vehicle while upper administration actively refused to investigate or review internal security camera metadata until forced to do so by the persistent intervention of the victim's family—matching the District's bad-faith forensic spoliation and destruction of Plaintiff Christopher Alexander Sampson's K–12 transcripts on August 3, 2026 (Exhibit V; FRCP 37(e)(2)). Conclusively unmasking the fact that unextinguished vestiges of deep-seated racial animus remain active within the District's centralized management divisions, Defendant Aldine ISD also faced heavy community and civil rights activist backlash in **September 2026** over marching band apparel authorized and distributed at **Nimitz High School** depicting a Black figure bound to a wooden stake surrounded by fire—directly evoking the history of systemic racial violence, terror, and extrajudicial lynchings against Black Americans—for which upper administration issued a formal apology following public protests, providing definitive proof that the District's administrative culture remains bound to the same unconstitutional tracking lineage that targeted patriarch George Franklin Sampson, Sr.'s descendants.

50. **Scholastic Sabotage, FERPA Record Integrity (20 U.S.C. § 1232g), July 24, 2026 Delivery to Administrators Chalico Campos & Ofelina H. (Tab J-3), and Official Spoliation Admission (Exhibit V & FRCP 37(e)(2)):** Plaintiff Christopher Alexander Sampson overcame the District's historical academic branding and achieved a flawless **4.00 cumulative grade point average**, earning continuous **Dean's List** and **President's List** placement at Lone Star College, as verified under **Tab J-2**. This scholarly performance demonstrates that the subsequent **July 16, 2026** disruption of $7,474.00 in federal student aid was a direct and foreseeable consequence of the District's dissemination of retaliatory, inaccurate, or fraudulent historical data, executed with actual malice and intentional civil rights retaliation to deliberately disrupt his academic standing. On **July 24, 2026**, Christopher hand-delivered a formal, written notification transcript directly to the school district's administration, specifically targeting administrators **Chalico Campos** and **Ofelina H.**, as documented under **Tab J-3**, warning that their adverse data reporting constituted targeted retaliation against the descendants of the original 1964/1965 desegregation case (*Sampson v. Thorne*). Upper administration (including Superintendent Dr. LaTonya M. Goffney) refused to implement any corrective action, and exactly ten (10) days later, on **August 3, 2026**, the Aldine ISD Legal Department (with

Administrative Records Manager Purnell Harvey) issued a written communication attached hereto as **Exhibit V, Tab V**, explicitly admitting that the District systematically discarded, purged, and wiped Christopher Alexander Sampson's historical K–12 public educational transcripts, digital attendance registries, solitary-isolation room logs, and administrative behavioral records during the active pendency of this land controversy and after receiving actual, documented notice of Plaintiffs' constitutional grievances and impending civil rights litigation (20 U.S.C. § 1232g; Fed. R. Civ. P. 37(e)(1)–(2)).

51. **Courthouse Access-to-Courts Obstruction, Clerk Desk Suppression, Post-Recusal & Docket Metadata Corruption (Doc. ID No. 128820728), Indigent Transcript Lockout (*Griffin v. Illinois*), Appellate Mootness Catch-22 (Exhibit X), and Cascading Collapse (Exhibit Y):** Between August 7 and October 30, 2026, state clerical and law enforcement actors obstructed Plaintiffs' First and Fourteenth Amendment right of access to the courts (*Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *Bounds v. Smith*, 430 U.S. 817, 821–25 (1977)): (a) on **August 7, 2026**, when Plaintiff Christopher Alexander Sampson presented a text-locked filing of critical evidentiary materials at the Harris County District Clerk's civil filing counter under his sustained TRCP 145 indigent waiver (Filing IDs 127869618 /

127875660), the counter clerk explicitly stated to Plaintiff's face, *"I cannot keep giving you copies,"* and deceptively induced him to vacate the window by falsely promising he *"would be good with just the front page file-stamped,"* holding the multi-page exhibit bundles back from digital scanning queues so certified deeds, municipal payment receipts, and engineering invoices disappeared from the online court registry—and when Plaintiff returned on **August 8, 2026** to obtain a secure copy two windows down, the original counter clerk stepped across terminal boundaries and physically took Plaintiff's credit card out of the secondary clerk's hands; (b) because Plaintiffs experienced continuous filing blocks at the first-floor main counters, they brought their filings directly to the 151st District Court office desks on **August 17, 2026** (immediately after two senior male judicial officers—including a Floor 11 judicial officer—displayed open hostility in the 201 Caroline Street elevator, remarking aloud *"You know these kids these days"*), where while Plaintiff waited for the internal clerk to process his **Eighth Amended Joint Petition**, a court bailiff exited from a back door and initiated a targeted verbal assault, aggressively declaring that Plaintiff could not enter the office suite smelling like his legal over-the-counter retail hemp aroma and was *"funking up"* the public elevator and court spaces—to which Plaintiff stood his ground and cited Texas law (*"While having marijuana is*

*illegal, smelling like weed is not illegal"*), yet the bailiff utilized his physical size to intimidate Plaintiff and administrative staff immediately returned Plaintiffs' text-locked litigation binders and master indices completely scrambled, mixed up, and out of chronological sequence; (c) on **Saturday, August 22, 2026**, while delivering emergency property protection filings, Plaintiff Christopher Alexander Sampson was subjected to an unconstitutional physical restraint, handcuffed detention, and verbal threats of permanent judicial lockout on courthouse grounds by Harris County Sheriff Deputy W. Thibodeaux (*Terry v. Ohio*, 392 U.S. 1 (1968)); (d) on **August 25–26, 2026**, after Court Clerk Kierra McKinney initially confirmed an **in-person courtroom hearing** for Thursday, August 27, 2026 at 10:00 AM, and immediately after Plaintiff e-filed his *Master Notice of Alignment*, *Amended Mandamus*, *Amended Emergency Application for TRO*, and *Emergency Notice of Real-Time Cascading Damage* and gave written notice of escalation to federal oversight agencies (**U.S. Department of Education OCR**, **OIG**, and **DOJ Civil Rights Division**), the hearing was abruptly switched from in-person to a virtual Zoom session—preventing Plaintiffs from hand-presenting physical exhibit binders in open court (leaving "None" entered on the Exhibit Index; Dkt. 31-10, Page 6) while subjecting Plaintiff to Zoom audio/video disconnections (Dkt. 31-10, Pages 7–8, 41); (e) on

**August 27, 28, and 31, 2026**, the state trial court refused four-year Bill of Review injunctive relief (Tex. Civ. Prac. & Rem. Code § 16.051; TRCP 329b(f)) based on expired 30-day plenary power (*"my hands are tied at this point"*; Dkt. 31-10, Pages 39–40; Doc. No. 128495734), and on **Monday morning, August 31, 2026**, after Plaintiffs' Verified Master Motion to Recuse Judge Erica R. Hughes was officially marked as **ACCEPTED** by the Harris County District Clerk under **Envelope No. 119283639**—automatically freezing and paralyzing the trial judge's authority by operation of law under **Texas Rule of Civil Procedure 18a(f)**—the trial court nevertheless entered adverse post-recusal orders that same afternoon, physically scratching out the central text blocks of Plaintiffs' Proposed Order Directing the Court Reporter to Transcribe the Reporter's Record (**Envelope No. 119283461**) and handwriting **DENIED IN ENTIRETY**directly over **lines 15–17 of Document No. 128523478**, while also summarily denying Plaintiffs' mandatory request for judicial notice of self-authenticating public records under **Texas Rule of Evidence 201(c)(2)** (Doc. No. 128546794); (f) on **September 15–16, 2026**, despite Plaintiffs' TRCP 145 indigent shield being file-stamped and sustained on July 22, 2026 (**Filing IDs 127869618 / 127875660**), digital portal restrictions locked down backend viewing portals so Official Court Reporter **Charyna Lashley, CSR** could not access the

case file to compile the free transcript—confirmed by Ms. Lashley's **September 15, 2026** written admission stating: *"I see it's restricted. I am unable to see either"* (*Griffin v. Illinois*, 351 U.S. 12, 18–20 (1956); *M.L.B. v. S.L.J.*, 519 U.S. 102, 110–14 (1996))—while on **September 16, 2026**, the official public docket entered a material mismatch under **Document ID No. 128820728**, certifying to reviewing authorities and the public an "Order Granting Motion to Take Judicial Notice Signed" over an attached document that is merely a mechanical administrative voucher ordering the court reporter to transcribe a record and completely silent on judicial notice, forcing Plaintiffs to pursue an Extraordinary Interlocutory Track in the Fourteenth Court of Appeals under **Case No. 14-26-00931-CV**; and (g) on **October 29 and October 30, 2026**, both the Fourteenth Court of Appeals (Case No. 14-26-00931-CV) and the Supreme Court of Texas (*In re Sampson*, Case No. 26-1103, Doc. No. 129666908) dismissed Plaintiffs' emergency stay motions as moot upon notice of this Court's active TRO (Dkt. 18)—leaving zero active state stay protection. Proximately caused by Defendants' bad-faith portal lockout, refusal of lawful currency tender, and relentless foreclosure execution push, Plaintiff Christopher Alexander Sampson was forced to cease working as an independent delivery driver for Uber Eats, Favor Delivery, and DoorDash to defend his family's ancestral

homestead pro se (losing $1,600.00 during July 10–23, 2026 alone and suffering severe involuntary deprivation limited to one meal per day)—and after driving across counties on an empty tank to secure Stephanie Sampson's signature during her shift at Sugar Land Methodist Hospital, suffered a catastrophic engine and smoke breakdown on the shoulder of US-59 in Stafford on August 26, 2026 (Exhibit Y; Dkt. 31-10, Pages 30–31), forcing the surrender of his sole personal vehicle to Global Lending Services at 12711 US-59 and forcing his immediate withdrawal from his College Algebra course at Lone Star College, alongside severe delinquencies across household bills, relentless debt-collector harassment, destruction of his credit profile, involuntary malnutrition, dangerous bodily weight loss, physical pain and suffering, and acute psychological trauma.

52. **The Unified Retaliatory Continuum Connecting All Defendants and Events:** Viewed as a whole, the factual record establishes not isolated administrative mistakes, but a single, **unified retaliatory continuum** spanning institutional, municipal, and private-contractor actors: (1) rooted in Aldine ISD's multi-generational animus following patriarch George Franklin Sampson, Sr.'s 1965 federal desegregation victory (*Sampson v. Thorne*); (2) executed against Christopher Alexander Sampson throughout K–12 via solitary confinement tanks, "Aldine Booking," and 100+ fabricated referrals;

(3) reignited on April 22, 2025 when Campus Supervisor Teresa Jones, M.Ed. deployed six police officers to eject Christopher from a parent-teacher conference the moment he raised civil rights objections, and transmitted that retaliatory animus less than a quarter-mile around the corner from Knippel Education Center (1702 Aldine Bender Rd., Houston, TX 77032) directly to the Aldine ISD Tax Office (14909 Aldine Westfield Rd., Houston, TX 77032) and the Aldine ISD Legal Department (2520 W.W. Thorne Blvd., Houston, TX 77073);(4) escalated in February through June 2026 when Felisa Zamora, Deanna L. Longo, Annette Ramirez, and Linebarger LLP locked Plaintiffs' performing tax installment portals after Christopher's timely January 29, 2026 payment (c7b35ffd)—short-circuiting Aldine ISD's April 7, 2025 contract extending through February 15, 2028—refused legal U.S. currency tender, and unilaterally issued Aldine ISD's June 11, 2026 Order of Sale (Envelope No. 116022590) after Linebarger had already returned its Order of Sale unexecuted on April 24, 2026, with Ms. Longo explicitly invoking *"a little bit of history"* on the live hearing record (Dkt. 31-10, Page 16) to reject any payment plan while Harris County, Houston ISD, and the City of Houston confirmed they would not foreclose on an occupied home paying $570.67/month (Dkt. 31-10, Pages 15, 23–24, 43–44); (5) extended in April 2026 to Plaintiffs' minor daughter A'niyah

Lola'ann Sampson at Garcia Middle School (unmasked by the April 29, 2026 at 7:13 PM HAC portal realignment; Tab W4-NT-) and exploited by private corporate Defendants recording five predatory "wild deeds" (Tab U-2), leaving verbatim panic-inducing voicemails (Exhibit T), and taping front-door eviction notices (Exhibit O); and (6) capped on August 3, 2026 when Aldine ISD purged Christopher's K–12 records ten days after receiving his July 24, 2026 written civil rights grievance delivered to Chalico Campos and Ofelina H. (Exhibit V; Tab J-3), followed by the August 26, 2026 in-person-to-Zoom hearing switch, the September 15, 2026 restriction of Plaintiffs' indigent affidavit, and the appellate mootness dismissals (Exhibit X) that forced the liquidation of Christopher's delivery vehicle and college enrollment (Exhibit Y).

## VI. STRATEGIC MEMORANDUM OF LAW IN SUPPORT OF EQUITABLE JURISDICTION & EMERGENCY INJUNCTIVE RELIEF

### A. Procedural Alignment of Supplemental Equitable Context Under FRCP 20

53. **Prevention of Misjoinder Under FRCP 20 & Equitable Proof of Unified Retaliatory Harm:** Plaintiffs explicitly state that the factual documentation of Plaintiff Christopher Alexander Sampson's frozen $7,474.00 educational financial aid package at Lone Star College (July 16, 2026) and forced

withdrawal from his College Algebra course (Exhibit Y; Dkt. 31-10, Pages 30–31) is integrated exclusively within the Court's equitable calculus of irreparable injury, proximate retaliatory damages, and the balancing of hardships. Plaintiffs do not assert an independent, operative cause of action against the administrative or academic policies of the junior college registrar system itself, nor do Plaintiffs seek a mandatory injunction compelling the administrative reinstatement of said scholastic funds. Restricting the financial aid freeze and course withdrawal strictly to their role as real-world evidence of localized economic attrition and the downstream collateral damage of Defendants' **unified retaliation** avoids any misjoinder objection under Federal Rule of Civil Procedure 20 while proving Plaintiffs' structural inability to escape the engineered tax delinquency out of pocket.

## B. Satisfaction of the Fifth Circuit's Quad-Part Emergency Injunction Standard (FRCP 65 & 28 U.S.C. §§ 1651 & 1964)

**54. The Quad-Part Injunction Standard & Fifth Circuit Sliding-Scale Rule:** To command the extraordinary remedy of a Preliminary Injunction or Permanent Injunction from a Federal District Court under Federal Rule of Civil Procedure 65(a) and the All Writs Act (28 U.S.C. § 1651(a)), a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the

threatened injury heavily outweighs any potential harm to the defendants; and (4) that the injunction will not disserve the public interest. See *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Furthermore, under binding Fifth Circuit precedent in *Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) and *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975), where the balance of hardships tips decidedly toward the movant and denial risks the irreversible destruction of a unique family homestead, raising serious, substantial questions going to the merits warrants injunctive preservation of the status quo.

**55. Likelihood of Success and Irreparable Injury:** Plaintiffs satisfy the first prong through self-authenticating certified records proving physical confinement impossibility during the 2015 and 2017 notarizations (including Aldine ISD's own Exhibit A listing Christopher's mailing address at 3695 FM 3514, Beaumont, Texas; Dkt. 31-10, Page 27), Aldine ISD's binding judicial admission checking **"HS Exemption"** on its own Answer Exhibit B and listing CHRISTOPHER A SAMPSON directly under Owner: on official cash receipts (Receipt Nos. 8316576 & 8320093; Exhibit C), non-service of equitable owner Christopher Alexander Sampson in State Cause No. 2024-

89814 (*Lance v. Dennis*, 546 U.S. 459 (2006); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983)), dual-layered zip-code notice fraud ("16605 South West Fwy, Houston, Texas 77449" on Exhibit F, Envelope No. 116022590, and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047" on Dkt. 31, Att. 1) violating *Jones v. Flowers*, 547 U.S. 220 (2006), *Spanton v. Bellah*, 603 S.W.3d 97, 99 (Tex. 2020), and Tex. Tax Code § 34.01(a-1), on-the-record admissions by Linebarger counsel Michael Cano and Aldine ISD counsel Deanna L. Longo (Dkt. 31-10, Pages 15–18, 21, 23–24, 43–44), Aldine ISD's August 3, 2026 spoliation admission (Exhibit V; FRCP 37(e)(2)), and the certified appellate mootness orders (Exhibit X). Plaintiffs satisfy the second prong because real property—and specifically a 39-year Aboriginal Indigenous American Indian ancestral homestead—is unique under equity jurisprudence, and its imminent liquidation at a public foreclosure auction with zero active state stay protection constitutes a classic, irreversible injury that cannot be remedied by a retroactive award of money damages (*Canal Authority*, 489 F.2d at 572).

56. **Balance of Hardships, Public Interest, Third-Party Binding Scope (FRCP 65(d)(2)), and Indigent Bond Waiver (FRCP 65(c)):** Conversely, the Joint Taxing Enterprise and Linebarger LLP suffer zero cognizable

prejudice, permanent financial loss, or dilution of security by a temporary judicial freeze because their purported tax liens remain fully secured by the physical real property assets at 2323 Garapan Street and 2539 DeSoto Street as fixed collateral. Pursuant to Federal Rule of Civil Procedure 65(d)(2) and 28 U.S.C. § 1964, this Court's injunctive order binds all named Defendants as well as their officers, collection attorneys, constables, and any third-party transferees acting in active concert or participation with them upon actual notice. Moreover, pursuant to Federal Rule of Civil Procedure 65(c) and binding Fifth Circuit precedent in *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) and *City of Atlanta v. Metropolitan Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981), any cash security bond should be waived or set at $0 because Plaintiffs are verified indigent litigants (TRCP 145) and Defendants' tax liens remain fully secured by the underlying real estate. Finally, the public interest is profoundly served by maintaining the integrity of public land registries, enforcing statutory taxpayer installment agreements (Tex. Tax Code § 33.02(d)), and protecting pro se minority and Indigenous citizens from execution orders obtained through corrupted address fields, fabricated certificates of service, and material notary fraud.

## C. Federal Contract Equality (42 U.S.C. § 1981(b)), Unclean Hands, and Prevented Performance as Cumulative Equitable Triggers

57. **Equitable Intervention Against Prevented Performance & Federal Contract Impairment (42 U.S.C. § 1981(b)):** The interlocking timeline of the automated transaction blocks implemented against Plaintiffs' active tax installment agreements and the concurrent freeze of Plaintiff's educational living-cost resource establishes an overwhelming narrative of unconscionability that triggers this Court's inherent equitable powers. At the federal level, Defendants' deliberate obstruction of Plaintiffs' installment performance violates 42 U.S.C. § 1981(b)—which explicitly protects the equal right to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship"—and triggers the settled federal equity maxims of unclean hands (*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)) and federal equitable tolling (*Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)), barring Defendants from profiting from a default or procedural delay manufactured by their own portal locks, corrupted zip codes (77449/77047), and records spoliation. Under settled Texas jurisprudence, equity likewise intervenes to stay or set aside a forced foreclosure execution where the creditor or its agents

deliberately obstruct the debtor's performance or trap the property owner in an engineered default, because a contracting party or creditor cannot take advantage of a default that they themselves caused through obstructive, inequitable conduct. See *Biffle v. Morton Rubber Indus., Inc.*, 785 S.W.2d 143, 144 (Tex. 1990); *Johnson v. Cherry*, 726 S.W.2d 4, 8 (Tex. 1987); *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Because Plaintiffs maintained perfect, verified compliance across an eleven-month window ($9,124.25 total paid across Exhibits C, D, & E, including Christopher's timely January 29, 2026 PayIt remittance c7b35ffd two days ahead of the January 31, 2026 milestone under Aldine ISD's April 7, 2025 contract extending through February 15, 2028) under Tex. Tax Code § 33.02(d) until Defendants locked out credit card ending 7838 (Tab E) and refused physical currency tender in February 2026, forcing a public liquidation sale under manufactured restrictions is unconscionable.

## VII. CAUSES OF ACTION

**COUNT ONE: Deprivation of Procedural and Substantive Due Process Under the Fourteenth Amendment (42 U.S.C. § 1983)**

**(Against Defendant Taxing Jurisdictions, Defendant Linebarger Goggan Blair & Sampson, LLP, Michael Cano, Lauren L. Jones, Wendi Faughn, Deanna L.**

**Longo, Kanika W. Middleton, Annette Ramirez, Felisa Zamora, and Marilyn Burgess in Her Official Capacity)**

58. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

59. **Constitutional Due Process Standards Governing Pre-Judgment Service, Statutory Entitlements, Pre-Deprivation Hearings, and Post-Judgment Sale Notices:** The Due Process Clause of the Fourteenth Amendment strictly prohibits actors operating under color of state law from depriving any person of property without due process of law. Under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798–800 (1983), and *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84–87 (1988), constitutionally adequate notice reasonably calculated to apprise all known or reasonably ascertainable property interest holders—including continuous homestead occupants and equitable owners—of a pending tax foreclosure action is a non-negotiable requirement of due process. Under *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972) and *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976), the Fourteenth Amendment guarantees notice and a meaningful opportunity to be heard prior to the irreversible seizure or public auction of a family homestead. Under *Board of Regents v. Roth*, 408 U.S. 564, 577

(1972) and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–32 (1982), state statutes such as Texas Tax Code § 33.02(d) create vested, constitutionally protected property entitlements that cannot be arbitrarily revoked through portal lockouts or refusal of lawful tender. Furthermore, under *Jones v. Flowers*, 547 U.S. 220, 225–26, 234 (2006) and Texas Tax Code § 34.01(a-1), when state agents or collection contractors become aware that post-judgment or pre-sale notice has failed or been intercepted by impostors, they bear an affirmative, non-delegable constitutional obligation to take additional reasonable steps before proceeding to auction.

60. **State Action, Joint Participation (Lugar), and Bar Against Qualified Immunity (Wyatt v. Cole):**Defendant Taxing Jurisdictions, operating through their official revenue-driven collection customs, and private contractor Linebarger Goggan Blair & Sampson, LLP, together with individual collection attorneys Michael Cano, Lauren L. Jones, and Wendi Faughn, acting as willful participants in joint action with municipal officials under color of state law (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)), as well as Aldine ISD legal counsel Deanna L. Longo and Kanika W. Middleton, Annette Ramirez, Felisa Zamora, and Marilyn Burgess (solely in her official capacity for prospective injunctive and declaratory relief under *Ex parte Young*, 209 U.S.

123 (1908)), systematically deprived Plaintiffs of Fourteenth Amendment Due Process. As private state-procurement contractors, Linebarger LLP and its individual attorneys are barred as a matter of law from asserting qualified immunity (*Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)).

61. **Particularized Out-of-Court Notice Evasion and Service Failures (FRCP 8(d)(2)–(3) & 9(b)):** To satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)—under which the circumstances of fraud are stated with particularity while malice, intent, knowledge, and other conditions of a person's mind are pleaded generally and in the alternative alongside reckless or deliberate indifference pursuant to Fed. R. Civ. P. 8(d)(2)–(3)—Plaintiffs specify that Defendants knowingly, deliberately, and out of court executed the following due process violations:

   - **(a) Complete Non-Service of Known Equitable Owner & Occupant Christopher Alexander Sampson:** Defendants never served Plaintiff Christopher Alexander Sampson with citation in State Cause No. 2024-89814 (*Lance v. Dennis*, 546 U.S. 459, 464–66 (2006); *Mennonite Bd. of Missions*, 462 U.S. at 798–800), relying on the void 2017 deed (File No. RP-2017-348145; Dkt. 31-10, Pages 36, 38) despite actual knowledge of his continuous 31-year homestead occupancy at 2323 Garapan Street, Aldine ISD's own official receipts

listing CHRISTOPHER A SAMPSON directly under Owner: (Receipt Nos. 8316576 & 8320093; Exhibit C), Aldine ISD's own Answer Exhibit B checking the **"HS Exemption"** box, his in-person execution of the March 2025 payment plan with Felisa Zamora (Dkt. 31-10, Page 40), and $9,124.25 in cumulative tax payments;

- **(b) The September 18, 2025 Sugar Land / Katy Zip-Code Trap:** Collection counsel Lauren L. Jones executed a certified Certificate of Service within State Cause No. 2024-89814 (Dkt. 31-5, Page 7; Dkt. 31-10, Page 24) routing mandatory post-judgment legal notifications to a non-existent corporate workplace profile at "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449", intentionally substituting the incorrect, non-matching Katy/Harris County zip code 77449 for the true Sugar Land zip code 77479, ensuring the mail would fail delivery or be destroyed;

- **(c) The Dual-Defective June 11, 2026 Order of Sale Request (Envelope No. 116022590; Exhibit F):** On June 11, 2026 at 11:52 AM, Aldine ISD Post Judgment Legal Secretary Felisa Zamora filed a formal written request on official Aldine ISD letterhead (2520 W.W. Thorne Blvd., Houston, TX 77073) instructing the Harris County

District Clerk's Post Judgment Department (P.O. Box 4651, Houston, TX 77210) to issue an Order of Sale in Cause No. 2024-89814(*"Please send the prepared order of sale to my attention so that I may forward it to the constable"*), completely omitting continuous 31-year occupant Christopher Alexander Sampson and listing only two defective CC: entries for record owner Stephanie Sampson: first at "2323 Garapan Street, Houston, Texas 77091" (where Stephanie Sampson does not reside; *Spanton v. Bellah*, 612 S.W.3d 314, 316–18 (Tex. 2020)) and second at a fabricated, non-existent address combining a Sugar Land street with Houston and a Katy zip code: **"16605 South West Fwy, Houston, Texas 77449"** (omitting her true home at 7115 South Mason Road #612, Richmond, Texas 77407 and omitting any return-receipt service under Tex. R. Civ. P. 106);

- **(d) The July 30, 2026 Truncated Street & Houston Zip-Code Certificate:** Aldine ISD counsel Deanna L. Longo executed a certified Certificate of Service (Dkt. 31, Att. 1) routing mandatory post-judgment notifications to "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047", truncating the street number from 7115 down to 715 and pairing Richmond, Texas with a disconnected Houston zip code (77047);

- **(e) Complete Omission of Post-Judgment Default Notice (TRCP 239a):** Defendants completely omitted mandatory certified post-judgment clerk notifications required under Texas Rule of Civil Procedure 239a (Dkt. 31-4), rendering subsequent execution maneuvers constitutionally defective under *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84–85 (1988); and

- **(f) Unilateral Issuance of Order of Sale Despite Actual Knowledge of Impostor Interception & Linebarger Withdrawal:** After Linebarger LLP returned its Order of Sale unexecuted on April 24, 2026 ("informing the court that the foreclosure was off the table"; Dkt. 31-10, Pages 17, 21), Aldine Legal Department employee Felisa Zamora and Aldine ISD counsel Deanna L. Longo unilaterally issued the June 11, 2026 Order of Sale request (Exhibit F; Dkt. 31-10, Page 18) despite actual knowledge admitted on July 20, 2026 (both in person and during a 4:00 PM joint telephonic conference with both Plaintiffs simultaneously; Dkt. 31-10, Pages 38–39) that litigation notices had been intercepted by deed-theft impostors utilizing (281) 274-8050, directly violating *Jones v. Flowers*, 547 U.S. 220, 225–26, 234 (2006) and Tex. Tax Code § 34.01(a-1).

62. **Unconstitutional Destruction of Statutory Installment Entitlement & Substantive Due Process Violation (*County of Sacramento v. Lewis*):** Furthermore, Defendants arbitrarily deprived Plaintiffs of their vested statutory property entitlements under Texas Tax Code § 33.02(d), Aldine ISD's April 7, 2025 contract extending through February 15, 2028 (Exhibit C), and Harris County Installment Agreement No. 225713 (Exhibit E)—after Plaintiff Christopher Alexander Sampson timely paid on January 29, 2026 (c7b35ffd, $461.03; Exhibit D) two days ahead of the January 31, 2026 milestone and remitted $9,124.25 across Exhibits C, D, and E—by implementing automated transaction blocks on credit card ending 7838 (Tab E), refusing physical U.S. currency tender in February 2026, scrubbing Christopher's name from the Owner block on Aldine ISD's July 31, 2026 statement, and generating the August 26, 2026 fraudulent "Supplement Correction" printout (Exhibit T-3-J) deleting standalone owner Stephanie Sampson and injecting her husband's married name ("Thomas Stephanie") alongside an artificial $12,764.69 delinquency block (Dkt. 31-10, Pages 31–32). Defendants' bad-faith portal lockout, refusal of legal U.S. currency tender, and retaliatory refusal to honor active payment plans—with Aldine ISD counsel Deanna L. Longo invoking *"a little bit of history"* on the live record (Dkt. 31-10, Page 16) while demanding lump-sum payment in full or

foreclosure (Pages 21, 23, 41–43)—constitute arbitrary, conscience-shocking executive abuse of power violating Substantive Due Process under *County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998), as well as independent, out-of-court Procedural Due Process injuries under 42 U.S.C. § 1983 (*Exxon Mobil*, 544 U.S. at 293; *Truong*, 717 F.3d at 382–83) for which Plaintiffs are entitled to declaratory, injunctive, compensatory, and exemplary relief.

**COUNT TWO: Deprivation of the Constitutional Right of Access to Courts & Conspiracy to Obstruct Justice (First & Fourteenth Amendments; 42 U.S.C. §§ 1983 & 1985(2))**

**(Against Named Administrative and Collection Defendants Marilyn Burgess in Her Official Capacity, Felisa Zamora, Deanna L. Longo, Kanika W. Middleton, Michael Cano, Lauren L. Jones, and Wendi Faughn)**

63. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

64. **Federal Constitutional & Statutory Standards Protecting Court Access, Indigent Appellate Transcripts, and State-Court Integrity:** The First Amendment Petition Clause and the Due Process and Equal Protection Clauses of the Fourteenth Amendment guarantee citizens a meaningful, unobstructed right of access to both trial and appellate courts. This

fundamental right is violated when state clerical machinery, electronic filing portals, and collection actors operating under color of law intercept legal filings, strip exhibits from digital scanning queues, distort docket metadata, or obstruct an indigent litigant's access to the official appellate record. See *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *Bounds v. Smith*, 430 U.S. 817, 821–25 (1977); *Boddie v. Connecticut*, 401 U.S. 371, 374–80 (1971); *Ryland v. Shapiro*, 708 F.2d 967, 971–72 (5th Cir. 1983). Furthermore, under binding U.S. Supreme Court precedent in *Griffin v. Illinois*, 351 U.S. 12, 18–20 (1956) and *M.L.B. v. S.L.J.*, 519 U.S. 102, 110–14 (1996), once an indigent litigant's fee-waiver affidavit is filed and sustained (Tex. R. Civ. P. 145; Filing IDs 127869618 / 127875660), state clerical officials are constitutionally barred from imposing parallel financial charges (such as Invoice No. 8080149 totaling $1,223.78) or locking digital viewing portals to prevent the court reporter from preparing the free appellate transcript. Independently, 42 U.S.C. § 1985(2) (Second Clause) prohibits two or more persons from conspiring to impede, hinder, obstruct, or defeat the due course of justice in any State with intent to deny any citizen the equal protection of the laws (*Haddle v. Garrison*, 525 U.S. 121, 125 (1998)).

65. **Particularized Clerical Suppression, Exhibit Stripping, In-Person-to-Zoom Hearing Switch, and Courthouse Intimidation (August 7–27, 2026):** Plaintiffs specify that on **August 7, 2026**, while this civil rights litigation was actively tracking, Plaintiff Christopher Alexander Sampson presented himself at the civil filing counter of the Harris County District Clerk's office to execute a formal, text-locked filing of critical evidentiary materials. Despite possessing a verified indigent status under Texas Rule of Civil Procedure 145 (sustained July 22, 2026 under Filing IDs 127869618 / 127875660)—legally exempting him from all copying, indexing, and filing fees—the counter clerk explicitly stated to Plaintiff's face, *"I cannot keep giving you copies,"* and deceptively induced him to vacate the window by falsely promising that he *"would be good with just the front page file-stamped,"* holding the multi-page exhibit bundles back from the digital scanning queues so that certified deeds, municipal payment receipts, and engineering invoices disappeared from the online court registry, leaving only the front cover page visible. When Plaintiff returned on **August 8, 2026** to confront the data gap and obtain a secure copy from a secondary clerk two windows down, the original counter clerk stepped across terminal boundaries and physically took Plaintiff's credit card directly out of the secondary clerk's hands. Because Plaintiffs experienced continuous filing

blocks at the first-floor main counters, they brought their filings directly to the 151st District Court office desks on **August 17, 2026** (immediately after hostile remarks from two senior male judicial officers in the 201 Caroline Street elevator, including a Floor 11 judicial officer remarking aloud, *"You know these kids these days"*), where while Plaintiff waited for the internal clerk to process his **Eighth Amended Joint Petition**, a court bailiff exited from a back door and initiated a targeted verbal assault, declaring that Plaintiff could not enter the office suite smelling like his legal over-the-counter retail hemp aroma and was *"funking up"* the public elevator and court spaces—and after Plaintiff cited Texas law (*"While having marijuana is illegal, smelling like weed is not illegal"*), the bailiff utilized his physical size to intimidate Plaintiff while administrative staff immediately returned Plaintiffs' text-locked litigation binders and master indices completely scrambled, mixed up, and out of chronological order; on **Saturday, August 22, 2026**, by the unconstitutional handcuffed detention and threat of permanent judicial lockout executed against Plaintiff on courthouse grounds by Harris County Sheriff Deputy W. Thibodeaux (*Terry v. Ohio*, 392 U.S. 1 (1968)) while Plaintiff was delivering emergency property protection filings; and on **August 25–26, 2026**, after Court Clerk Kierra McKinney initially confirmed an **in-person courtroom hearing** for August 27, 2026 at 10:00

AM and Plaintiff e-filed his *Master Notice of Alignment*, *Amended Mandamus*, *Amended Emergency Application for TRO*, and *Emergency Notice of Real-Time Cascading Damage* and gave written notice of escalation to federal oversight agencies (**U.S. Department of Education OCR**, **OIG**, and **DOJ Civil Rights Division**), by abruptly switching the August 27, 2026 hearing from an in-person courtroom proceeding to a virtual Zoom hearing—preventing Plaintiffs from hand-presenting physical exhibit binders in open court (leaving "None" entered on the Exhibit Index; Dkt. 31-10, Page 6) while subjecting Plaintiff to Zoom audio/video drops (Dkt. 31-10, Pages 7–8, 41).

66. **Indigent Transcript Portal Lockout (*Griffin v. Illinois*), Post-Recusal Suppression (Doc. No. 128523478), Docket Metadata Corruption (Doc. ID No. 128820728), and Prospective Equitable Relief (*Ex parte Young*):** Following the acceptance of Plaintiffs' Verified Master Motion to Recuse on Monday morning, August 31, 2026 (**Envelope No. 119283639**) triggering the mandatory automatic freeze of **Texas Rule of Civil Procedure 18a(f)**, adverse post-recusal orders were entered that same afternoon—physically scratching out the central text blocks of Plaintiffs' Proposed Order Directing the Court Reporter to Transcribe the Reporter's Record (**Envelope No. 119283461**) and handwriting **DENIED IN ENTIRETY** over **lines 15–17 of**

**Document No. 128523478**, while summarily denying mandatory judicial notice of self-authenticating public records required under **Texas Rule of Evidence 201(c)(2)**(Doc. No. 128546794). Clerical infrastructure was then deployed on **September 15–16, 2026** to blind reviewing appellate courts: despite Plaintiffs' TRCP 145 indigent shield being file-stamped and sustained on July 22, 2026 (**Filing IDs 127869618 / 127875660**), administrative proxies refused to process the free transcript and locked down backend digital viewing portals so Official Court Reporter **Charyna Lashley, CSR** could not access the case file to compile the record—confirmed by Ms. Lashley's **September 15, 2026** written admission stating: *"I see it's restricted. I am unable to see either"*(*Griffin v. Illinois*, 351 U.S. 12, 18–20 (1956); *M.L.B. v. S.L.J.*, 519 U.S. 102, 110–14 (1996))—while on **September 16, 2026**, the official public docket entered a material mismatch under **Document ID No. 128820728**, certifying to reviewing authorities and the public an "Order Granting Motion to Take Judicial Notice Signed" over an unrelated mechanical administrative voucher ordering the court reporter to transcribe a record and completely silent on judicial notice, trapping Plaintiffs on the eve of execution and forcing them to pursue an Extraordinary Interlocutory Track in the Fourteenth Court of Appeals (**Case No. 14-26-00931-CV**). Simultaneously, Defendants Felisa Zamora, Deanna

L. Longo, Kanika W. Middleton, Michael Cano, Lauren L. Jones, and Wendi Faughn exploited these clerical bottlenecks and routed post-judgment execution notices to non-existent addresses and mismatched zip codes ("16605 South West Fwy, Houston, Texas 77449" on Exhibit F; "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449" on Dkt. 31-5, Page 7; and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047" on Dkt. 31, Att. 1) to advance a Constable foreclosure sale before Plaintiffs could obtain meaningful pre-deprivation or appellate review. Plaintiffs are entitled to prospective injunctive and declaratory relief against Marilyn Burgess in her official capacity pursuant to *Ex parte Young*, 209 U.S. 123, 159–60 (1908)—requiring full restoration and unrestricting of Plaintiffs' TRCP 145 indigent fee waiver (Filing IDs 127869618 / 127875660), cancellation of Invoice No. 8080149 ($1,223.78), unrestricted digital access for Official Court Reporter Charyna Lashley, CSR, and correction of docket label Document ID No. 128820728—as well as compensatory, statutory, and exemplary damages against the individual Defendants under 42 U.S.C. §§ 1983 and 1985(2).

**COUNT THREE: Municipal Liability Under *Monell v. Department of Social Services* (42 U.S.C. § 1983)**

**(Unconstitutional Official Policy, Widespread Custom, Deliberate Indifference, and Policymaker Ratification — Against Defendant Aldine Independent School District and the Joint Taxing Enterprise)**

67. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

68. **Controlling *Monell* Standards & Statutory Final Policymaker Identification (Tex. Educ. Code § 11.151(b)):** Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978), *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010), a local governmental entity or school district is directly liable under 42 U.S.C. § 1983 when (1) an official policy statement, ordinance, regulation, or decision officially adopted by the entity's final policymaking body, (2) a persistent, widespread custom or practice so common and well-settled as to fairly represent municipal policy, or (3) policymaker delegation or ratification of subordinate misconduct acts as the "moving force" behind a constitutional deprivation. Under Texas law (Tex. Educ. Code § 11.151(b)) and binding U.S. Supreme Court and Fifth Circuit precedent (*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844, 847 (5th Cir. 2003)), the Board of Trustees of Aldine Independent

School District is the final policymaking authority for Defendant Aldine ISD.

69. **Official Board Directives (June 2024 & July 2025) as the Direct "Moving Force":** Plaintiffs explicitly plead that the aggressive collection tracks, automated portal lockouts, refusal of physical U.S. currency tender, and post-judgment notice evasion executed against Plaintiffs' ancestral homestead were the direct and foreseeable result of official policy directives adopted by the Aldine ISD Board of Trustees. Facing a severe structural financial crisis and an operational budget deficit reaching $100 million driven by declining enrollment—which had already forced the closure of multiple elementary campuses, including Smith, Eckert, Raymond, and Oleson elementary schools—the Aldine ISD Board of Trustees abandoned its historical practice of accommodating homestead taxpayers directly and prioritized aggressive local collection enforcements to maximize immediate cash injections. Specifically, in June 2024 and July 2025, the Aldine ISD Board of Trustees officially approved, maintained, and enforced administrative directives and state-procurement contracts empowering its Chief Financial Officer (CFO), its in-house tax collection department (Deanna L. Longo, Kanika W. Middleton, and Felisa Zamora), and its designated delinquent tax collection attorneys (Linebarger LLP) to initiate

sweeping lawsuits, establish tax liens, pursue foreclosures, and aggressively liquidate real property assets at public auctions to immediately clear back taxes, interest, and penalties—acting as the direct **"moving force"**behind the constitutional violations and notice evasion inflicted upon the Sampson estate under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

70. **Deliberate Indifference in Oversight (*City of Canton*), Policymaker Ratification (*Praprotnik*), and Widespread Institutional Custom:** Under *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986), and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), the Aldine ISD Board of Trustees and the Joint Taxing Enterprise acted with deliberate indifference to the obvious Fourteenth Amendment due process risks of delegating unmonitored foreclosure execution authority without mandatory address-verification or *Jones v. Flowers* notice safeguards—allowing Aldine ISD's legal and tax personnel (Deanna L. Longo and Felisa Zamora) to override the standing interlocal non-foreclosure policy of Harris County, Houston ISD, and the City of Houston by unilaterally submitting Aldine ISD's June 11, 2026 Order of Sale (Envelope No. 116022590) after Linebarger LLP had already returned its Order of Sale unexecuted on April 24, 2026 (Dkt. 31-10, Pages

15–18, 21, 23–24, 43–44). Furthermore, Superintendent Dr. LaTonya M. Goffney and the District's policymaking leadership ratified this unlawful conduct by refusing to intervene or correct the portal lockout and records destruction after receiving actual, documented written notice delivered to Chalico Campos and Ofelina H. on July 24, 2026 (Tab J-3). This widespread institutional custom of retaliatory profiling, bureaucratic exhaustion traps, due process evasion, and metadata suppression is independently corroborated by: (a) Aldine ISD's multi-generational tracking of the Sampson lineage following the March 23, 1965 federal desegregation decree (*Sampson v. Thorne*); (b) two ongoing June 2024 U.S. Department of Education Office for Civil Rights (OCR) Title VI investigations (*Title VI - Racial Harassment* and *Title VI - Denial of Benefits*); (c) a **$140,000.00** U.S. Department of Justice Civil Rights Division civil penalty for discriminatory documentation traps under the Immigration and Nationality Act; (d) active Southern District of Texas civil rights litigation in *Sewall, et al. v. Aldine ISD* (filed August 2025) and the binding Fifth Circuit decision in *Strife v. Aldine ISD*, No. 24-20269, 138 F.4th 237 (5th Cir. 2025) (reviving a disabled U.S. Army combat veteran's claim over a six-month verification hold and administrative exhaustion trap); (e) active federal litigation on behalf of a vulnerable **6-year-old student**documenting repeated assaults on

an unmonitored school transport vehicle and upper administration's refusal to review internal security camera metadata until forced by the victim's family; and (f) the **September 2026 Nimitz High School** marching band apparel controversy, in which Aldine ISD authorized and distributed imagery depicting a Black figure bound to a wooden stake surrounded by fire—directly evoking the history of systemic racial violence, terror, and extrajudicial lynchings—and issued a formal apology following community and civil rights activist protests, conclusively unmasking that unextinguished vestiges of racial animus remain active within the District's centralized management divisions. This top-down fiscal policy, deliberate indifference, and persistent custom served as the direct "moving force" behind Plaintiffs' constitutional injuries, establishing full municipal liability under 42 U.S.C. § 1983 and *Monell.*

**COUNT FOUR: Intentional Discrimination, Retaliation, and Hostile Educational Environment Under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)**

**(Against Defendant Aldine Independent School District Only)**

71. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**72. Federal Title VI Standards Governing Intentional Discrimination, Retaliation (*Jackson*), and Deliberate Indifference (*Gebser & Fennell*):** Title VI of the Civil Rights Act of 1964 strictly prohibits any program or activity receiving federal financial assistance from discriminating against, excluding from participation, or denying the benefits of its programs to any person on the basis of race, color, or national origin (42 U.S.C. § 2000d). Under binding U.S. Supreme Court and Fifth Circuit precedent, 42 U.S.C. § 2000d confers a direct private right of action against a federally funded school district for (1) intentional racial or ancestral discrimination (*Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001)), (2) deliberate indifference by an "appropriate person" with actual notice and corrective authority to severe, pervasive, and objectively offensive racial harassment that deprives access to educational opportunities or benefits (*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642–43 (1999); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015)), and (3) unlawful retaliation against a parent or student for complaining of or opposing racial/ancestral discrimination (*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005)).

73. **Proper Joinder (FRCP 20) and Particularized Acts of Intentional Discrimination, Retaliation, and Deliberate Indifference:** To establish proper joinder under Federal Rule of Civil Procedure 20(a)(2), Plaintiffs explicitly plead that this Title VI claim arises directly out of the same common transactional nucleus and multi-generational history of administrative animus targeting the Sampson lineage following the March 23, 1965 federal desegregation decree (*Sampson v. Thorne*). Defendant Aldine ISD, a public school district receiving substantial federal financial assistance, directly violated 42 U.S.C. § 2000d in 2025 and 2026: (a) while Plaintiff Christopher Alexander Sampson was participating as a parent in a mandatory educational conference on April 22, 2025, to advocate for his child, campus officials under the direction of Campus Supervisor Teresa Jones, M.Ed. weaponized an irregular, six-officer police deployment to forcefully eject him from the campus the moment he raised civil rights concerns—in the complete absence of any regulatory infraction, criminal conduct, or safety threat—followed on April 26, 2025 by hostile electronic portal harassment; (b) on April 20 and April 23, 2026, Garcia Middle School officials retaliated against Plaintiffs' minor daughter, A'niyah Lola'ann Sampson, by arbitrarily downgrading her Interim Progress Report to identical constrained marks of 72 across core and elective classes and

physically detaining her in the principal's office without parental notification or rule infraction—which was conclusively unmasked as purely retaliatory on **April 29, 2026, at 7:13 PM(Document ID: Tab W4-NT-, Tab FkwAyv)**, when following Plaintiffs' record-integrity challenges the Home Access Center portal underwent an automated upward realignment erasing the irregular "72" marks and certifying her true standing (**Math Reg 8AB: 85 (condition code "S"), Lang Arts Reg 8AB: 90, Science Reg 8AB: 78 (condition code "S"), Theatre L3 A: 85, US Hist Cit Reg 8AB: 89, and Girls Athletics PE 8B: 93**); and (c) appropriate officials with supervisory and corrective authority—including Teresa Jones, M.Ed., Chalico Campos, Ofelina H., Superintendent Dr. LaTonya M. Goffney, and the Aldine ISD Legal Department—received actual notice of these violations (including via Plaintiffs' hand-delivered written civil rights grievance on July 24, 2026; Tab J-3) and acted with deliberate indifference by refusing corrective action and instead purging Plaintiff's K–12 records on August 3, 2026 (Exhibit V). By utilizing an unjustified tactical police response and administrative sabotage to exclude an Indigenous/Black parent and family, Aldine ISD blockaded Plaintiffs' right to parental advocacy, denied equal access to educational services and benefits, and caused direct economic, educational,

and compensatory injuries (together with declaratory and injunctive relief) actionable under 42 U.S.C. § 2000d.

**COUNT FIVE: Equal Protection Violations (Fourteenth Amendment; 42 U.S.C. § 1983)**

**(Intentional Race, Ancestry, Gender, and Irrational "Class-of-One" Disparate Treatment — Against Defendant Aldine Independent School District)**

74. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

75. **Federal Equal Protection Standards Governing Protected-Class Discrimination (*Washington v. Davis*) and Irrational "Class-of-One" Targeting (*Village of Willowbrook v. Olech*):** The Equal Protection Clause of the Fourteenth Amendment strictly prohibits governmental entities and municipal policymakers from subjecting citizens to intentional discrimination, arbitrary hostility, or disparate treatment on the basis of race, ancestry, or gender (*Washington v. Davis*, 426 U.S. 229, 239 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)), as well as intentionally singling out an individual or family for arbitrary, vindictive, and irrational disparate treatment compared to similarly situated citizens without any rational basis (*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir.

2012)). Under binding U.S. Supreme Court precedent in *Carey v. Piphus*, 435 U.S. 247, 264 (1978) and *Memphis Community School District v. Stachura*, 477 U.S. 299, 307 (1986), plaintiffs whose Equal Protection rights are violated under 42 U.S.C. § 1983 are entitled to recover full compensatory damages for acute mental anguish, humiliation, and severe emotional distress.

76. **Particularized Acts of Protected-Class Hostility and Arbitrary Disparate Treatment:** Defendant Aldine ISD, acting through its official policies, widespread customs, and the ratification of its Board of Trustees (Tex. Educ. Code § 11.151(b); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)), directly violated the Equal Protection Clause by deploying targeted, identity-based hostility and irrational disparate treatment to suppress Plaintiffs' family grievances and liquidate their ancestral homestead:

- **(a) Protected-Class Race, Ancestry, and Gender Hostility:** During the active pendency of this controversy, Superintendent Dr. LaTonya M. Goffney and campus supervisor Teresa Jones, M.Ed. subjected Plaintiffs to targeted race-, ancestry-, and gender-based hostility, verbal abuse, six-officer police exclusion (April 22, 2025), and

harassing electronic portal transmissions (April 26, 2025) calculated to intimidate Plaintiffs and sabotage their administrative and educational records—ratified by the Board of Trustees' refusal to act after receiving actual written notice delivered to Chalico Campos and Ofelina H. on July 24, 2026 (Tab J-3); and

- **(b) Irrational "Class-of-One" Disparate Foreclosure Enforcement (*Olech*):** Aldine ISD intentionally singled out Plaintiffs' occupied ancestral homestead at 2323 Garapan Street (expressly recognized as holding an **"HS Exemption"** on Aldine ISD's own Answer Exhibit B) for portal lockout (card ending 7838), refusal of physical U.S. currency tender in February 2026, and forced Constable liquidation despite receiving $9,124.25 across Exhibits C, D, and E—including Christopher's timely January 29, 2026 PayIt remittance c7b35ffd two days ahead of the January 31, 2026 milestone under Aldine ISD's April 7, 2025 contract extending through February 15, 2028—treating Plaintiffs irrationally and vindictively differently from every other similarly situated occupied-homestead taxpayer in Harris County, Houston ISD, and the City of Houston, whose standing policy prohibits foreclosing on an occupied home making $570.67 monthly payments (Dkt. 31-10, Pages 15 & 23–24, 43–44), with Aldine ISD

counsel Deanna L. Longo invoking *"a little bit of history"* on the live record (Dkt. 31-10, Page 16) to justify unilaterally issuing the June 11, 2026 Order of Sale (Envelope No. 116022590) after Linebarger had already returned its Order of Sale unexecuted on April 24, 2026 (Pages 17–18, 21).

77. **Compensatory, Emotional-Distress, and Equitable Relief Under 42 U.S.C. § 1983:** Because this abusive and discriminatory conduct was executed as an official mechanism to suppress constitutional grievances, inflict severe emotional trauma, and strip Plaintiffs of their ancestral homestead, it constitutes an actionable Equal Protection violation under 42 U.S.C. § 1983 entitling Plaintiffs to full compensatory damages (including severe emotional distress and mental anguish under *Carey v. Piphus*and *Stachura*), declaratory relief, and permanent injunctive relief.

**COUNT SIX: Deprivation of Equal Protection & First Amendment Retaliation Under the Fourteenth and First Amendments (42 U.S.C. § 1983) (Against Defendants Superintendent Dr. LaTonya M. Goffney and Teresa Jones, M.Ed., in Their Individual Capacities)**

78. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

79. **Clearly Established Constitutional Standards & Inapplicability of Qualified Immunity (*Hope v. Pelzer*, *Taylor v. Riojas*, & *Iqbal*):** The Equal Protection Clause of the Fourteenth Amendment strictly prohibits public officials acting under color of state law from intentionally discriminating against, profiling, or harassing citizens on the basis of race, ancestry, or gender (*Washington v. Davis*, 426 U.S. 229, 239 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)), while the First Amendment prohibits retaliating against parents for engaging in protected civil rights advocacy (*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Under binding U.S. Supreme Court precedent in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020), Defendants Dr. LaTonya M. Goffney and Teresa Jones, M.Ed., operating in their individual capacities under color of law, are barred from asserting qualified immunity because the constitutional prohibition against using racial/ancestral slurs, gender slurs, and pretextual police exclusions to punish minority/Indigenous parents is clearly established and obvious to any reasonable official. Furthermore, each Defendant is personally liable for her own direct misconduct and active

participation pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) and *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018).

80. **Particularized Individual Acts of Intentional Discrimination, Retaliation, and Malice:** Specifically, Defendant Teresa Jones, M.Ed. intentionally utilized her administrative position to target, harass, and degrade Plaintiffs through the April 22, 2025 six-officer police ejection on a fabricated pretext the moment Plaintiff Christopher Alexander Sampson raised civil rights concerns during a parent-teacher conference, followed by the transmission of profane, race-based electronic portal communications on April 26, 2025, at 5:34 PM and funneled retaliatory animus across the 0.6-mile Donaldson Road corridor to trigger tax-account lockouts. Defendant Dr. LaTonya M. Goffney actively participated in, authorized, and ratified this discriminatory conduct, personally deploying hostile gender slurs to intimidate Plaintiffs and suppress legitimate administrative grievances regarding the arbitrary multi-officer police exclusion and record sabotage (including after receiving hand-delivered written notice delivered to Chalico Campos and Ofelina H. on July 24, 2026; Tab J-3).

81. **Compensatory, Emotional-Distress, and Individual Punitive Damages (*Smith v. Wade*):** Defendants' targeted verbal degradation, race- and gender-based harassment, and retaliatory police exclusions were completely divorced from any legitimate educational or administrative purpose and were executed with actual malice and callous indifference to Plaintiffs' federally protected rights, rendering Dr. LaTonya M. Goffney and Teresa Jones, M.Ed. personally and individually liable for full compensatory damages, severe emotional distress (*Carey v. Piphus*, 435 U.S. 247, 264 (1978)), and punitive/exemplary damages pursuant to *Smith v. Wade*, 461 U.S. 30, 56 (1983).

**COUNT SEVEN: Violations of the Texas Fraudulent Real Estate Instruments Statute (Tex. Civ. Prac. & Rem. Code § 12.002) and Texas Statutory Real Estate & Consumer Fraud (Tex. Bus. & Com. Code §§ 27.01, 17.45, & 17.50) (28 U.S.C. § 1367(a))**

**(Against Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N Thatcher Law LLC, Carline York, Mandie B. Gaston, Barry Barnes & Associates, PLLC, and American Title Company)**

82. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

83. **Statutory Prohibition Against Fraudulent Real-Property Claims & Supplemental Federal Jurisdiction (28 U.S.C. § 1367(a)):** Pursuant to Texas Civil Practice & Remedies Code § 12.002(a), a person may not make, present, or use a document or other record with knowledge that the document is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property, made with the intent that the document be given legal effect and with the intent to cause another person to suffer financial injury or mental anguish. Under settled Texas precedent, a forged, unauthorized, or wild deed purporting to convey or cloud title to real estate constitutes an actionable "fraudulent claim against real property or an interest in real property" within the plain text of § 12.002(a). See *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 848 (Tex. App.—Texarkana 2010, no pet.); *Bernard v. Bank of Am., N.A.*, No. 04-12-00088-CV, 2013 WL 441749, at *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet.). Furthermore, under Texas Business & Commerce Code § 27.01 (Fraud in Real Estate Transactions) and §§ 17.45 and 17.50 (Texas Deceptive Trade Practices Act), false material representations of title co-ownership and impending auction loss made knowingly and intentionally to coerce an unconscionable real-estate conveyance trigger actual, mental anguish, and treble damages. This Court exercises supplemental jurisdiction over Count

Seven pursuant to 28 U.S.C. § 1367(a) because it arises out of the exact same common nucleus of operative facts as Plaintiffs' federal claims under 42 U.S.C. §§ 1981, 1982, and 1985(3), the Fair Housing Act (42 U.S.C. § 3617), and Civil RICO (18 U.S.C. § 1962).

84. **Particularized Satisfaction of All Three Statutory Prongs Under FRCP 9(b) & 8(d)(2)–(3) & Forfeiture of Bona Fide Purchaser Status (*Madison v. Gordon*):** To satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)—under which the specific instruments, dates, recording numbers, and roles of each Defendant are stated with particularity while knowledge, intent, and reckless/willful blindness are pleaded generally and in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)–(3) and 9(b)—Plaintiffs map their allegations directly to the three mandatory elements of Tex. Civ. Prac. & Rem. Code § 12.002(a):

- **(a) Knowledge of Fraudulent Claim (§ 12.002(a)(1)) & Failure to Inspect (*Madison v. Gordon*):**The Corporate, Legal, Notary, and Title Intermediary Defendants knowingly made, presented, falsely notarized, and recorded at least seven (7) invalid, unauthorized real property instruments in the Official Public Records of Real Property

of Harris County, Texas—specifically: (1) the December 9, 2015 General Warranty Deed recorded under File No. 20150552824 (impacting 2539 DeSoto Street, featuring the crossed-out notary block on Page 12 / ER 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, the fallback certificate of Mandie B. Gaston on Page 5 / ER 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 falsely certifying a November 14, 2015 Harris County appearance while Christopher Sampson was held in non-bailable jail/TDCJ transit custody, uninitialed page-swapping noted in the Clerk's Recorder's Memorandum at ER 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, and unregistered ghost shell Heaven Investments hijacking 2539 DeSoto Street as its corporate address); (2) the 2017 General Warranty Deed recorded under File No. RP-2017-348145 (impacting 2323 Garapan Street, listing Christopher's mailing address on its face as 3695 FM 3514, Beaumont, Texas—the literal street address of a TDCJ correctional facility; Dkt. 31-10, Page 27—yet bearing TDCJ Institutional Notary Carline York's false July 11, 2017 Harris County personal-appearance certificate over blank grantor lines while Christopher Sampson was locked inside the TDCJ LeBlanc Unit in Jefferson County, procured by unfulfilled promises of a municipal roof-repair grant and zero consideration); and (3)–(7) the five (5) fraudulent "wild deeds" recorded in April 2026 (Tab U-2) by Sell

House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N Thatcher Law LLC, Barry Barnes & Associates, PLLC, and American Title Company utilizing void instruments from outside individuals **Loretta Marie Sampson** and **LaTrina Yvette Sampson** via remote mobile notaries while deliberately bypassing any physical inspection of Plaintiffs' occupied homestead (Exhibit U)—stripping Defendants of "Bona Fide Purchaser" status as a matter of law under *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001), *Collum v. Sanger Bros.*, 98 Tex. 162, 82 S.W. 459, 460 (1904), and *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 290 (1951);

- **(b) Intent to Give Legal Effect (§ 12.002(a)(2)):** Defendants recorded each of these seven instruments directly into the Harris County Real Property Records for the explicit purpose of manufacturing an artificial chain of title, establishing apparent record paper title dominance, blocking Plaintiffs' ability to resolve tax accounts, and providing a fraudulent baseline to support front-door eviction notices (Exhibit O) and hand-delivered partition demands; and

- **(c) Intent to Cause Financial Injury and Mental Anguish (§ 12.002(a)(3)) & Verbatim Voicemail Misrepresentation (Exhibit T):** Defendants executed and filed these instruments utilizing predatory out-of-state tactics, aggressive phone calls falsely claiming to hold a "50 percent share" of the home, and Richard Deyama's verbatim recorded voicemail on Plaintiff Stephanie Sampson's mobile phone (Exhibit T: *"Hi Stephanie, how's it going? It's Richard Diama [Deyama], yeah I'm calling from Sell House Now Cash. We co-own the property with you, 2323 Garapan St. So I just wanted to work something out. This property is going to be lost in auction September, October, so let's work something out that benefits you, benefits us, before we lose it. Let me know. Thanks."*) to induce panic and coerce an unauthorized surrender of Plaintiffs' ancestral homestead, causing extreme financial injury and severe mental anguish.

**85. Joint and Several Statutory, Actual, Treble, and Exemplary Damages (Tex. Civ. Prac. & Rem. Code § 12.002(b) & Tex. Bus. & Com. Code §§ 17.50(b)(1), 27.01):** Pursuant to Tex. Civ. Prac. & Rem. Code § 12.002(b)(1)–(4), Defendants are jointly and severally liable to each Plaintiff for the statutory penalty of $10,000.00 per recorded fraudulent document

(totaling $70,000.00 per Plaintiff across the seven recorded instruments) or the actual damages caused by the violations, whichever is greater, alongside court costs, reasonable attorney's fees, and exemplary/treble damages under Tex. Bus. & Com. Code §§ 17.50(b)(1) and 27.01(c)–(d) in an amount to be determined by the jury.

**COUNT EIGHT: Statutory Violation of Tex. Tax Code § 33.02(d), Breach of Tax Installment Agreements, Refusal of Legal Tender (31 U.S.C. § 5103), Quasi-Estoppel, Prevention Doctrine, and Waiver**

**(Supplemental State-Law & Equitable Enforcement Claim Pursuant to 28 U.S.C. § 1367(a) — Against Defendant Taxing Jurisdictions Only)**

86. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

87. **Mandatory Statutory Bar Against Foreclosure (Tex. Tax Code § 33.02(d)), Federal Legal Tender Mandate (31 U.S.C. § 5103), Quasi-Estoppel, and Prevention Doctrine:** Pursuant to Texas Tax Code § 33.02(d), a taxing unit is strictly prohibited by statute from seizing and selling property or pursuing execution to collect a delinquent tax subject to an installment agreement unless the property owner fails to comply with the terms of the agreement. Under 31 U.S.C. § 5103, United States coins and currency are legal tender for all debts, public charges, taxes, and dues, and

under binding Texas Supreme Court precedent in *Baucum v. Great American Insurance Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963), where a taxpayer timely tenders valid U.S. currency in person and the tax collector refuses the tender and locks payment portals, further tender is legally excused and the taxing unit is barred from declaring a default, assessing post-refusal penalties or interest, or proceeding to foreclosure. Under the equitable doctrine of quasi-estoppel, a party is strictly precluded from asserting a position to another's disadvantage that is wholly inconsistent with a position previously, voluntarily, and deliberately taken to accept benefits. See *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Furthermore, under the settled Prevention Doctrine, a party to an agreement or a creditor cannot take advantage of a default or failure of performance that it actively engineered, caused, or maintained. See *Biffle v. Morton Rubber Indus., Inc.*, 785 S.W.2d 143, 144 (Tex. 1990). This Court exercises supplemental jurisdiction over Count Eight pursuant to 28 U.S.C. § 1367(a) because it arises out of the exact same common nucleus of operative facts as Plaintiffs' federal due process and contract-equality claims (42 U.S.C. §§ 1981(b) and 1983).

88. **Particularized Breach, Portal Lockout, Refusal of Cash Tender, and Interlocal Policy Admissions (Dkt. 31-10, Pages 15–24, 43–44):**

Defendant Taxing Jurisdictions directly violated these statutory and equitable mandates. As explicitly admitted in Defendants' own court filings (Dkt. 31, Page 4), corroborated by Aldine ISD's Answer Exhibit B checking **"HS Exemption"**, and confirmed by official receipts (Exhibits C, D, & E; Tab F) and the certified hearing record (Dkt. 31-10, Pages 15–24, 40, 43–44), Plaintiff Christopher Alexander Sampson timely performed under Aldine ISD's April 7, 2025 payment contract extending through **February 15, 2028** (Exhibit C)—remitting $5,520.00 across 11 consecutive monthly payments into Aldine ISD accounts (including physical cash receipts Receipt Nos. 8316579, 8316578, 8316576, 8316575, & 8320093 totaling $4,950.00 and $1,844.12 via the PayIt portal under hashes 7f1d6e13, d3736da3, 0e6fc03b, and c7b35ffd on **January 29, 2026** for $461.03, two full days ahead of the January 31, 2026 milestone; Exhibit D)—and simultaneously remitted $2,330.13 under Harris County 36-month Installment Agreement No. 225713 executed March 16, 2026 covering Tax Years 2018–2025 (Receipt #2637033 on 03/23/2026 for $577.02 stamped by clerk mpalomares under 'christopher a sampson', plus 7e19a0b8, c0c81923, & c79b3d04; Exhibit E; Tab F). By processing, accepting, and retaining $9,124.25 in performing funds—and as Linebarger counsel Michael Cano confirmed on the live hearing record (Dkt. 31-10, Pages 15, 23–24, 43–44), where Harris

County, Houston ISD, and the City of Houston maintain a standing policy prohibiting foreclosure on an occupied home or any taxpayer making $570.67 monthly payments, and returned Linebarger's Order of Sale unexecuted on April 24, 2026 ("informing the court that the foreclosure was off the table"; Pages 17, 21)—Defendant Taxing Jurisdictions accepted the full financial benefits of the active agreements and waived any immediate foreclosure or execution rights. Because Aldine ISD subsequently engineered an artificial default by imposing an automated portal block on credit card ending 7838 (Tab E), requesting an Order of Sale on February 3, 2026 two years prior to the February 15, 2028 maturity date, scrubbing Christopher's name from the Owner block on Aldine ISD's July 31, 2026 statement, generating the August 26, 2026 fraudulent "Supplement Correction" printout (Exhibit T-3-J; Dkt. 31-10, Pages 31–32), flatly refusing physical U.S. currency tender when Christopher presented himself at the Aldine ISD Tax Office in February 2026, and unilaterally issuing Aldine ISD's June 11, 2026 Order of Sale (Envelope No. 116022590) while invoking *"a little bit of history"* (Dkt. 31-10, Page 16), Plaintiffs' subsequent non-remittance to Aldine ISD is legally excused as a matter of law.

89. **Equitable Specific Performance, Reinstatement, and Ultra Vires Injunctive Relief:** Because Defendants' pursuit of an execution sale violates

Tex. Tax Code § 33.02(d), 31 U.S.C. § 5103, quasi-estoppel, and the Prevention Doctrine—and because *ultra vires* acts by officials refusing lawful tax tender and violating mandatory statutory prohibitions are not shielded by governmental immunity (*City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009))—Plaintiffs are entitled to equitable specific performance, declaratory judgment, and mandatory injunctive relief compelling Defendant Taxing Jurisdictions to reinstate Plaintiffs' installment contracts (including Aldine ISD's April 7, 2025 contract through February 15, 2028 and Harris County Agreement No. 225713), credit all $9,124.25 previously paid, abate all post-January 2026 penalties and interest accrued during Defendants' wrongful portal lockout, and permanently cease all foreclosure execution proceedings against Plaintiffs' homestead.

**COUNT NINE: Common-Law Fraud, Private Nuisance, Intentional Civil Trespass, Slander of Title, and Civil Conspiracy to Defraud (Supplemental State-Law Claims Pursuant to 28 U.S.C. § 1367(a) — Against Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, and N Thatcher Law LLC)**

90. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

91. **Governing Texas Tort Elements & Supplemental Federal Jurisdiction (28 U.S.C. § 1367(a)):**Independent supplemental causes of action are asserted pursuant to 28 U.S.C. § 1367(a) against Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, and N Thatcher Law LLC for (a) Common-Law Fraud, (b) Private Nuisance, (c) Intentional Civil Trespass, (d) Slander of Title, and (e) Civil Conspiracy to Defraud—all arising from the exact same common nucleus of operative facts as Plaintiffs' federal civil rights, Fair Housing Act (42 U.S.C. § 3617), and Civil RICO (18 U.S.C. § 1962) claims:

- **(a) Common-Law Fraud (*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)):** Defendants knowingly made false, material representations of existing fact—including Richard Deyama's verbatim recorded voicemail on Stephanie Sampson's mobile phone falsely asserting that Sell House Now Cash LLC co-owned 2323 Garapan Street and that the home would be lost in auction in September or October (Exhibit T), aggressive phone calls claiming "50 percent" ownership, forged/altered notary acknowledgments (File No. 20150552824and

File No. RP-2017-348145), and false claims of valid fractional ownership—with actual knowledge of falsity or reckless disregard for the truth, intending that Plaintiffs and municipal tax desks rely thereon to surrender possession and title;

- **(b) Intentional Civil Trespass (*Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011)):** Defendants intentionally made or caused unauthorized physical entries onto Plaintiffs' exclusive residential homestead at 2323 Garapan Street without consent or legal right—physically intruding onto the curtilage to tape unauthorized eviction notices onto Plaintiffs' front door (Exhibit O) and hand-delivering predatory partition demands;

- **(c) Private Nuisance (*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 593–95 (Tex. 2016); *Barnes v. Mathis*, 353 S.W.3d at 763):** Defendants intentionally created a condition that substantially and unreasonably interfered with Plaintiffs' use, peaceable enjoyment, and security of their 39-year residential homestead through repeated front-door eviction postings (Exhibit O), panic-inducing automated

voice transmissions (Exhibit T), aggressive phone harassment, and corporate address-hijacking of 2539 DeSoto Street;

- **(d) Slander of Title (*A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982); *Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App.—Houston [14th Dist.] 1988, writ denied)):** Defendants uttered and published disparaging, false statements against Plaintiffs' title by recording the void December 9, 2015 deed (File No. 20150552824) and five (5) invalid April 2026 "wild deeds" (Tab U-2) in the Harris County Real Property Records with legal malice, directly causing special damages—namely, clouding Plaintiffs' marketable title, impairing Plaintiffs' ability to obtain financing or resolve tax accounts, and causing loss of quiet enjoyment; and

- **(e) Civil Conspiracy to Defraud (*Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019)):** Two or more of these Defendants reached a meeting of the minds on an unlawful objective—acquiring and clouding Plaintiffs' ancestral real estate through forged/defective deeds, wild deeds, and fraudulent eviction intimidation—committed

overt unlawful acts in furtherance thereof (FRCP 9(b)), and proximately caused Plaintiffs' damages, rendering each conspirator jointly and severally liable for all acts of every co-conspirator.

92. **Actual, Special, and Exemplary Damages (Tex. Civ. Prac. & Rem. Code § 41.003(a)):** As a direct and proximate result of Defendants' fraudulent, malicious, and intentional tortious conduct pleaded with particularity under Federal Rule of Civil Procedure 9(b), Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, and N Thatcher Law LLC are jointly and severally liable to Plaintiffs for actual damages, special damages for slander of title, mental anguish, and exemplary/punitive damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a).

**COUNT TEN: Unified Retaliation for Exercising Protected First Amendment Speech, Petition, and Civil Rights Advocacy (42 U.S.C. §§ 1983 & 1985(2)–(3)) (Against Defendants Aldine Independent School District, Superintendent Dr. LaTonya M. Goffney, Teresa Jones, M.Ed., Purnell Harvey, Felisa Zamora, Deanna L. Longo, Kanika W. Middleton, Annette Ramirez, Linebarger LLP, Michael Cano, and Lauren L. Jones)**

93. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

94. **Controlling First Amendment & Unified Retaliation Standards (*Mt. Healthy*, *Keenan v. Tejeda*, *Lozman*, & *Nieves*):** The First Amendment to the United States Constitution strictly prohibits government entities, municipal policymakers, and private contractors acting in joint participation under color of state law (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)) from subjecting citizens to retributive harassment, police intimidation, records destruction, or hostile tax-collection and foreclosure actions in **unified retaliation** for exercising protected speech or petitioning the government for a redress of grievances. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Under binding Fifth Circuit precedent in *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002), Plaintiffs establish actionable First Amendment retaliation where: (1) they engaged in constitutionally protected speech or Petition Clause activity; (2) Defendants' retaliatory conduct would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendants' adverse actions were substantially motivated by Plaintiffs' protected expression. Furthermore, under *Lozman v. City of Riviera Beach*, 585 U.S. 87, 100–01 (2018) and *Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019), any pretextual enforcement defense fails where municipal policy is used to execute **unified retaliation** against

protected speech and objective comparative evidence shows that similarly situated citizens who did not engage in protected speech were not subjected to foreclosure. Individual public officials Dr. LaTonya M. Goffney, Teresa Jones, M.Ed., Purnell Harvey, Felisa Zamora, Deanna L. Longo, Kanika W. Middleton, and Annette Ramirez violated clearly established First Amendment law and are stripped of qualified immunity (*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)), while private collection contractor Linebarger LLP and attorneys Michael Cano and Lauren L. Jones are barred as a matter of law from asserting qualified immunity (*Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)).

95. **Particularized Unified Retaliatory Campaign, Direct Transcript Admissions ("A Little Bit of History"), and 10-Day Temporal Proximity (*Feist*):** Immediately after Plaintiff Christopher Alexander Sampson raised protected speech and constitutional objections during the April 22, 2025 parent conference regarding his family's historical civil rights lineage (*Sampson v. Thorne*), filed state and federal civil rights pleadings, hand-delivered his July 24, 2026 formal written civil rights grievance transcript to Chalico Campos and Ofelina H. (Tab J-3), and notified the parties on August 26, 2026 that he would escalate the civil rights and fraud violations to federal oversight agencies (**U.S. Department of Education OCR, OIG**, and

**DOJ Civil Rights Division**), Defendants launched a coordinated, **unified retaliatory campaign-across the immediate Aldine Bender Road / Aldine Westfield Road / W.W. Thorne Blvd. administrative corridor (linking Knippel Education Center at 1702 Aldine Bender Rd., the Aldine ISD Tax Office at 14909 Aldine Westfield Rd., and the M.B. Sonny Donaldson Administration Building at 2520 W.W. Thorne Blvd.):** (a) weaponizing an irregular six-officer police ejection on April 22, 2025, and transmitting profane electronic portal messages on April 26, 2025; (b) targeting Plaintiffs' minor daughter A'niyah Lola'ann Sampson on April 20 and April 23, 2026 with flat "72" marks that were automatically realigned to 85–93 on April 29, 2026 at 7:13 PM (Document ID: Tab W4-NT-, Tab FkwAyv) once challenged; (c) locking Plaintiffs' performing Tex. Tax Code § 33.02(d) tax installment portals after Christopher's timely January 29, 2026 PayIt remittance (c7b35ffd)—short-circuiting Aldine ISD's April 7, 2025 contract extending through February 15, 2028—refusing physical U.S. currency tender in February 2026, overriding Linebarger's April 24, 2026 unexecuted Order of Sale return by unilaterally issuing Aldine ISD's June 11, 2026 Order of Sale (Envelope No. 116022590; Exhibit F; Dkt. 31-10, Pages 17–18, 21), and forcing a retaliatory Constable foreclosure sale—while similarly situated occupied-homestead taxpayers making

$570.67/month payments are protected from foreclosure under standing interlocal policy (Dkt. 31-10, Pages 15, 23–24, 43–44), and Aldine ISD lead counsel Deanna L. Longo openly invoked **"a little bit of history"** on the live hearing record (*"Your Honor, we do not have a policy that is similar to that. What I can tell you is that in this particular instance, if I can just give you a little bit of history"*; Dkt. 31-10, Page 16) to reject any installment compromise and demand lump-sum payment in full or foreclosure (Pages 21, 23, 41–43); (d) purging and destroying Christopher's historical K–12 academic and disciplinary tracking records on August 3, 2026 (Exhibit V; FRCP 37(e)(2)) exactly ten (10) days after receiving his July 24, 2026 written grievance, establishing overwhelming temporal proximity and circumstantial proof of retaliatory malice (*Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013)); and (e) abruptly converting the August 27, 2026 hearing from an in-person courtroom proceeding to a virtual Zoom hearing on August 26, 2026—preventing physical exhibit admission (Dkt. 31-10, Page 6)—and marking Plaintiffs' sustained indigent affidavit (Filing ID 127869618) as "restricted" on the Clerk's portal.

96. **But-For Causation, Unified Retaliatory Liability, Monell Ratification, and Relief:** But for Plaintiffs' protected speech, ancestral civil rights advocacy, and judicial and federal-agency petitions, these retaliatory actions

would not have occurred. Because Defendants operated as an interlocking, **unified retaliatory apparatus**—linking campus police exclusions, minor-child grade downgrades, tax-installment portal lockouts, physical currency refusals, unilateral Order of Sale overrides, corrupted service certificates, post-notice record spoliation, and hearing/transcript lockouts into a single punitive response—and because Aldine ISD's Board of Trustees and Superintendent Dr. LaTonya M. Goffney authorized and ratified this retaliatory course of conduct after actual notice (Tab J-3; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)), Aldine ISD is municipally liable alongside the individual and private contractor Defendants for joint and several compensatory damages, severe emotional distress, individual punitive damages (*Smith v. Wade*, 461 U.S. 30, 56 (1983)), declaratory relief, and permanent injunctive relief

**COUNT ELEVEN: Action for Declaratory Judgment to Declare Fraudulent Real Property Instruments Void, Enforce Statutory Installment Rights, and Establish Superior Title**

**(Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; 42 U.S.C. §§ 1981–1983; 28 U.S.C. § 1367(a); and Texas Constitution Article XVI, Sections 50 and 51 — Against All Defendants)**

97. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

98. **Actual Justiciable Controversy & Constitutional Homestead Protection (28 U.S.C. §§ 2201–2202; Tex. Const. art. XVI, §§ 50–51):** Plaintiffs invoke the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and this Court's original and supplemental jurisdiction (28 U.S.C. §§ 1331, 1343, and 1367(a)), to seek a binding judicial declaration determining the rights, legal relations, and title status of the parties regarding the real property *res* commonly known as 2323 Garapan Street and 2539 DeSoto Street. Under Article XVI, Sections 50 and 51 of the Texas Constitution, an urban residential homestead is strictly protected from forced sale or unauthorized extrajudicial seizure by third-party creditors who do not hold valid, constitutionally enumerated liens. Furthermore, under settled Texas property jurisprudence, cotenants and lawful heirs are fully entitled to jointly establish, maintain, and protect their individual or collective homestead interests within an undivided common estate. See *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942); *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963).

99. **Binding Declaratory Relief Requested (Exxon Mobil & Skinner Compliant):** An actual, immediate, and justiciable controversy exists between the parties concerning the validity of competing deeds, Defendants' out-of-court enforcement actions, and possessory title to the properties. Consistent with Justice Ruth Bader Ginsburg's controlling framework in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005) and *Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011), Plaintiffs request a formal, binding judicial declaration that:

- **(a) Unconstitutional Enforcement & Non-Binding Effect on Unserved Owner:** Defendants' out-of-court execution requests—specifically including Aldine ISD Legal Department employee Felisa Zamora and Aldine ISD counsel Deanna L. Longo's unilateral June 11, 2026 Order of Sale request (Exhibit F; Envelope No. 116022590; Dkt. 31-10, Pages 17–18, 21), Harris County Tax Assessor-Collector Annette Ramirez's August 26, 2026 "Supplement Correction" printout (Exhibit T-3-J; Dkt. 31-10, Pages 31–32), and the defective Certificates of Service and letters routing notices to non-existent addresses and corrupted zip codes ("16605 South West Fwy, Houston, Texas 77449"on Exhibit F; "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449" on Dkt. 31-5, Page 7; and "715 SOUTH

MASON ROAD #612, RICHMOND, TEXAS 77047" on Dkt. 31, Att. 1)—violate Fourteenth Amendment Due Process (*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–800 (1983); *Jones v. Flowers*, 547 U.S. 220, 225–26 (2006)), *Spanton v. Bellah*, 612 S.W.3d 314, 316–18 (Tex. 2020), and Tex. Tax Code § 34.01(a-1), and that because Plaintiff Christopher Alexander Sampson was never served with citation in State Cause No. 2024-89814, his vested equitable title and 31-year homestead interest cannot be extinguished without due process of law (*Lance v. Dennis*, 546 U.S. 459, 464–66 (2006); *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84–85 (1988));

- **(b) Active Statutory Installment Protection (Tex. Tax Code § 33.02(d)):** Aldine ISD's April 7, 2025 repayment contract extending through February 15, 2028 (Exhibit C) and Harris County Installment Agreement No. 225713 executed March 16, 2026 (Exhibit E; Tab F) remain legally valid, enforceable, and active following Plaintiffs' cumulative payment of $9,124.25 (including Christopher's timely January 29, 2026 PayIt remittance c7b35ffd two days ahead of the

January 31, 2026 milestone; Exhibit D) and Defendants' wrongful portal lockout (card ending 7838; Tab E) and refusal of physical U.S. currency tender in February 2026 (31 U.S.C. § 5103; *Baucum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 866 (Tex. 1963)), barring any foreclosure sale pursuant to Tex. Tax Code § 33.02(d);

- **(c) Nullity of Forged, Defective, and "Wild" Corporate Deeds (*Madison v. Gordon*):** The competing private real-estate instruments—specifically including the five (5) April 2026 "wild deeds" recorded by Sell House Now Cash LLC and its agents utilizing void filings involving outside individuals Loretta Marie Sampson and LaTrina Yvette Sampson without physical inspection (*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); Tab U-2), the altered/falsely notarized December 9, 2015 deed recorded under File No. 20150552824 (purporting to convey 2539 DeSoto Street to unregistered ghost shell Heaven Investments), and the 2017 deed recorded under File No. RP-2017-348145 (falsely notarized during Christopher Sampson's TDCJ confinement in Jefferson County, as shown by the 3695 FM 3514 Beaumont prison mailing block on its face; Dkt. 31-10, Page 27, and procured by unfulfilled promises of a municipal roof-repair grant and zero consideration)—are void *ab*

*initio* or rescinded for fraud in the inducement and failure of consideration (*Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976); *Mills v. Gray*, 210 S.W.2d 985, 988–89 (Tex. 1948); *Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 19 S.W. 472, 474 (1892)), convey zero legal or equitable interest, and are of no legal force or effect;

- **(d) Superior Limitation, Presumed Ouster, Equitable, and Homestead Title in Plaintiffs:**Plaintiffs hold immediate superior possessory rights, mature 25-year limitation fee-simple title and presumed cotenant ouster under Tex. Civ. Prac. & Rem. Code §§ 16.023, 16.027, and 16.030(a) (*Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 290 (1951); *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899–902 (Tex. 1976)), and unclouded equitable title to 2323 Garapan Street and 2539 DeSoto Street, and the physical boundaries of 2323 Garapan Street are protected by the Texas constitutional residential homestead shield (Tex. Const. art. XVI, §§ 50–51); and

- **(e) Lack of Standing or Title in Private Corporate Defendants:** Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N

Thatcher Law LLC, Barry Barnes & Associates, PLLC, and American Title Company possess no cognizable legal or equitable interest in either property sufficient to maintain eviction, trespass, or partition actions against Plaintiffs.

**COUNT TWELVE: Civil Rights Conspiracy Under Color of State Law & Private Conspiracy to Deprive Equal Property Rights (42 U.S.C. §§ 1983, 1985(3), & 1986)**

**(Against All Private Real Estate Corporate Defendants — Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N Thatcher Law LLC, Barry Barnes & Associates, PLLC, and American Title Company — and Defendant Linebarger Goggan Blair & Sampson, LLP)**

100. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

101. **Controlling Supreme Court & Fifth Circuit Conspiracy Standards (Adickes, Dennis v. Sparks, Griffin v. Breckenridge, & Priester):** Under 42 U.S.C. § 1983, private actors and state-procurement contractors who willfully participate in a joint enterprise, combination, or conspiracy with public officials to deprive citizens of rights secured by the Constitution or federal statutes act under color of state law and are barred

from asserting qualified immunity. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). Independently, under 42 U.S.C. § 1985(3) and binding U.S. Supreme Court precedent in *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) and *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 832–33 (1983), 42 U.S.C. § 1985(3) directly prohibits purely private conspiracies—even without state action—where two or more persons conspire, motivated by racial or ancestral class-based animus against an Aboriginal Indigenous American Indian and Black family (*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)), to deprive citizens of equal property and contract rights protected under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1982 (*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)).

**102.** **Synchronized Circumstantial & Particularized Overt Acts Demonstrating a Meeting of the Minds (Cinel v. Connick & FRCP 9(b)):** Pursuant to Federal Rule of Civil Procedure 9(b) and Fifth Circuit precedent confirming that conspiratorial agreement is established through synchronized, interlocking overt acts (*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984)), the

Private Real Estate Corporate Defendants and Defendant Linebarger Goggan Blair & Sampson, LLP reached a mutual understanding and meeting of the minds to strip Plaintiffs of their ancestral homesteads at 2323 Garapan Street and 2539 DeSoto Street without due process of law:

* **(a) Channel Hijacking via Impostor Phone Number (281) 274-8050:** As admitted by Aldine Legal Department employee Felisa Zamora during both her morning face-to-face meeting and her 4:00 PM joint telephonic conference with both Plaintiffs on July 20, 2026 (Dkt. 31-10, Pages 38–39), third-party deed-theft impostors infiltrated the tax office communication channel under the guise of "setting up a payment plan," substituting unauthorized phone number (281) 274-8050 to intercept litigation and sale notices before ghosting the office once their corporate LLC deed filings were finalized;

* **(b) Simultaneous Account Lockout & Corrupted Zip-Code Mailings:** While Plaintiffs' performing Tex. Tax Code § 33.02(d) installment portal (card ending 7838; Tab E) was locked and Christopher Alexander Sampson's in-person U.S. currency tender was refused in February 2026, collection counsel Lauren L. Jones, Felisa Zamora, and Aldine ISD counsel Deanna L. Longo routed mandatory post-judgment notices to impossible, mismatched city/zip-code combinations ("16605 SOUTH WEST FWY, SUGAR LAND,

TEXAS 77449", "16605 South West Fwy, Houston, Texas 77449" on Exhibit F, Envelope No. 116022590, and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047" on Dkt. 31, Att. 1) to prevent Plaintiffs from learning of the engineered default; and

* **(c) Predatory April 2026 "Wild Deeds", Verbatim Voicemail Coercion (Exhibit T), & Front-Door Eviction Intimidation:** Exploiting the exact window created by the February 2026 portal lockout and notice diversion, Defendants Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, and N Thatcher Law LLC (building upon the altered/falsely notarized 2015 and 2017 deeds involving Heaven Investments, Barry Barnes & Associates, PLLC, and American Title Company) recorded five (5) fraudulent "wild deeds" in April 2026 utilizing void instruments involving outside individuals Loretta Marie Sampson and LaTrina Yvette Sampson (Tab U-2), taped unauthorized eviction notices onto Plaintiffs' front door (Exhibit O), and left Richard Deyama's verbatim recorded voicemail on Stephanie Sampson's phone (Exhibit T) falsely claiming co-ownership and an imminent September/October auction wipeout.

103. **Joint and Several Liability for Actual, Compensatory, and Exemplary Damages:** Because this coordinated, interlocking alignment was

executed in tandem to block meaningful judicial review, obstruct Plaintiffs' statutory installment performance, and force an unconscionable public foreclosure liquidation, all named Defendants in Count Twelve are jointly and severally liable to Plaintiffs for actual damages, special damages, severe emotional distress, and punitive/exemplary damages under 42 U.S.C. §§ 1983 and 1985(3) (*Smith v. Wade*, 461 U.S. 30, 56 (1983)).

**COUNT THIRTEEN: Common-Law Intentional Infliction of Emotional Distress**

**(Supplemental State-Law Claim Pursuant to 28 U.S.C. § 1367(a) Pleaded in the Alternative Pursuant to Fed. R. Civ. P. 8(d)(2)–(3) — Against Defendants Richard Deyama and Raul Bolufe, Individually)**

**104.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**105.** **Controlling Texas IIED Standards (Twyman & GTE Southwest) & Alternative Pleading Under FRCP 8(d)(2)–(3):** Under settled Texas law, an individual commits an actionable tort when: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. See *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605,

611 (Tex. 1999). Under binding Texas Supreme Court precedent in *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d at 611–12, a sustained course of harassing, coercive, and threatening behavior becomes "extreme and outrageous" as a matter of law where defendants knowingly exploit a plaintiff's acute vulnerability or severe personal and family crisis. Pursuant to Federal Rule of Civil Procedure 8(d)(2)–(3) and 28 U.S.C. § 1367(a), Plaintiffs explicitly plead this cause of action in the alternative to address the standalone psychological terror campaign inflicted by Richard Deyama and Raul Bolufe to the extent any aspect of that mental trauma is not redressed by another statutory remedy (see *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)).

**106.** **Particularized Extreme and Outrageous Conduct Exploiting Acute Family Crisis:** Defendants Richard Deyama and Raul Bolufe, operating in their individual capacities, personally engaged in extreme and outrageous behavior exceeding all possible bounds of decency. Knowing that Plaintiff Christopher Alexander Sampson is an Aboriginal Indigenous American Indian residing continuously for 31 years in his 39-year ancestral sanctuary at 2323 Garapan Street while battling an engineered tax-portal lockout and financial crisis, Deyama and Bolufe intentionally executed a predatory psychological terror campaign—deploying Richard Deyama's

verbatim recorded voicemail on Stephanie Sampson's phone falsely declaring that Sell House Now Cash LLC co-owned 2323 Garapan Street and that the home would be lost in auction in September or October (Exhibit T), conducting repeated aggressive phone harassment falsely claiming "50 percent" ownership, taping unauthorized front-door eviction postings (Exhibit O), and delivering partition threats—specifically calculated to induce acute panic and coerce an unauthorized surrender of Plaintiffs' ancestral homestead under extreme duress.

**107.** **Severe Emotional Distress, Physical Manifestations, and Exemplary Damages:** As a direct and proximate result of Defendants' outrageous out-of-court conduct, Plaintiffs suffered severe emotional distress beyond what any reasonable person could be expected to endure, manifesting in acute mental anguish, involuntary malnutrition (limiting Christopher to one meal per day for two straight weeks starting July 10–18, 2026), dangerous bodily weight loss, sleep deprivation, and the destruction of personal and cultural security, rendering Richard Deyama and Raul Bolufe jointly and severally liable to Plaintiffs for full compensatory damages ($373,250.00 for Christopher Alexander Sampson and $746,500.00 for Stephanie Sampson) and exemplary/treble damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a) and Tex. Bus. & Com. Code § 17.50(b)(1).

**COUNT FOURTEEN: Conspiracy to Deprive Citizens of Due Process Under Color of Law (42 U.S.C. § 1983)**

**(Against Defendants Linebarger Goggan Blair & Sampson, LLP, Michael Cano, Lauren L. Jones, Wendi Faughn, Deanna L. Longo, and Kanika W. Middleton)**

108. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

109. **Controlling Supreme Court Standards Governing Joint-Action Conspiracy, Federal Supremacy Over State Attorney Immunity (Howlett v. Rose), and Bar Against Qualified Immunity (Wyatt v. Cole):** An independent cause of action is established under 42 U.S.C. § 1983 when private law firms, individual attorneys, or state-procurement contractors reach a mutual understanding and engage in joint, conspiratorial activity with distinct municipal subdivisions and county tax offices to execute unconstitutional enforcement practices. Private actors who willfully participate in such a joint scheme with public officials act under color of state law and are fully liable for the resulting constitutional deprivations. See *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). Under binding U.S. Supreme Court precedent in *Martinez v.*

*California*, 444 U.S. 277, 284 n.8 (1980) and *Howlett v. Rose*, 496 U.S. 356, 375 (1990), state-law attorney immunity doctrines such as *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–82 (Tex. 2015) are preempted and cannot immunize conduct against a federal cause of action under 42 U.S.C. § 1983—and even under Texas law, attorney immunity never shields out-of-court administrative address manipulation or fraudulent non-litigation acts (*Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 51–53 (Tex. 2021)). Furthermore, as private, profit-driven state-procurement contractors, Linebarger LLP and individual attorneys Michael Cano, Lauren L. Jones, and Wendi Faughn are categorically barred from asserting qualified immunity as a matter of federal law. See *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992); *Richardson v. McKnight*, 521 U.S. 399, 412 (1997).

**110.** **Particularized Inter-Entity Conspiracy and Out-of-Court Notice Subversion (FRCP 9(b) & 8(d)(2)–(3)):** To satisfy Federal Rule of Civil Procedure 9(b) (with intent, knowledge, and reckless indifference pleaded generally and in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)–(3)), Plaintiffs plead with particularity that private contractor Linebarger LLP and individual attorneys Michael Cano, Lauren L. Jones, and Wendi Faughn reached a meeting of the minds with Aldine ISD legal counsel Deanna L. Longo and Kanika W. Middleton and distinct municipal and county

officials—including Aldine Legal Department employee Felisa Zamora and Harris County Tax Assessor-Collector Annette Ramirez—to subvert Plaintiffs' Fourteenth Amendment due process rights and statutory installment protections (Tex. Tax Code § 33.02(d)):

* **(a) Fabrication of Corrupted Certificates of Service & Execution Letters:** Collection counsel Lauren L. Jones (September 18, 2025; Dkt. 31-5, Page 7; Dkt. 31-10, Page 24), Felisa Zamora (June 11, 2026 Order of Sale letter; Exhibit F; Envelope No. 116022590), and Aldine ISD counsel Deanna L. Longo (July 30, 2026; Dkt. 31, Att. 1) knowingly generated and executed certified Certificates of Service and execution notices utilizing truncated street numbers and geographically impossible city/zip-code combinations ("16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449", "16605 South West Fwy, Houston, Texas 77449", and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047"), while omitting mandatory TRCP 239a notice and failing to serve equitable owner Christopher Alexander Sampson;
* **(b) Coordinated Account Lockout, Unilateral Order of Sale Override, & Retaliatory Refusal of Payment Plan:** In tandem with Aldine ISD's automated portal lockout on credit card ending 7838 (Tab E), refusal of Christopher Sampson's physical U.S. currency tender in February 2026, and

Harris County Tax Assessor-Collector Annette Ramirez's August 26, 2026 fraudulent "Supplement Correction" printout (Exhibit T-3-J; Dkt. 31-10, Pages 31–32), Aldine ISD counsel Deanna L. Longo invoked *"a little bit of history"* on the live hearing record (Dkt. 31-10, Page 16) and flatly rejected reinstating Plaintiffs' payment plan on Aldine ISD's $9,368.83 balance—unilaterally issuing Aldine ISD's June 11, 2026 Order of Sale (Envelope No. 116022590) after Linebarger LLP had already returned its Order of Sale unexecuted on April 24, 2026 ("informing the court that the foreclosure was off the table"; Dkt. 31-10, Pages 17–18, 21), and thereby forcing Harris County and the City of Houston to join a foreclosure sale against their own standing non-foreclosure policy (Dkt. 31-10, Pages 15, 23–24, 43–44); and

* **(c) Generation of Unauthorized Post-Judgment Costs (Invoice No. 8080149):** Through this engineered absence of notice and prevented performance, Defendants artificially generated unauthorized post-judgment execution costs under Invoice No. 8080149, totaling $1,223.78 (assessed despite Plaintiffs' sustained TRCP 145 indigency waiver), while pushing forward with a Constable auction sale.

**111.** **Joint and Several Compensatory and Punitive Damages (Smith v. Wade):** Because Defendants Linebarger Goggan Blair & Sampson, LLP, Michael Cano, Lauren L. Jones, Wendi Faughn, Deanna L. Longo, and

Kanika W. Middleton acted jointly under color of state law with actual malice and callous indifference to Plaintiffs' clearly established Fourteenth Amendment rights, they are jointly and severally liable in their individual and corporate capacities for full compensatory damages, severe emotional distress, and punitive/exemplary damages pursuant to 42 U.S.C. § 1983 and *Smith v. Wade*, 461 U.S. 30, 56 (1983).

**COUNT FIFTEEN: Unreasonable Seizure of Real Property Interests and Deprivation of Due Process (Fourth and Fourteenth Amendments; 42 U.S.C. § 1983)**

**(Against Defendant Taxing Jurisdictions and Defendant Linebarger Goggan Blair & Sampson, LLP)**

**112.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**113.** **Controlling Fourth Amendment Property-Seizure Standards (Soldal v. Cook County & United States v. Jacobsen):** The Fourth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, strictly protects citizens against unreasonable governmental searches and seizures of their houses, papers, and effects. Under binding U.S. Supreme Court precedent in *Soldal v. Cook County*, 506 U.S. 56, 61–62, 67 (1992) and *United States v. Jacobsen*, 466

U.S. 109, 113 (1984), the Fourth Amendment applies in full to civil municipal and tax-collection enforcement, and a constitutional "seizure" of property occurs whenever there is any meaningful interference with an individual's possessory interests in that property—including encumbering an occupied family residence with an active Constable Order of Sale, clouding record ownership, revoking statutory installment possession rights, and initiating forced auction liquidation. This constitutional shield bars municipal subdivisions and private contractors operating in joint participation under color of law (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)) from executing or attempting forced property seizures based on non-service, corrupted notice profiles, or engineered administrative defaults.

**114.** **Particularized Unreasonable & Meaningful Interference With Possessory Interests:** Defendants directly violated these Fourth and Fourteenth Amendment mandates. Defendant Taxing Jurisdictions, operating pursuant to their revenue-driven administrative customs (*Monell*), and Defendant Linebarger Goggan Blair & Sampson, LLP, acting as a willful participant in joint action with state actors under color of law, engaged in an objectively unreasonable, meaningful interference with Plaintiffs' exclusive 31-year possessory, homestead, and equitable title

interests in the target real property assets commonly known as 2323 Garapan Street and 2539 DeSoto Street by: (a) issuing Aldine ISD's unilateral June 11, 2026 Order of Sale request (Exhibit F; Envelope No. 116022590; Dkt. 31-10, Pages 17–18, 21) and scheduling forced public auction execution while Christopher Alexander Sampson was never served in Cause No. 2024-89814 and post-judgment notices were routed to non-existent addresses and impossible zip codes ("16605 South West Fwy, Houston, Texas 77449", "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449", and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047") and hijacked impostor phone number (281) 274-8050 (Dkt. 31-10, Pages 38–39); (b) locking out Plaintiffs' performing Tex. Tax Code § 33.02(d) installment portals (card ending 7838; Tab E) and refusing physical U.S. currency tender (31 U.S.C. § 5103) in February 2026 after accepting $9,124.25 across Exhibits C, D, and E; and (c) altering public tax-assessor title records on August 26, 2026 (Exhibit T-3-J; Dkt. 31-10, Pages 31–32) to impose an artificial $12,764.69 delinquency cloud.

**115.** **Compensatory, Exemplary, and Injunctive Relief Under 42 U.S.C. § 1983:** Placing Plaintiffs' 39-year ancestral homestead under an active Constable levy and auction schedule through prevented payment performance and corrupted notice profiles constitutes an objectively

unreasonable, extrajudicial seizure of real property interests violating the Fourth and Fourteenth Amendments, entitling Plaintiffs to declaratory relief, permanent injunctive relief halting the seizure, full compensatory damages, severe emotional distress, and punitive/exemplary damages against Defendant Linebarger LLP under 42 U.S.C. § 1983 (*Smith v. Wade*, 461 U.S. 30, 56 (1983)).

**COUNT SIXTEEN: Statutory Civil Liability for Notary Misconduct, False Certificates of Acknowledgment, and Civil Fraud (Tex. Gov't Code §§ 406.009 & 406.016; Tex. Civ. Prac. & Rem. Code §§ 121.004 & 121.007; 28 U.S.C. § 1367(a))**

**(Against Defendants Carline York and Mandie B. Gaston, Individually)**

**116.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**117.** **Mandatory Statutory Duty of Texas Notaries Public & Supplemental Federal Jurisdiction (28 U.S.C. § 1367(a)):** Defendants Carline York and Mandie B. Gaston (a/k/a Mandie D. Gaston), operating as duly commissioned Notaries Public for the State of Texas, owed a strict, non-discretionary statutory duty under Texas Government Code §§ 406.009(d)(2) and 406.016 and Texas Civil Practice & Remedies Code §§ 121.004 and 121.007 to require the physical, personal appearance of the

grantor before them, positively verify identity, confirm voluntary execution of a completed instrument, and truthfully state the county and date of personal appearance on every certificate of acknowledgment. Under settled Texas law, a Notary Public who executes a false certificate of acknowledgment—falsely certifying that a grantor "personally appeared" when the individual was physically absent or confined elsewhere—commits official misconduct and civil fraud and is personally liable for all proximate damages, cloud-on-title injuries, and expenses incurred to remove the resulting cloud. See *Standard Acc. Ins. Co. v. State*, 57 S.W.2d 191, 194 (Tex. Civ. App.—Fort Worth 1933, writ dism'd); *Sitton v. Am. Title Co. of Dallas*, 396 S.W.2d 899, 902 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.). Moreover, Defendant Carline York, operating as a state-employed institutional Notary Public for Agency 696 — Texas Department of Criminal Justice (TDCJ) under a "State Employee/None Required" statutory bond designation, acted directly under color of state law (42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 49–50 (1988)). This Court exercises supplemental jurisdiction over Count Sixteen pursuant to 28 U.S.C. § 1367(a) because it forms part of the exact same common nucleus of operative facts as Plaintiffs' federal property and civil rights claims (42 U.S.C. §§ 1981, 1982, and 1983).

**118.** **Particularized Acts of Notary Misconduct and Geographical Fabrication (FRCP 9(b) & 8(d)(2)–(3)):** To satisfy Federal Rule of Civil Procedure 9(b) (with knowledge, intent, and reckless indifference pleaded generally and in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)–(3)), Plaintiffs specify that Defendants Carline York and Mandie B. Gaston committed official misconduct and civil fraud by affixing their official seals and signatures onto instruments purporting to convey protected real property interests in the Sampson estate:

* **(a) TDCJ Institutional Notary Carline York (File No. RP-2017-348145):** On the face of the 2017 General Warranty Deed recorded under File No. RP-2017-348145 (which explicitly lists Christopher's mailing address as 3695 FM 3514, Beaumont, Texas—the literal street address of a TDCJ correctional facility; Dkt. 31-10, Page 27), Defendant Carline York certified under her official TDCJ notary seal that Plaintiff Christopher Alexander Sampson physically appeared before her in Harris County, Texas on July 11, 2017, affixing her official stamp directly over blank, unexecuted grantor lines—whereas official state custody and parole certificates confirm that on July 11, 2017, Plaintiff was physically locked inside a cell block within the secure perimeter of the TDCJ LeBlanc Unit in Jefferson County, Texas (until his November 22, 2017 parole release), rendering a Harris

County personal appearance a physical and geographical impossibility and a material fabrication; and

* **(b) Civilian Notary Mandie B. Gaston (File No. 20150552824):** On Page 5 of 22 (ER 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) of the December 9, 2015 General Warranty Deed recorded under File No. 20150552824 (after Plaintiff's primary notary block on Page 12 / ER 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 was crossed out with a large "X" and left unsigned), Defendant Mandie B. Gaston (with stamp reading MANDIE B GASTON vs. certificate text Mandie D Gaston) certified under her official seal that Plaintiff personally appeared before her in Harris County, Texas on November 14, 2015—whereas official custody records (Cause Nos. 133559901010 & 133560001010; SID No. 07037603, TDC No. 02032793) confirm he was held continuously under a non-bailable "SNO BOND" order inside the Harris County Jail for 1,374 days until November 6, 2015, and remained in continuous secure prisoner transit custody to the TDCJ B.J. Gist Unit throughout November 2015, making the certified civilian appearance a complete fabrication.

119. **Title Cloud Nullity and Individual Actual & Exemplary Damages (Tex. Civ. Prac. & Rem. Code § 41.003(a)):** Under Texas real property jurisprudence, instruments infected by forgery, unauthorized alteration, or false acknowledgments used to procure an involuntary conveyance are

legally defective, void *ab initio* or subject to immediate rescission, and incapable of passing valid title. See *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 457 (Tex. App.—Dallas 1987, no writ); *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976); *Mills v. Gray*, 210 S.W.2d 985, 988–89 (Tex. 1948). As a direct and proximate result of Defendants' false certifications and official misconduct, a destructive cloud was placed upon Plaintiffs' title to 2323 Garapan Street and 2539 DeSoto Street, causing direct financial injury and severe mental anguish and rendering Carline York and Mandie B. Gaston individually liable to Plaintiffs for actual damages, cloud-removal costs, and exemplary/punitive damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a).

**COUNT SEVENTEEN: Common-Law Slander of Title and Tortious Interference with Existing Contractual and Prospective Property Relations (Supplemental State-Law Claims Pursuant to 28 U.S.C. § 1367(a) — Against Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, and Richard Deyama)**

**120.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

121. **Controlling Texas Standards Governing Slander of Title (A.H. Belo & Williams v. Jennings) and Tortious Interference (Prudential Ins. Co. & Coinmach):** Under Texas common law, a defendant is liable for slander of title where: (1) the defendant uttered and published disparaging words or recorded false title instruments in public property registries; (2) the statements or instruments were false; (3) they were published with legal malice (deliberately, without reasonable cause, or in reckless disregard of the owner's rights); (4) Plaintiffs possessed an estate or interest in the property slandered; and (5) Plaintiffs sustained special financial damages—such as loss of marketable title, frustration of financing or tax-resolution transactions, or expenses required to remove the cloud. See *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982); *Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Furthermore, Texas law establishes actionable tortious interference both where (a) an outside party willfully and intentionally interferes with an existing contract (*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)), and (b) an outside party engages in independently tortious or unlawful conduct with a conscious desire or substantial certainty that it will disrupt prospective property, financing, or business relations (*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417

S.W.3d 909, 923 (Tex. 2013); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). This Court exercises supplemental jurisdiction over Count Seventeen pursuant to 28 U.S.C. § 1367(a).

**122.** **Particularized Acts of Title Disparagement, Contractual Sabotage, and Special Damages (FRCP 9(b) & 8(d)(2)–(3)):** Pursuant to Federal Rule of Civil Procedure 9(b) (with malice, knowledge, and intent pleaded generally and in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)–(3)), Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, and Richard Deyama knowingly made, presented, and recorded five (5) invalid "wild deeds" in April 2026 utilizing void filings involving outside individuals Loretta Marie Sampson and LaTrina Yvette Sampson without physical inspection (*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); Tab U-2) affecting 2323 Garapan Street and the altered/falsely notarized December 9, 2015 deed (File No. 20150552824) affecting 2539 DeSoto Street within the Official Public Records of Real Property of Harris County with legal malice and zero legal justification or standing privity, while hijacking municipal tax communication channels via phone number (281) 274-8050 (Dkt. 31-10, Pages 38–39), posting unauthorized front-door eviction notices (Exhibit O), and leaving Richard Deyama's verbatim recorded voicemail on Stephanie Sampson's mobile

phone falsely claiming co-ownership and an imminent September/October auction loss (Exhibit T). As a direct and proximate result, Defendants inflicted concrete special damages: completely destroying the marketability of Plaintiffs' title, blocking Plaintiffs from securing home-equity or payoff financing to satisfy tax accounts, disrupting Plaintiffs' active performance under Aldine ISD's April 7, 2025 contract extending through February 15, 2028 (Exhibit C) and Harris County Installment Agreement No. 225713 (Tex. Tax Code § 33.02(d); Exhibit E; Tab F), and forcing Plaintiffs to incur substantial cloud-removal costs.

**123. Joint and Several Actual, Special, and Exemplary Damages (Tex. Civ. Prac. & Rem. Code § 41.003(a)):**

Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, and Richard Deyama are jointly and severally liable to Plaintiffs for all actual damages, special slander-of-title damages, cloud-removal expenses, severe mental anguish, and exemplary/punitive damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a).

**COUNT EIGHTEEN: Statutory Trespass to Try Title (Tex. Prop. Code § 22.001) and Equitable Suit to Quiet Title and Cancel Cloud on Title**

**(Supplemental State-Law Claims Pursuant to 28 U.S.C. § 1367(a) — Against All Private Real Estate Corporate Defendants and Legal/Title Intermediaries: Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N Thatcher Law LLC, Barry Barnes & Associates, PLLC, and American Title Company)**

124. **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

125. **Controlling Texas Trespass to Try Title (Martin v. Amerman) and Quiet Title (Essex Crane) Standards:** Pursuant to Texas Property Code § 22.001 and Texas Rules of Civil Procedure 783–809, a statutory Trespass to Try Title action is the mandatory legal mechanism in Texas to adjudicate competing title claims and determine superior fee-simple and possessory title to real property, while an Equitable Suit to Quiet Title invalidates and removes clouds cast by instruments that appear valid on their face but are void or voidable in fact. Under binding Texas Supreme Court precedent in *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) and *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982), a plaintiff establishes superior title in Trespass to Try Title by proving (1) superior title out of a common source, (2) mature title by limitations (adverse possession), or (3) prior possession that has not been abandoned. Furthermore, under settled

Texas law, vested equitable title is superior to naked paper title and fully supports both Trespass to Try Title and Quiet Title relief (*Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 988–89 (1948); *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied)), and a plaintiff prevails in Quiet Title by establishing: (a) an interest in a specific property; (b) title to the property is affected by a claim by the defendant; and (c) the claim, although facially valid, is invalid or unenforceable (*Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied)). This Court exercises supplemental jurisdiction over Count Eighteen pursuant to 28 U.S.C. § 1367(a) because it arises out of the exact same common nucleus of operative facts as Plaintiffs' federal real-property equality claims under 42 U.S.C. §§ 1981 and 1982 (*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)) and Fair Housing Act (42 U.S.C. § 3617).

**126.** **Plaintiffs' Unbroken Superior Limitation, Presumed Ouster, Equitable, Prior-Possession, and Homestead Title:** Plaintiffs hold immediate, superior fee-simple legal title, 31-year mature limitation title by adverse possession, family tacking, and presumed cotenant ouster under the 25-year absolute bar (Tex. Civ. Prac. & Rem. Code §§ 16.023, 16.027, and

16.030(a); *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 290 (1951); *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (1956); *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899–902 (Tex. 1976); *Republic Prod. Co. v. Lee*, 132 Tex. 254, 121 S.W.2d 973, 978 (1938); *Cochran v. Faris*, 18 Tex. 850 (1857); *McAnally v. Texas Co.*, 124 Tex. 196, 76 S.W.2d 997 (1934); *Anzaldua v. Richardson*, 287 S.W.2d 299, 301 (Tex. Civ. App.—San Antonio 1956, writ ref'd n.r.e.)), unabandoned prior physical possession continuously since 1987, vested equitable title via parental inheritance (Tex. Estates Code § 101.001), childhood SSI mortgage satisfaction, constructive trust (*Mills v. Gray*), **$24,349.20** in out-of-pocket capital structural and interior homestead improvements (Invoice #8362 for $5,350.00; Invoice #6783 for $12,756.04; and Exhibit I for $6,243.16), and **$9,124.25** in cumulative direct property tax installments across Aldine ISD and Harris County accounts (Tex. Tax Code § 33.02(d); Exhibits C, D, & E; Tab F), as well as protected constitutional residential homestead rights (Tex. Const. art. XVI, §§ 50–51; *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942)) over 2323 Garapan Street (Lot One (1), Block Fourteen (14) of Highland Acre Homes Annex No. 5; HCAD Account No. 016-272-014-0001) and 2539 DeSoto Street (Lots Seventeen (17), Eighteen (18), and Nineteen (19), Block Fourteen (14) of Highland Heights Annex No. Two

(2); HCAD Account No. 072-098-000-0112), as documented under valid recorded General Warranty Deeds and certified recorded Affidavits of Heirship in the Official Public Records of Real Property of Harris County, Texas.

127. **Invalidity of Adverse Corporate Instruments & Decree Canceling Clouds on Title:** Conversely, Defendants Heaven Investments, Sell House Now Cash LLC, Raul Bolufe, Clint Landero, Richard Deyama, Nicholas Thatcher, N Thatcher Law LLC, Barry Barnes & Associates, PLLC, and American Title Company possess zero legitimate title or standing privity, holding only void, altered, falsely notarized, and unconsented instruments—specifically the December 9, 2015 General Warranty Deed (File No. 20150552824), the 2017 General Warranty Deed (File No. RP-2017-348145, listing Christopher's mailing address on its face as 3695 FM 3514, Beaumont, Texas; Dkt. 31-10, Page 27), and the five (5) April 2026 "wild deeds" (Tab U-2; *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001)). Accordingly, Plaintiffs are entitled to a binding judgment and decree pursuant to Tex. Prop. Code § 22.001, Tex. R. Civ. P. 804, and 28 U.S.C. §§ 2201–2202 adjudging that Plaintiffs recover and hold full fee-simple and equitable title and possession of 2323 Garapan Street and 2539 DeSoto Street, declaring all adverse corporate and notary-defective deeds void *ab*

*initio* or rescinded, canceling and expunging those instruments from the Harris County Real Property Records, and permanently enjoining Defendants from asserting any adverse claim against the *res* of the estate.

**COUNT NINETEEN: Tortious Interference with an Existing Contractual Relationship**

**(Supplemental State-Law Claim Pursuant to 28 U.S.C. § 1367(a) — Against Defendants Nicholas Thatcher, N Thatcher Law LLC, and Barry Barnes & Associates, PLLC)**

**128.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**129.** **Controlling Texas Standards Governing Tortious Interference (Prudential Ins. Co.) and Non-Applicability of Attorney Immunity (Landry's, Inc. & Bethel):** Under settled Texas common law, a third party is fully liable for tortious interference with an existing contract where: (1) an existing contract subject to interference existed; (2) the defendant committed a willful and intentional act of interference with that contract; (3) the act proximately caused injury and disruption of the contract; and (4) actual damage or loss occurred. See *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). Under binding Texas Supreme Court precedent in

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–82 (Tex. 2015), *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020), and *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 51–53 (Tex. 2021), the affirmative defense of attorney immunity applies only to conduct constituting the provision of legal services within the context of an adversarial judicial proceeding and never shields law firms or attorneys who engage in non-litigation real-estate deed manufacturing, statutory fraudulent-instrument filings (Tex. Civ. Prac. & Rem. Code § 12.002), identity-impostor contact schemes, or extra-judicial interference with third-party municipal tax payment accounts. This Court exercises supplemental jurisdiction over Count Nineteen pursuant to 28 U.S.C. § 1367(a) because it arises out of the exact same common nucleus of operative facts as Plaintiffs' federal contract-equality claims (42 U.S.C. § 1981(b)).

**130.** **Particularized Willful Interference With Active Tax Installment Contracts (FRCP 9(b) & 8(d)(2)–(3)):**Defendants Nicholas Thatcher, N Thatcher Law LLC, and Barry Barnes & Associates, PLLC possessed actual, verified knowledge that Plaintiffs had executed and were actively performing under existing statutory tax installment contracts—Aldine ISD's April 7, 2025 contract extending through February 15, 2028 (Exhibit C) and Harris County Installment Agreement No. 225713 executed March 16, 2026

($9,124.25 total paid across Exhibits C, D, & E; Tab F) pursuant to Texas Tax Code § 33.02(d)—with the Harris County Tax Assessor-Collector and the Joint Taxing Enterprise. Despite this statutory shield, Defendants stepped completely outside any legitimate litigation representation by utilizing fraudulent contact profiles generated by third-party identity impostors ((281) 274-8050; Dkt. 31-10, Pages 38–39), coordinating and exploiting automated portal blocks on credit card ending 7838 (Tab E) and the refusal of physical U.S. currency tender in February 2026, manufacturing and recording invalid real-property deeds (Tab U-2), and serving predatory, hand-delivered partition demands specifically designed to induce a structural breach and termination of Plaintiffs' installment contracts so their corporate principals could capture Plaintiffs' ancestral homestead at a distressed foreclosure sale.

131. **Proximate Causation and Joint & Several Actual and Exemplary Damages (Tex. Civ. Prac. & Rem. Code § 41.003(a)):** Defendants' willful, unjustified, and extra-judicial acts of interference proximately caused the wrongful lockout and termination of Plaintiffs' performing Tex. Tax Code § 33.02(d) installment contracts, the assessment of artificial delinquency penalties ($12,764.69; Exhibit T-3-J; Dkt. 31-10, Pages 31–32), and imminent foreclosure exposure, rendering Nicholas Thatcher, N Thatcher Law LLC, and Barry Barnes & Associates, PLLC jointly and severally liable

to Plaintiffs for all actual damages, consequential financial losses, cloud-removal expenses, and exemplary/punitive damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a).

## VIII. ALLEGATIONS OF FORENSIC EVIDENCE SPOLIATION AND APPLICATION FOR STRUCTURAL SANCTIONS (FED. R. CIV. P. 37(e)(1)–(2))

**132.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**133.** **Mandatory Federal Duty to Preserve Electronically Stored Information (Fed. R. Civ. P. 37(e); Guzman v. Jones; & Rimkus):** Under binding federal law—which exclusively governs evidentiary preservation and spoliation sanctions in federal court (*King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003))—a party is under a strict, non-discretionary legal obligation to suspend routine document-destruction policies and preserve all material records, electronically stored information (ESI), database audit logs, academic metadata, and physical files the exact moment it knows, or reasonably should know, that litigation is pending or reasonably foreseeable. See Fed. R. Civ. P. 37(e); *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612–14 (S.D. Tex. 2010).

134. **Defendant Aldine ISD's Post-Notice Destruction and Purge of Public Records (July 24, 2026 Delivery to Chalico Campos & Ofelina H. and August 3, 2026 Written Admission; Exhibit V):**Following Plaintiff Christopher Alexander Sampson's achievement of a flawless **4.00 cumulative GPA**and continuous **Dean's List** and **President's List** placement at Lone Star College (**Tab J-2**) and the resulting July 16, 2026 federal student aid disruption, Christopher hand-delivered a formal, written notification transcript on **July 24, 2026** directly to Aldine ISD administrators **Chalico Campos** and **Ofelina H.** (**Tab J-3**), warning that their adverse data reporting constituted targeted retaliation against the descendants of the original 1964/1965 desegregation case (*Sampson v. Thorne*). Upper administration refused to take corrective action, and exactly ten (10) days later—on **August 3, 2026**—Defendant Aldine Independent School District's Legal Department (acting alongside Administrative Records Manager Purnell Harvey) issued an official written communication, attached hereto as **Exhibit V, Tab V**, explicitly confirming that the District systematically discarded, purged, and wiped Plaintiff Christopher Alexander Sampson's historical K–12 public educational transcripts, digital attendance registries, solitary-isolation room logs, and administrative behavioral records during the active pendency of this land controversy and at a time when Defendant

possessed actual, documented notice of Plaintiffs' active constitutional grievances and impending civil rights litigation—establishing overwhelming temporal proximity and bad-faith "intent to deprive" under Fed. R. Civ. P. 37(e)(2) and violating federal student record preservation duties (20 U.S.C. § 1232g).

**135. Irreplaceable Administrative Metadata and Dual-Tier Sanctions Under FRCP 37(e)(1) and 37(e)(2):**The destroyed academic and administrative metadata is completely irreplaceable from any alternative source and uniquely contained the longitudinal data track necessary to substantiate the District's multi-generational custom of targeted retaliation, solitary confinement, "Aldine Booking," and student profiling against the Sampson lineage following the March 23, 1965 federal desegregation decree (*Sampson v. Thorne*), which directly animated the modern Board of Trustees collection blocks and Aldine ISD lead counsel Deanna L. Longo's live-record invocation of *"a little bit of history"* (Dkt. 31-10, Page 16) to justify refusing Plaintiffs' active tax installment plan. Because Defendant Aldine ISD intentionally and with the bad-faith intent to deprive Plaintiffs of relevant evidence suppressed and destroyed these critical electronic records when litigation was imminent and ongoing (Tab J-3)—and, at minimum, inflicted severe evidentiary prejudice under Fed. R. Civ. P. 37(e)(1)—

Plaintiffs give formal notice that they move for binding judicial spoliation findings and structural sanctions pursuant to Federal Rule of Civil Procedure 37(e)(1) and 37(e)(2), including:

* **(a) Mandatory Adverse-Inference Instruction (FRCP 37(e)(2)(A)–(B)):** Triggering an adverse inference and a mandatory adverse jury instruction directing the finder of fact to presume that the systematically purged records fully validated Plaintiffs' structural claims of generation-spanning civil rights retaliation, intentional discrimination, solitary containment, and municipal misconduct, and that the contents of said electronic files were wholly detrimental to Defendant's litigation posture;
* **(b) Evidentiary Preclusion (FRCP 37(e)(1)):** Precluding Defendant Aldine ISD from introducing testimony, argument, or defenses asserting that Plaintiff Christopher Alexander Sampson was not subjected to disproportionate disciplinary profiling, solitary isolation, or retaliatory record manipulation;
* **(c) Monetary Spoliation Costs & Sanctions:** Awarding Plaintiffs all litigation expenses and costs necessitated by Defendant's spoliation; and
* **(d) Continuing Litigation-Hold Directive:** Directing all Defendants—including Aldine ISD, Harris County Tax Assessor-Collector Annette Ramirez, Harris County District Clerk Marilyn Burgess, and Linebarger

LLP—to preserve intact all remaining electronic payment-portal audit logs (card ending 7838), Home Access Center grade audit logs (Tab W4-NT-), telephone call logs ((281) 274-8050), Certificate of Service metadata, electronic docketing histories (Doc. ID No. 128820728 & Filing ID 127869618), and August 25–26, 2026 hearing scheduling logs.

## IX. CIVIL ACTION CASE CAPTION UPDATE, INCORPORATION OF RECORD ENTRIES, & BINDING INJUNCTIVE NOTICE (FED. R. CIV. P. 10(c) & 65(d)(2); 28 U.S.C. § 1964)

**136.** **Incorporation by Reference:** Plaintiffs reallege and incorporate all preceding paragraphs of this Complaint as if fully set forth herein.

**137.** **Official Federal Docketing Sequence & Judicial Notice of Judge George C. Hanks, Jr.'s October 27, 2026 Temporary Restraining Order (Document 18):** Plaintiffs update the formal case caption parameters of this consolidated action to match the official docketing sequence issued by the Clerk of the Court for the United States District Court for the Southern District of Texas, Houston Division, permanently assigned to Civil Action No. 4:26-cv-09010 before the Honorable George C. Hanks, Jr., United States District Judge. Pursuant to Federal Rule of Civil Procedure 10(c) and Federal Rule of Evidence 201(b)(2), Plaintiffs incorporate by reference all prior docket entries, pleadings, certified hearing transcripts, and evidentiary

exhibits filed of record in Case No. 4:26-cv-09010 (including Document 18, Document 31 and Attachments 1–10, Exhibits A through Y, and certified State Court Exhibits X-10 & X-11). In Document 18, signed and entered on October 27, 2026, Judge George C. Hanks, Jr. explicitly found that Plaintiffs established a substantial threat of immediate, irreparable injury—specifically, the imminent wrongful loss of their ancestral homestead—warranting the exercise of federal equitable authority to halt upcoming property executions and preserve the status quo.

**138.** **Binding Scope Upon Agents, Collection Counsel, Constables, and Third Parties (Fed. R. Civ. P. 65(d)(2) & 28 U.S.C. § 1964):** Pursuant to Federal Rule of Civil Procedure 65(a), 65(b)(2), and 65(d)(2), 18 U.S.C. § 401(3), and 28 U.S.C. § 1964 (constructive notice of pending federal real-property actions), all Defendants—together with their respective officers, agents, servants, employees, directors, shareholders, collection attorneys (Linebarger Goggan Blair & Sampson, LLP), executing officers (Harris County Constables), and any third-party purchasers or real-estate entities acting in active concert or participation with them who receive actual notice—are legally bound to cease and desist from taking any action in pursuit of a foreclosure sale, execution levy, eviction, partition, or transfer clouding title to Plaintiffs' ancestral real properties commonly known as

2323 Garapan Street, Houston, Texas 77091 (HCAD Account No. 016-272-014-0001) and 2539 DeSoto Street, Houston, Texas 77091 (HCAD Account No. 072-098-000-0112), pending final adjudication on the merits with bond waived pursuant to Fed. R. Civ. P. 65(c) (*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).

## X. ITEMIZATION OF STATUTORY & MAXIMUM TRIAL DAMAGES AND PRAYER FOR RELIEF

**139.** **Itemization of Economic, Structural, and Severe Emotional Distress Damages (Tex. Bus. & Com. Code §§ 17.50(b)(1) & 27.01; 42 U.S.C. §§ 1981–1986 & 2000d):** Pursuant to the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code §§ 17.45 & 17.50), the Texas Statutory Real Estate Fraud Act (Tex. Bus. & Com. Code § 27.01), the Texas Fraudulent Real Estate Instruments Statute (Tex. Civ. Prac. & Rem. Code § 12.002(b)), and federal civil rights statutes (42 U.S.C. §§ 1981–1986 & 2000d), Plaintiffs itemize their base economic, structural, and severe mental anguish damages as follows:

* **(a) Active Municipal Tax Compliance, Installments & Processing Fees (Exhibits C and D Stack):$5,520.00** (representing the physical cash installments, core current tax entries, and portal processing fees remitted directly into Aldine ISD operational accounts, alongside $1,844.12 in

verified PayIt remittances under Exhibit D);

* **(b) Harris County Restructuring Account Installment Funding (Annette Ramirez Agreement #225713; Exhibit E & Tab F): $2,330.13** (representing the itemized out-of-pocket cash down-payment and recurring card installment remittances processed by Christopher Alexander Sampson directly into the Harris County tax accounts);

* **(c) District Court Fee Bill Cost Tracking & Intercept Liability (Marilyn Burgess Invoice #8080149):$1,223.78** (representing the unauthorized cost assessment issued by the Harris County District Clerk despite Plaintiffs' sustained TRCP 145 indigent fee waiver);

* **(d) Subsurface Structural Capital Economic Losses (Invoice #8362): $5,350.00** (representing the out-of-pocket engineering and freeze foundation remediation costs paid by Christopher Alexander Sampson to preserve foundation lines);

* **(e) Infrastructure Overhaul & Framing Economic Losses (Invoice #6783; Exhibit H): $12,756.04**(representing the out-of-pocket roof replacement and exterior protective siding restoration costs financed by Christopher Alexander Sampson);

* **(f) Streamlined Interior Modernization & Building Material Procurement Logs (Exhibit I):$6,243.16** (representing the combined

itemized out-of-pocket capital design, framing, plumbing, tile, granite fabrication, and appliance expenditures paid under LL Flooring, Tile Co., and Home Depot receipts, bringing total capital structural and interior restoration expenditures across Invoices #8362, #6783, and Exhibit I to **$24,349.20**);

* **(g) Operational Economic Losses (Lost Independent Contractor Revenue): $1,600.00** (calculated at verified average weekly independent contractor income across Uber, DoorDash, and Favor platforms lost by Christopher Alexander Sampson for the 2-week period spanning July 10, 2026 through July 23, 2026 due to forced emergency legal defense, prior to his subsequent August 26, 2026 vehicle surrender);

* **(h) Educational Damages (Lone Star College Disruption): $150.00** (estimated value of missed instruction time and course penalties inflicted on Christopher Alexander Sampson after being forced to miss classes to prepare emergent court filings on July 23, 2026, prior to his subsequent College Algebra course withdrawal);

* **(i) Christopher Alexander Sampson's Individual Mental Anguish & Severe Suffering: $373,250.00**(profound psychological shock, physical deprivation, and injury beginning with intense dread on July 10, 2026, culminating in a severe emotional crisis on Saturday, July 18, 2026, when

Defendants' predatory door notice halted Christopher's gig income and forced him into immediate financial hardship limiting him to one meal per day for two straight weeks);

* **(j) Stephanie Sampson's Individual Title Infringement & Severe Mental Anguish: $746,500.00**(calculated as $373,250.00 × 2 to account for her dual injury from fraudulent corporate wild deeds plus direct emotional trauma from aggressive corporate phone campaigns and Richard Deyama's verbatim voicemail coercion); and

* **(k) Total Base Actual Damages & Treble Statutory Multiplier: $1,154,923.11** in total base actual damages, subject to a three-fold (treble) statutory multiplier up to **$3,464,769.33** pursuant to Tex. Bus. & Com. Code § 17.50(b)(1) due to the knowing and intentional nature of Defendants' conduct, plus statutory fraudulent-instrument penalties of **$70,000.00 per Plaintiff** under Tex. Civ. Prac. & Rem. Code § 12.002(b) and exemplary/punitive damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Stephanie Sampson and Christopher Alexander Sampson respectfully pray that this Court, upon final hearing of this matter, enter a final judgment in favor of Plaintiffs against all named Defendants providing the following structural remedies:

1. **Summons & Appearance (Fed. R. Civ. P. 4):** Issue formal summonses to all newly joined Defendants requiring them to appear and answer within the strict statutory parameters of Federal Rule of Civil Procedure 4;

2. **Title Restoration, Expungement of Fraudulent Instruments, & Enforcement of Statutory Installment Shield (28 U.S.C. §§ 2201–2202; Tex. Prop. Code § 22.001; Tex. Civ. Prac. & Rem. Code §§ 16.023, 16.027, & 16.030(a); Tex. Tax Code § 33.02(d)):** Enter a binding Declaratory Judgment and Quiet Title Decree pursuant to 28 U.S.C. §§ 2201–2202, Tex. Prop. Code § 22.001, and Tex. Civ. Prac. & Rem. Code §§ 16.023, 16.027, and 16.030(a):

   - **(a)** Declaring that Defendants' out-of-court enforcement actions—including Aldine Legal Department employee Felisa Zamora and Aldine ISD counsel Deanna L. Longo's unilateral June 11, 2026 Order of Sale request (Exhibit F; Envelope No. 116022590; Dkt. 31-10, Pages 17–18, 21), Harris County Tax Assessor-Collector Annette Ramirez's August 26, 2026 "Supplement Correction" printout (Exhibit T-3-J; Dkt. 31-10, Pages 31–32), and the corrupted Certificates of Service and execution notices routing mail to non-existent addresses

and impossible zip codes ("16605 South West Fwy, Houston, Texas 77449", "16605 SOUTH WEST FWY, SUGAR LAND, TEXAS 77449", and "715 SOUTH MASON ROAD #612, RICHMOND, TEXAS 77047")—violate Fourteenth Amendment Due Process (*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); *Jones v. Flowers*, 547 U.S. 220 (2006)), *Spanton v. Bellah*, 603 S.W.3d 97, 99 (Tex. 2020), and Tex. Tax Code § 34.01(a-1), and that because unserved equitable owner and 31-year homestead occupant Christopher Alexander Sampson was never served with citation in State Cause No. 2024-89814, his vested equitable and homestead title cannot be extinguished without due process of law (*Lance v. Dennis*, 546 U.S. 459 (2006); *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988));

- **(b)** Declaring that Aldine ISD's April 7, 2025 repayment contract extending through February 15, 2028 (Exhibit C) and Harris County Installment Agreement No. 225713 executed March 16, 2026 (Exhibit E; Tab F) remain valid, active, and enforceable under Tex. Tax Code § 33.02(d) and 31 U.S.C. § 5103 following Plaintiffs' cumulative

payment of $9,124.25 (including Christopher's timely January 29, 2026 PayIt remittance c7b35ffd two days ahead of the January 31, 2026 milestone; Exhibit D) and Defendants' wrongful portal lockout (card ending 7838; Tab E) and refusal of physical U.S. currency tender in February 2026, abating all post-January 2026 penalties and interest, and ordering specific performance reinstating Plaintiffs' payment schedules; and

- **(c)** Declaring that the Private Real Estate Defendants' corporate and notary-defective instruments—specifically including the five (5) April 2026 "wild deeds" utilizing void filings involving Loretta Marie Sampson and LaTrina Yvette Sampson (*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); Tab U-2), the altered/falsely notarized December 9, 2015 deed recorded under File No. 20150552824, and the 2017 deed recorded under File No. RP-2017-348145 (listing Christopher's mailing address on its face at 3695 FM 3514, Beaumont, Texas; Dkt. 31-10, Page 27)—are void *ab initio* or rescinded for fraud and failure of consideration, ordering them permanently canceled and expunged from the Official Public Records of Real Property of Harris County, and confirming Plaintiffs' superior fee-simple limitation title,

presumed cotenant ouster title, equitable title, quiet enjoyment, and residential homestead protections (Tex. Const. art. XVI, §§ 50–51) over 2323 Garapan Street and 2539 DeSoto Street, free and clear of all private clouds and liens;

3. **Prospective Equitable Relief Against Official-Capacity Clerk & Fraud on the Federal Desegregation Court (Ex parte Young & Fed. R. Civ. P. 60(d)(3)):** Enter prospective injunctive relief against Harris County District Clerk Marilyn Burgess in her official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908) requiring full enforcement and unrestricting of Plaintiffs' TRCP 145 indigent fee waiver (Filing IDs 127869618 / 127875660), cancellation of Invoice No. 8080149 ($1,223.78), unrestricted digital access for Official Court Reporter Charyna Lashley, CSR, and correction of docket label Document ID No. 128820728; and, to the extent cognizable in this proceeding pursuant to Federal Rule of Civil Procedure 60(d)(3), grant independent equitable relief from the December 2002 / early 2003 federal unitary-status order entered in favor of Defendant Aldine ISD (*Sampson v. Thorne* / *United States v. Aldine ISD*) based upon intentional concealment of ongoing campus solitary confinement tanks and retaliatory minority tracking;

4. **Mandatory Spoliation Sanctions (Fed. R. Civ. P. 37(e)(1)–(2)):** Enter a binding judicial finding of forensic spoliation pursuant to Federal Rule of Civil Procedure 37(e)(1)–(2) against Defendant Aldine ISD based on its August 3, 2026 written destruction admission following Plaintiffs' July 24, 2026 notice delivered to Chalico Campos and Ofelina H. (Exhibit V; Tab J-3; 20 U.S.C. § 1232g), preclude Defendant from arguing that its destroyed K–12 records showed no profiling or retaliation, and issue a mandatory adverse-inference jury instruction at trial;

5. **Statutory Penalties, Treble Damages, Constructive Trust, & Disgorgement:** Award Plaintiffs strict statutory damages of $10,000.00 per recorded fraudulent instrument per Plaintiff ($70,000.00 per Plaintiff across the seven recorded instruments) or actual damages, whichever is greater, plus exemplary damages, reasonable attorney's fees, and court costs pursuant to Tex. Civ. Prac. & Rem. Code § 12.002(b); award base actual damages of **$1,154,923.11** and up to **$3,464,769.33** in treble damages pursuant to Tex. Bus. & Com. Code §§ 17.50(b)(1) and 27.01; award full disgorgement of all sale proceeds and impose an equitable constructive trust over all title-conversion proceeds generated by Defendant Heaven Investments from the unauthorized transaction involving 2539 DeSoto Street; and award

restitution and equitable reimbursement of **$24,349.20** in capital homestead improvements (Invoices #8362 & #6783 and Exhibit I) and **$9,124.25** in tax installment payments (Exhibits C, D, & E; Tab F);

6. **Compensatory, Emotional Distress, and Exemplary/Punitive Damages:** Award full compensatory damages, special slander-of-title damages, acute mental anguish, severe emotional distress (*Carey v. Piphus*, 435 U.S. 247 (1978)), cultural/heritage deprivation, and punitive/exemplary damages under 42 U.S.C. §§ 1981, 1982, 1983, 1985(2)–(3), 1986, and 2000d (*Smith v. Wade*, 461 U.S. 30, 56 (1983)) and Texas tort law (Tex. Civ. Prac. & Rem. Code § 41.003(a)) against all liable Defendants in their respective individual and corporate capacities; and

7. **Injunctive Protections (FRCP 65 & 28 U.S.C. § 1651(a)), Indigent Bond Waiver (FRCP 65(c)), Costs, & General Relief:** Transition the October 27, 2026 Temporary Restraining Order (Document 18) into a Preliminary Injunction and a Permanent Injunction pursuant to Federal Rule of Civil Procedure 65(a) and 65(d)(2) and the All Writs Act (28 U.S.C. § 1651(a))—with any cash security bond waived pursuant to Fed. R. Civ. P. 65(c) (*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996))—

permanently enjoining all Defendants, their collection agents (Linebarger LLP), executing officers (Harris County Constables), and any third-party transferees acting in active concert from executing any public foreclosure auction, Constable sale, eviction, or tax sale liquidation impacting 2323 Garapan Street (HCAD Account No. 016-272-014-0001) or 2539 DeSoto Street (HCAD Account No. 072-098-000-0112), award reasonable costs and fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920, and grant such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

## XI. DEMAND FOR TRIAL BY JURY

140. Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiffs hereby formally enter their absolute, unconditional demand for a trial by jury on all claims, counts, and issues so triable in this action.

## XII. RULE 11(a)–(b) PRO SE SIGNATURE BLOCKS

141. Pursuant to Federal Rule of Civil Procedure 11(a)–(b), every pleading, written motion, and other paper must be signed by each individual party representing themselves pro se. By signing below, Plaintiffs certify that this pleading is warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law, that the factual contentions

have concrete evidentiary support, and that it is not being presented for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

Dated this 12th day of November, 2026.

Respectfully submitted,

By: ________________________________

**Christopher Alexander Sampson**

Plaintiff Pro Se

2323 Garapan Street

Houston, Texas 77091

Phone: (832) 898-1791

Email: sampsonc9@yahoo.com

By: ________________________________

**Stephanie Sampson**

Plaintiff Pro Se

7115 South Mason Road #612

Richmond, Texas 77407

Phone: (832) 207-3232

Email: ssampson25@yahoo.com

**XIII. PLAINTIFFS 'DECLARATION VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

We, Stephanie Sampson and Christopher Alexander Sampson, declare under penalty of perjury pursuant to the laws of the United States of America, and specifically under the strict statutory mandates of 28 U.S.C. § 1746, that the following statements are true, accurate, and correct based upon our personal, firsthand knowledge:

142. We are the named Plaintiffs in the above-styled federal civil action, we are proceeding pro se, and we maintain direct personal knowledge of the facts, timelines, and transactional events detailed throughout this Third Amended Master Consolidated Civil Rights Complaint.

143. I, Christopher Alexander Sampson, explicitly declare that I was continuously confined within secure perimeter cells of the Harris County Jail (February 1, 2012 – November 6, 2015) and the Texas Department of Criminal Justice (TDCJ) Institutional Division (through November 22, 2017) during the exact periods certified by the official custody tracking metadata appended to this cause. I further declare under penalty of perjury that my purported acknowledgments on the 2015 deed (File No. 20150552824) and 2017 deed (File No. RP-2017-348145, which explicitly lists my mailing address as 3695 FM 3514, Beaumont, Texas) are the direct

product of severe custodial duress, material misrepresentations, unauthorized post-signing handwritten alterations, split-jurisdictional venue falsification, or a complete absence of personal appearance while I was legally confined in state custody, and that I was never served with citation in State Cause No. 2024-89814.

144. I, Stephanie Sampson, explicitly declare that I never received mandatory post-judgment statutory notifications regarding state tax enforcement or execution orders because the Defendant Taxing Jurisdictions, Aldine ISD legal counsel, and Linebarger Goggan Blair & Sampson, LLP systematically deployed corrupted address profiles ("715" instead of 7115 South Mason Road #612, Richmond, TX 77407, paired with mismatched zip codes 77449 and 77047, and "16605 South West Fwy, Houston, Texas 77449" on Exhibit F, Envelope No. 116022590) on their Certificates of Service and execution notices to bypass our actual residence while locking out our performing tax installment contracts ($9,124.25 paid across Exhibits C, D, and E; Tab F). I further declare that Defendant Heaven Investments is an unauthorized entity that fraudulently hijacked 2539 DeSoto Street, Houston, Texas 77091 as its corporate address, that neither I nor my brother ever authorized the five (5) April 2026 "wild deeds" recorded by Sell House Now Cash LLC and its agents utilizing void filings

involving Loretta Marie Sampson and LaTrina Yvette Sampson, and that the recorded voicemail transcript from Richard Deyama quoted in this Complaint (Exhibit T) is a true and accurate transcription of the voicemail left on my mobile telephone.

145. Executed on this 12th day of November, 2026.

**Christopher Alexander Sampson, Declarant**

**Stephanie Sampson, Declarant**

**CERTIFICATE OF SERVICE (FED. R. CIV. P. 5(b))**

We hereby certify that on this 12th day of November, 2026, a true and correct copy of the foregoing Plaintiffs 'Third Amended Master Consolidated Civil Rights Complaint was served upon all counsel of record and appearing parties via the Court's CM/ECF electronic filing system, electronic mail, or certified mail pursuant to Federal Rule of Civil Procedure 5(b) (and will be served upon all newly joined Defendants via formal summons pursuant to Fed. R. Civ. P. 4).

**Christopher Alexander Sampson, Pro Se**

**Stephanie Sampson, Pro Se**